# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| **TOMYIA CRENSHAW** | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| **vs.** | § | |
| | § | **Case No:** |
| | § | |
| **LEONARD ANDERSON,** | § | |
| **DARRIEN ROBERTSON,** | § | |
| **AND THE CITY OF DALLAS,** | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, TOMYIA CRENSHAW ("Crenshaw") and ("Plaintiff"), and files this Original Complaint against Defendants Leonard Anderson ("Anders" or "Officer Anders"), Darrien Robertson ("Robertson" or "Officer Robertson), and the City of Dallas ("City") as the entity in charge of the Dallas Police Department ("DPD") (collectively, "Defendants") and alleges as follows:

## I.    SUMMARY OF THE PETITION

1.    On May 13, 2020, Officers Leonard Anderson and Darrien Robertson changed Tomyia Crenshaw's life. On the date of the incident, Anderson and Robertson were engaged in routine patrolling assignments. The officers had stationed their vehicle at a Chevron gas station located on Martin Luther King Boulevard in the early morning in South Dallas. At approximately 2:20 a.m., Defendants Anderson and Robertson noticed a red car, driven by Plaintiff Tomyia Crenshaw, passing through the intersection without headlights on.

2.      Without a moment to spare, Defendants began to pursue Crenshaw. Crenshaw was obviously concerned with a random vehicle beginning to chase him. Eventually, Defendants activated their emergency lights and sirens, further terrifying Crenshaw, ultimately leading to a high-speed chase for a minor headlight violation.

3.      Defendants tailed Crenshaw for a few blocks before eventually turning off their sirens and deactivating the emergency lights. Despite turning off the sirens and patrol lights, Defendants continued to pursue Crenshaw. This chase lasted for several minutes, giving Defendants ample time to contemplate their actions and understand the danger this high speed chase posed to Crenshaw and others. Eventually, Crenshaw lost control of the vehicle, jumped a curb along Martin Luther King Blvd., and crashed into a tree in the neighborhood.

4.      Crenshaw's vehicle immediately burst into flames. Despite witnessing the fiery inferno threatening Crenshaw's life, Defendants Anderson and Robertson did not stop their patrol car. The officers did not pull over. The officers made no attempt to stop and render aid to Crenshaw. Instead, bystanders who witnessed Anderson and Robertson leave the scene had to pull Crenshaw out of the burning vehicle as fire continued to overtake the car.

5.      When Defendants Anderson and Robertson realized that Crenshaw was likely injured, they did not immediately turn around and return to the scene. Instead, while still looking at the scene, the officers were recorded on dashcam footage saying, "That's his fault," before abandoning Crenshaw to his injuries. Only after Defendants received a distress call from dispatch did they finally return. Many witnesses saw Defendants' actions in continuing to chase Crenshaw despite turning off their lights and sirens and then driving right up to where Crenshaw had crashed before turning and leaving the scene without rendering any aid.

6.      Officers Anderson and Robertsons' careless, intentional, and conscious disregard of their duties as sworn police officers caused Tomyia Crenshaw's injuries. Before Anderson and Robertson pursued Crenshaw, in violation of DPD policy, Crenshaw had simply made a left turn down an empty street in the early morning in South Dallas. Crenshaw had committed no crimes at all. Defendants Anderson and Robertson rushed to judgment, and when their pursuit caused Crenshaw to lose control of his vehicle and suffer third-degree burns now covering approximately fifty percent of his body, Defendants were nowhere to be found —to either render aid—or take responsibility for the consequences of their actions. Defendants in their haste to chase Crenshaw violated other DPD policies in exceeding the maximum speeds for vehicle pursuits.

7.      This action is brought under 42 U.S.C. § 1983 and seeks justice—and accountability—for the wrongful, unjust, and careless pursuit of Tomyia Crenshaw, and resulting failure of Officers Anderson and Robertson to render first aid to Crenshaw, which caused Crenshaw's injuries and so many others at the hands of Dallas Police Department.

## II.      PARTIES

8.      Plaintiff Tomyia Crenshaw brings claims Individually. Tomyia Crenshaw is a citizen of the United States and the State of Texas, and resides in Dallas County, Texas.

9.      Defendant Leonard Anderson is a Dallas Police Department officer who, at all times relevant to this action, was acting under color of law and within the scope of his employment as a Dallas Police Department.

10.     Defendant Darrien Robertson is a Dallas Police Department officer who, at all times relevant to this action, was acting under color of law and within the scope of his employment as a Dallas Police Department.

11.     Defendant, The City of Dallas, Texas, is a municipal corporation operating according to the Constitution and laws of the State of Texas. The City of Dallas operates and is responsible for the Dallas Police Department. The City of Dallas can be served with process by serving its City Secretary at 1500 Marilla Street, Room 5 D South, Dallas, Texas 75201 in any manner authorized by the Federal Rules of Civil Procedure.

### III.     VENUE AND JURISDICTION

12.     This Court has federal question jurisdiction over this suit pursuant to 28 U.S.C. §1331 because this action arises under the Constitution and laws of the United States.

13.     This Court has supplemental jurisdiction over all claims asserted under the laws of the State of Texas, pursuant to 28 U.S.C. § 1367(a).

14.     This Court has personal jurisdiction over Defendants City of Dallas and the Dallas Police Department, as it is a political subdivision of the State of Texas, located within the boundaries of the Dallas Division of the United States District Court for the Northern District of Texas.

15.     This Court has personal jurisdiction over Defendant Officer Leonard Anderson as he resides in and/or works in the Northern District of Texas.

16.     This Court has personal jurisdiction over Defendant Officer Darrien Robertson as he resides in and/or works in the Northern District of Texas.

17.     Venue is proper in this court because all or a substantial part of the events giving rise to Plaintiffs' cause of action occurred in Dallas County, Texas. 28 U.S.C. § 1331. Specifically, Defendants' wrongful actions occurred on Martin Luther King Boulevard, Dallas, Texas 78216.

## IV.    PRE-SUIT REQUIREMENTS

18.    Plaintiffs have satisfied the prerequisites to suit specified by the Texas Tort Claims Act, Civil Practice and Remedies Code § 101.101, for each claim in this complaint to which those laws apply. The City had actual notice of the injury due to a statement of claim delivered to the City of Dallas Law Department and the Dallas Police Department.

## V.    DUTY AND APPLICABLE LAW

19.    Tomyia Crenshaw was injured and denied medical attention by first responders in violation of 42 U.S.C. § 1983.

20.    Crenshaw pursues this action pursuant to 42 U.S.C. § 1983, which provides in relevant part for redress for every person within the jurisdiction of the United States for the deprivation, under color of state law, of any rights, privileges, or immunities secured by the Constitution and laws of the United States.

21.    Defendant City of Dallas, through policies, patterns, and practices, acted under color of law and is liable under 42 U.S.C. § 1983.

22.    Defendant Officer Anderson was acting under color of law and is liable under 42 U.S.C. § 1983.

23.    Defendant Officer Robertson was acting under color of law and is liable under 42 U.S.C. § 1983.

## VI.    FACTUAL ALLEGATIONS

24.    On May 13, 2022, around 2:20 a.m., DPD officers, Senior Cpl. Leonard Anderson ("Anderson") and police Officer Trainee Darrien Robertson ("Robertson") were patrolling South Dallas. Anderson was training Robertson at the time. Robertson and Anderson were near a Chevron gas station on Martin Luther King, Jr. Blvd. in the southern region of Dallas, Texas.

Robertson and Anderson saw a red vehicle, driven by Crenshaw, leave a gas station and turn down Martin Luther King, Jr. Blvd. without headlights on.

25.     Robertson and Anderson followed Crenshaw's vehicle and activated their emergency lights and sirens. Although Crenshaw had not committed any crimes and did not meet the requirements for engaging in a high-speed pursuit, a high-speed chase ensued. This was in direct violation of DPD policy stating that unless a suspect is wanted for a felony or in the process of a felony, DPD should not pursue and/or engage in a high-speed chase for safety reasons. Eventually, Robertson and Anderson turned off the emergency lights but continued to follow Crenshaw's vehicle at high speeds as if the pursuit was ongoing.

26.     Shortly after turning off the emergency lights, dash camera footage from the police vehicle that Robertson and Anderson were operating clearly shows that Crenshaw's vehicle (whom they had been chasing in violation of DPD policy mere moments before) jumped a curb along Martin Luther King Blvd. and crashed at a high rate of speed. Crenshaw's vehicle immediately burst into flames.

27.     Robertson and Anderson saw Crenshaw's horrific crash occur; however, the officers did not stop, continuing their way without checking on the driver. Dashcam footage in Anderson and Robertson's vehicle captured the two officers driving by the wreckage, with Anderson quipping, "That's his fault."[1] Anderson as a trainer was speaking to DPD policies to not render aid despite seeing and causing what happened.

28.     Instead, bystanders in the community, who witnessed Anderson and Robertson's police cruiser casually leave the scene, pulled the driver out of the car, and carried him away as flames began to consume the vehicle. Anderson and Robertson later returned to the scene only

---

[1]Part of the dash cam footage can be found at this link: https://www.youtube.com/watch?v=hQoFD-f5WvQ.

after hearing a distress call that the vehicle was in flames on the policy radio despite the fact that they already knew the vehicle was in flames. Upon their arrival, captured on body cam, paramedics can be seen tending to the bloodied Crenshaw on the sidewalk as other police officers face off against angry onlookers who had seen Anderson and Robertson drive off.

29.     DPD Police Chief Eddie Garcia stated that, "[i]f there are members of our community who are outraged by this, rest assured, I am outraged as well. The civilians did what our officers should have done, called for assistance and helped the injured individual."[2] Police Chief Garcia placed Anderson and Robertson on administrative leave. Upon information and belief, Anderson was fired and Robertson was suspended because of the Incident. However, it is likely that both Anderson and Robertson will be back on the police force as per Defendants' policy, practices, and procedures.

30.     As a result of Robertson and Anderson's reckless and abhorrent conduct, Crenshaw was trapped in a burning vehicle. He was pulled from the wreckage by Good Samaritans in the neighborhood and was found bloodied on the sidewalk near the crash site. Paramedics provided medical support services to Crenshaw for an unknown amount of time on the sidewalk; however, such medical efforts were delayed due to Robertson and Anderson's actions and inactions.

31.     As a result of the vehicular crash and explosion, Crenshaw has suffered third degree burns over fifty percent (50%) of his body. Some of the burns sustained by Crenshaw have been to the bone, particularly to burns sustained from the waist down on Crenshaw's person. Crenshaw also suffered from a broken arm, broken leg, broken collar bone, hip, and ribs. Crenshaw was

---

[2] https://dallasexpress.com/city/dallas-police-fail-to-render-aid-to-
suspect/#:%7e:text=two%20dallas%20police%20officers%20face%20possible%20termination%20after,car%20at%
20a%20gas%20station%20in%20south%20dallas.

hospitalized at Parkland Hospital in Dallas, Texas from the date of the Incident, May 13, 2022, through September 3, 2022, due to his extensive injuries.

32.     Crenshaw is still receiving outpatient treatment due to the injuries sustained in the Incident. He is unable to stand and/or walk for any length of time. At twenty-three years old, Crenshaw must now use a wheelchair and/or a walker to perform any activity(ies) associated with daily living. He has undergone over twenty (20) surgeries, including incredibly painful debridement procedures relating to treatment for his third-degree burns. Debridement refers to removal of dead tissue from the burns. Debridement of burn wounds is important for third degree burns to remove necrotic tissue and prevent infection. Tangential debridement refers to thin planar excisions of dead or necrotic tissue followed by dressing changes and finally skin grafting.

33.     Crenshaw anticipates past and future and medical bills and expenses, past and future disfigurement, past and future physical limitation and/or incapacity, and has suffered past pain and mental anguish, and anticipates future pain and mental anguish.

34.     Chief Garcia said he is appalled and embarrassed by the incident: "I'm embarrassed for the men and women of this department…[t]his is not what we stand for." Angry citizens who were at the incident scene, and actually performed the heroic action(s) of pulling Crenshaw from the wreckage as it was engulfed in flames, asked DPD officers, "[w]hat if that was your people brother?"

35.     Additionally, DPD Officers Anderson and Roberson violated numerous policies and procedures by improperly engaging in a high-speed vehicle chase and failing to stop and render aid. The Dallas Police Department (DPD) violated established training protocols; failed to conduct appropriate performance review procedures; failed to implement appropriate recruitment, hiring, and candidate selection methods; failed to implement appropriate retention efforts; and failed to

train, implement policies, and/or create an atmosphere that prohibited the very destructive, biased, and reckless conduct of Officers Anderson and Robertson.

36.     Recent legislative and social policy efforts have demanded that police efforts combat racial profiling and enact policies that promote community policing efforts and conflict resolution. Despite the numerous articles, courses, and media coverage of ways to prevent escalating police encounter(s) that end in violence, including doing away with racial profiling, waiting for police back-up, and systemic departmental changes relating to the types of candidates recruited as police officers, Robertson, Anderson and the City disregarded these warnings and violated established DPD policy regarding high-speed chases where no felony is suspected and/or has occurred; the above cause(s) led to the ill-fated high-speed chase and horrific vehicular accident, with the Crenshaw suffering life-threatening injuries. These actions at a minimum constitute a reckless, wanton, and willful disregard of Crenshaw (and the public's) rights and safety. Further, it is clear that in engaging in the high-speed pursuit against DPD policy, it was officers Anderson and Robertson's intent to cause harm. Such intent is evidenced by the fact that officers Anderson and Robertson simply drove away after witnessing Crenshaw's car crash and burst into flames.

37.     Additionally, DPD has failed to enact proper policies and procedures concerning rendering emergency medical treatment and has failed to properly train its officers with respect to providing emergency medical treatment. DPD has been made aware of its failures several times. For example, in 2020, a group presented "10 New Directions for Public Safety and Positive Community Change," to several city officials, including then Police Chief U. Renee Hall, Dallas County Judge Clay Jenkins, and Dallas City Manager T.C. Broadnax. The document made several suggestions for improvement within DPD, including, "DPD and Dallas County Sheriff's

Department shall create/review/reinforce policies concerning the 'duty to intervene' to prevent officer misconduct and the 'duty to render aid' when a person needs first-aid assistance as a result of officer conduct." DPD clearly ignored this suggestion in deliberate indifference to the lives and safety of its citizens.

38.    Moreover, DPD was aware that its lack of a policy and lack of training with respect to providing emergency medical aid was inadequate, as there have been several reports of DPD officers either failing or refusing to provide aid to those in need. For example, in 2012 the Dallas Citizens Police Review Board (the "Board") investigated two (2) cases involving allegations of denial of medical treatment. In August of 2018, the Board investigated another allegation of an officer failing to provide medical treatment. In June of 2020, a woman reported to the Board that several DPD officers sped passed her on the freeway nearly tearing the front bumper of her vehicle off and did not stop to render aid. In July of 2020 a woman complained to the Board that she was injured following an interaction with a DPD Officer and explained to the officer that she was injured; however, the officer had no concern for her health or well-being and simply "waved her off 'like a fly or dog' and yelled for her to get out of his way." Also in July of 2020, a man reported to the Board that he called the police in hopes of finding his granddaughter. The police did not show up until two hours later, and when they did, they placed their knee on his stomach, causing him to bruise. The officers then detained him in a car with no air for over thirty minutes, causing him to have an asthma attack. Instead of providing first aid to the man, the officers completely ignored him.

39.    In August of 2018, DPD officers responded to a call of domestic disturbance. When they arrived, police arrested Diamond Ross who then went into medical distress. When the police arrived at Dallas Detention Center, they took Ms. Ross out of the squad car and left her on the

pavement before picking her up and carrying her into jail. The officers then dragged an unconscious Ms. Ross into a holding cell, plopped her down in a wheelchair, and left her there without even attempting to perform CPR or otherwise provide medical attention to her. Ms. Ross was pronounced dead the next day. Upon information and belief, neither of the DPD officers involved in this case were terminated; instead, one received a written reprimand and the other resigned.

40.     In September of 2022, Shamond Lewis was suffering from a psychotic break when DPD officers arrested and restrained him. Mr. Lewis' mother explained to the police that he had a mental health disorder that had been triggered; however, instead of taking Mr. Lewis to the hospital to receive medical treatment, the officers took him to jail. Mr. Lewis died soon after.

41.     The above-described incidents are only a few examples of the likely dozens of cases in which DPD has refused or otherwise failed to provide medical treatment in the face of an emergency. Such incidents are illustrative of the polices, practices, and procedures of DPD and the City of Dallas that Officers Anderson and Robertson were acting in accordance with and that were the driving force behind Defendants' violation of Crenshaw's clearly established constitutional rights.

42.     Permitting DPD officers to go unchecked for failing to render aid—especially where, as here, they cause the accident in question—is shocking. Indeed, if a citizen who is not a DPD officer failed to stop and render aid after causing a car accident, that citizen could be arrested and convicted of a felony. *See* TEX. TRANSP. CODE § 550.021.

43.     With the prolific media and expert coverage of the risks and signs of police misconduct and racial profiling, and methods associated with preventing such practice(s) in our police departments, this systemic, violent racism can no longer be tolerated in our police

departments or communities. Community members trust that those who chose to become police officers will protect and serve all members of their community without exception and regardless of the color of their skin. Unfortunately, in this case, Anderson, Robertson, the DPD, and the leaders within the DPD violated this trust when Robertson and Anderson drove away from a horrific crash scene they helped cause, leaving Crenshaw to fight for his life as the vehicle became engulfed in flames.

44.    The incident occurred as a result of the involved officers' negligent and reckless conduct, the unlawful policies in place at the Dallas Police Department, and/or the failure to have appropriate policies in place, the failure to train and supervise the involved officer(s), and negligent hiring and retention of the involved officer(s).

## VII.    PLAINTIFF's CAUSES OF ACTION AGAINST DEFENDANTS

### Count I
### Excessive Deadly Force – 42 U.S.C. § 1983
**(Against Defendant Anderson and Robertson)**

45.    Plaintiff realleges and incorporates by reference paragraphs 1 through 39 of this complaint.

46.    As described in the preceding paragraphs, Defendants officers violated Crenshaw's constitutional rights, including but not limited to those under the Fourth and Fourteenth Amendments of the United States Constitution.

47.    Crenshaw's conduct prior to interaction with Defendants Anderson and Robertson was not unlawful. Crenshaw turned his vehicle down an empty street. Crenshaw presented no clear threat to Defendant officers at the time of their interaction. Crenshaw was not armed at the time, and Crenshaw was not charged with a felony or related crime.

48.     Defendant officers reckless conduct in initiating pursuit of Plaintiff despite Plaintiff having never been charged with a crime, deprived Plaintiff of his right to be secure in his persons against unreasonable searches and seizures as guaranteed by the Fourth Amendment. Plaintiff's Fourth Amendment rights were further violated by Defendant Anderson and Crenshaw's use of excessive force.

49.     Defendant officers' conduct was excessive and objectively unreasonable and undertaken with willfulness and reckless indifference to the rights and safety of others. In addition, the misconduct and excessive force described in this Count "shocks the conscience." Defendants conduct violated established department policy, including but not limited to pursuing Crenshaw, despite possessing actual or constructive knowledge that Crenshaw did not have a warrant for either a felony or misdemeanor. As such, Defendants conduct was objectively unreasonable and an improper method of police investigation resulting in excessive force being applied to apprehend Plaintiff.

50.     The conduct of Defendants Anderson and Robertson caused Crenshaw to suffer injuries, and alternatively was a substantial factor in bringing about Crenshaw's injuries, including third-degree burns from the resulting vehicle accident.

<u>**Count II**</u>
<u>**Failure To Render Medical Aid – 42 U.S.C. § 1983**</u>
**(Against All Defendants)**

51.     Each of the Paragraphs of this Complaint is incorporated as if fully stated herein.

52.     In the manner described in this Complaint, Defendant officers Anderson and Robertson at all relevant times herein, Defendants were "persons" for purposes of 42 USCA § 1983 and acted under color of law to deprive plaintiffs of their Constitutional rights, as set forth more fully below.

53.     At the time of the incident, Defendant officers were aware that Crenshaw had lost control of his vehicle and subsequently crashed his car. Based on these facts, Defendant officers had a reasonable basis to infer that Crenshaw had a substantial risk of incurring serious harm.

54.     Defendant officers had actual or constructive knowledge of Crenshaw's injuries because they saw the vehicle engulfed in flames but proceeded in conscious or deliberate indifference to these facts.

55.     Defendant officers owed a duty as first responders to render aid, or attempt to provide first aid to Crenshaw, and operated in conscious disregard of this duty. In addition, Defendant officers' conduct in clear disregard of the duty to render medical aid include but are not limited to the following:

    a.  Failure to stop and render first aid;

    b.  Failure to call medical personnel;

    c.  Failure to provide reasonable transportation to hospital to obtain medical services;

    d.  Failure to provide timely and reasonable accommodations to obtain medical services;

    e.  Deliberate delay in calling for medical aid;

    f.  Deliberate delay in arrival of medical personnel;

    g.  Deliberate denial of providing medical services;

    h.  Denial of medical services in direct violation of Tex. Code Crim. Proc. art. 2.33

56.     Defendant officers' conduct in failing to provide even the most basic medical assistance to Crenshaw immediately following their pursuit directly exacerbated Crenshaw's injuries. Defendant officers delayed, stalled, and prolonged the time it took for Crenshaw to be

rescued from his vehicle, in addition to being seen by medical professionals. The consequence of these actions directly contributed to and increased the severity of Crenshaw's injuries.

57.    Plaintiff further alleges that Defendants City of Dallas and Dallas Police Department were on notice of the Constitutional defects in the training of Dallas police officers, including, but not limited to failure to adopt proper policies requiring that officers render medical aid to civilians, and inadequate training of officers in rendering emergency medical aid.

58.    The foregoing acts and omissions amount to deliberate indifference to the serious medical needs of Crenshaw.  Plaintiff were subjected to cruel and unusual punishment in violation of the Fifth and Eighth Amendment of the United States Constitution.

### Count III
### Municipal Liability – 42 U.S.C. § 1983

59.    Each of the Paragraphs in this Complaint is incorporated as if restated fully herein.

60.    As described in the preceding paragraphs, the misconduct described in Counts I-II was undertaken under the policy and practice of the City of Dallas, such that Defendant City of Dallas is also liable, in that:

a.    The City of Dallas officials, knew and/or reasonably should have known about repeated acts of misconduct by Defendant Officers.

b.    As a result of the deliberate indifference, reckless and/or conscious disregard of the misconduct by Defendant Officers, the City of Dallas officials ratified, encouraged, or sanctioned these officers to continue their course of misconduct and caused these officers' lack of training, resulting in the violation of the Plaintiff's rights as alleged in this complaint.

c.    As a matter of both policy and practice, the City of Dallas Police Department had a de facto or informal custom of allowing officers to engage in a vehicular pursuit of

potential suspects in the absence of a warrant for the suspects arrest, or without committing a felony, such that it enabled Plaintiff's rights to be violated during the date of the incident in question.

d.      As a matter of widespread custom and policy, the City of Dallas Police Department did not require police officers to either stop and render aid to civilians suspected of committing violations of the law, or require officers to refrain from high-speed pursuit of individuals not convicted of a felony, in violation of Plaintiff's Fourth, Fifth, and/or Fourteenth Amendments rights so as to constitute a deliberately indifferent failure to adopt policies necessary to prevent constitutional violations by the City of Dallas.

e.      As a matter of both policy and practice, the City of Dallas encourages, and is thereby the moving force behind, the very type of misconduct at issue in Counts I-II by failing to adequately train, supervise, control and discipline its officers such that its failure to do so manifests deliberate indifference.

f.      As a matter of both policy and practice, the City of Dallas failed to use appropriate and generally accepted law enforcement policies, procedures, and training in handling injured, medically disabled, or wounded civilians.

g.      As a matter of both policy and practice, the City of Dallas facilitates the very type of misconduct at issue in Counts I-II by failing to adequately investigate, punish, and discipline prior instances of similar misconduct, thereby leading Dallas police officers to believe their actions will never be meaningfully scrutinized. Accordingly, in that way, the City of Dallas directly encourages future uses of excessive deadly force, unlawful detention, failures to intervene, such as those Plaintiff complains of.

h.      As a matter of both policy and practice, the City of Dallas encourages and is the moving force behind the failure to render aid by promoting and encouraging a policy, practice, and procedure for police officers not to render aid to individuals injured by the police officers' conduct.

61.      As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendant County, as described above, Plaintiffs sustained serious and permanent injuries and is entitled to damages, penalties, costs and attorneys' fees as set forth in paragraphs 54–56, above, including punitive damages.

### Count IV
### TTCA
### (Against the City of Dallas)

62.      Each paragraph of this Complaint is incorporated as if restated fully herein.

63.      Plaintiff would show that governmental/ sovereign immunity has been waived with regard to Plaintiffs' claims against Defendants City of Dallas and Dallas Police Department, pursuant to the Texas Civil Practice and Remedies Code § 101.021, also known as the Texas Tort Claims Act.

64.      Defendant officers Anderson and Robertson of the Dallas Police Department, while acting within the scope of their employment, negligently used tangible personal property, namely Dallas Police Department patrol vehicles to engage in a reckless pursuit of Plaintiff which proximately caused Plaintiff's injuries.

65.      Defendant the City of Dallas is liable for the wrongful acts, omissions, and negligence of Defendant Officers Anderson and Robertson, who are sworn peace officers employed in the City of Dallas, pursuant to the Texas Tort Claims Act.  In accordance with the

Texas Tort Claims Act election of remedies requirement, Plaintiff's cause of action is brought against the City of Dallas.

66.    Plaintiffs timely provided notice under the TTCA. Alternatively, the City of Dallas had timely, actual notice of this claim and the circumstance of this case.

67.    No exception to the waiver of immunity bars this claim because no exception applies.

**Count V**
**Respondeat Superior**

58.    Each paragraph of this Complaint is incorporated as if restated fully herein.

59.    At the time of the incident and at all relevant and material times, Defendant Officers Anderson and Robertson were acting in the course and scope of his employment on behalf of DPD. Defendant Anderson and Robertson were acting in their capacity as an employee, statutory employee, borrowed servant, agent, joint venturer, joint enterpriser, and/or in partnership with DPD and the City of Dallas.

60.    Further, upon information and belief, DPD and the City of Dallas exercised control and/or had the right to exercise control over their actions, their training, their safety policies and procedures, their dispute resolution and de-escalation policies, procedures, and training, and citizen interactions. The DPD and the City of Dallas monitored and/or had the ability to monitor Defendant Officers Anderson and Robertsons' training, policies and procedures that would have prevented the injuries to Plaintiffs.

**Count VI**
**Exemplary Damages**

61.    Plaintiffs incorporate each and every allegation of the foregoing paragraphs as if fully incorporated herein.

62.     At all times material thereto, Defendants, jointly and severally, acted with such gross misconduct, gross negligence, and such callous disregard for the Plaintiff's rights so as to shock the conscience of any reasonable person such that the individual Defendants, jointly and severally, should be required to pay punitive damages in order that Defendants may be restrained from committing such acts against any person or citizens in the future. 42 U.S.C. § 1983.

## VIII.   DAMAGES

63.     As a proximate result of Defendants' negligence, negligence per se, gross negligence, and other wrongful conduct as set forth above, Plaintiffs bring claims and request that the jury determine the sum of money for each element of damages that will fairly and reasonably compensate Crenshaw for his harms and losses suffered in the past and those which will, in reasonable probability, be suffered in the future as a result of the injuries incurred by Plaintiff Crenshaw. These damages—those incurred up to the time of trial and those to be incurred beyond the time of trial—include but are not limited to:

a.   Past medical expenses;

b.   Future medical expenses reasonable and necessary to treat Plaintiff Cantu, Jr.'s injuries;

c.   Past pain and suffering;

d.   Future pain and suffering;

e.   Physical impairment;

f.   Physical disfigurement;

g.   Mental anguish sustained in the past;

h.   Mental anguish that in reasonable probability will be sustained in the future;

i.   Pre-judgment interest;

j.   Post-judgment interest;

k.   Court costs;

l.   Exemplary damages; and

m.   Such other and further relief, both at law and in equity, to which Plaintiffs are justly entitled.

## IX.   JURY DEMAND

64.   Plaintiffs exercise their right to demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

## X.   PRAYER

65.   For these reasons, Plaintiffs ask that, after trial, the Court render judgment against Defendants, jointly and severally, for all actual damages as alleged herein; punitive and/or exemplary damages; costs of court; pre-judgment and post judgment interest at the highest legal rate thereon for all damages; and for all such other relief to which Plaintiffs may be justly entitled, at law or in equity, special or general.

Respectfully submitted,

**MCCATHERN, PLLC**

*/s/Carl L. Evans, Jr.*
Carl L. Evans, Jr.
State Bar No. 24056989
cevans@mccathernlaw.com
Alizabeth A. Guillot
State Bar No. 24138578
aguillot@mccathernlaw.com
Stephen Bergren
State Bar No. 24134428
sbergren@mccathernlaw.com
3710 Rawlins Street, Suite 1600
Dallas, Texas 75219

(214) 741-2662 Telephone

**BEN CRUMP LAW, PLLC**
Paul A. Grinke
State Bar No. 24032255
paul@bencrump.com
Aaron Dekle
State Bar No. 24100961
aaron@bencrump.com
5 Cowboys Way, Suite 300
Frisco, Texas 75034
(972) 942-0494 Telephone

**COUNSEL FOR PLAINTIFF**