IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

TOMYIA CRENSHAW,                              §
                                             §
          *Plaintiff*,                       §
                                             §
v.                                           §          Civil Action No. 3:24-CV-731-L
                                             §
LEONARD ANDERSON, *et al.*                   §
                                             §
                                             §
          *Defendants*.                      §

## DEFENDANT CITY OF DALLAS'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT, AND BRIEF IN SUPPORT

CITY ATTORNEY OF THE CITY OF DALLAS

TAMMY L. PALOMINO
City Attorney

*/s/ J. Cheves Ligon*
J. Cheves Ligon
Senior Assistant City Attorney
Texas State Bar No. 24070147
John.Ligon@Dallas.gov
7DN Dallas City Hall
1500 Marilla Street
Dallas, Texas 75201
Telephone:   214-670-1236
Facsimile:   214-670-0622
*Attorneys for Defendant City of Dallas*

## TABLE OF CONTENTS

I.     SUMMARY OF MOTION ................................................................1

II.    BRIEF FACTUAL SUMMARY ........................................................2

III.   APPLICABLE LEGAL STANDARDS FOR 12(b)6 DISMISSAL ..................4

IV.   ARGUMENT AND AUTHORITIES ................................................5

a.    Plaintiff's allegations do not state any section 1983 claims against the City .....................5

i.    The Complaint does not allege facts from which this Court may plausibly infer that a constitutional violation occurred. ........................................7

1.    Plaintiff essentially alleges a "state-created danger" theory of liability, which the Fifth Circuit does not recognize ..................................7

2.    Plaintiff was never "seized" under the Fourth Amendment, whether reasonably or not. ......................................................8

3.    The Officers had no Fourteenth Amendment constitutional duty to stop and render aid. ...............................................................13

ii.   The Complaint does not allege facts from which this Court may plausibly infer that the City maintained any unconstitutional policies. .....................14

iii.  The Complaint does not allege facts from which this Court may plausibly infer any City policies were the "moving force" behind Plaintiff's injuries. ..................18

b.    Plaintiff's allegations do not state any Texas Torts Claims Act claims against the City ...................................................................20

i.    Under Texas law, Plaintiff's injuries were not the result of the Officers' "use" of a vehicle as defined by the Texas Torts Claims Act ...................................21

ii.   The Complaint does not negate the Texas Torts Claims Act's "emergency exception." ..................................................................24

IV.   CONCLUSION ................................................................26

CERTIFICATE OF SERVICE ................................................................27

# TABLE OF AUTHORITIES

**CASES**

*Alpha v. Hooper*,
    440 F. 3d 670 (5th Cir. 2006) ............................................... 14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................ 4, 5

*Barrios-Barrios v. Clipps*,
    825 F. Supp. 2d 730 (E.D. La. 2011)....................................... 18

*Baskin v. City of Houston, Mississippi*,
    378 F. App'x 417 (5th Cir. 2010) .......................................... 11

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................ 4, 5

*Brower v. Cnty. of Inyo*,
    489 U.S. 593 (1989)........................................................... 9

*Brown v. Tarrant County*,
    985 F.3d 489, 497 & n.11 (5th Cir. 2021) ................................ 7

*Bustos v. Martini Club Inc.*,
    599 F.3d 458 (5th Cir. 2010) ............................................... 8

*California v. Hodari D.*
    499 U.S. 621 (1991)...................................................... 9, 13

*Carney v. New Orleans City*,
    468 F. Supp. 3d 751 (E.D. La. 2020)...................................... 12

*City of Austin v. Powell*,
    684 S.W.3d 455 (Tex. App. 2022)......................................... 25

*City of Dallas v. Hillis,*
    308 S.W.3d 526 (Tex. App. 2010).......................................... 22

*City of Los Angeles v. Heller*,
    475 U.S. 796 (1986)......................................................... 14

*City of San Antonio v. Maspero*,
    640 S.W.3d 523 (Tex. 2022)............................................... 25

*City of Sugarland v. Ballard,*
   174 S.W.3d 259 (Tex. App. 2005) ....................................................................... 23

*Cnty. of Sacramento v. Lewis,*
   523 U.S. 833 (1998) ................................................................................. 10, 12

*Conley v. Gibson,*
   355 U.S. 41 (1957) ............................................................................................. 5

*Connick v. Thompson,*
   563 U.S. 51 (2011) ..................................................................................... 16, 18

*Dallas Area Rapid Transit v. Whitley,*
   104 S.W.3d 540 (Tex. 2003) ........................................................................... 20

*Darden v. City of Fort Worth, Tex.,*
   808 Fed. App'x. 246 (5th Cir. 2020) .............................................................. 19

*Davidson v. City of Stafford,*
   848 F.3d 384 (5th Cir. 2017) .......................................................................... 15

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,*
   489 U.S. 189 (1989) ....................................................................................... 13

*Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys,*
   675 F.3d 849 (5th Cir. 2012) ............................................................................ 8

*Fernandez-Montes v. Allied Pilots Ass'n,*
   987 F.2d 278 (5th Cir. 1993) ............................................................................ 4

*Fisher v. Moore,*
   73 F.4th 367 (5th Cir. 2023) ............................................................................. 9

*Fuentes v. Nueces County,*
   689 F. App'x 775 (5th Cir. 2017) ................................................................... 17

*Gorman v. Sharp,*
   892 F.3d 172 (5th Cir. 2018) .......................................................................... 10

*Groden v. City of Dallas,*
   826 F.3d 280 (5th Cir. 2016) ............................................................................ 6

*Harvey v. Montgomery Cty., Tex.,*
   881 F. Supp. 2d 785 (S.D. Tex. 2012) ........................................................... 18

*Hutcheson v. Dallas County,*
   994 F.3d 477, 483 (5th Cir. 2021 ........................................................... 6, 7, 15

*In re Katrina Canal Breaches Litig.*,
    495 F.3d 191 (5th Cir. 2007) ................................................................ 4

*Jackson v. Procunier*,
    789 F.2d 307 (5th Cir. 1986) ................................................................ 4

*James v. Harris County*,
    577 F.3d 612, 617 (5th Cir. 2009) ......................................................... 7

*Kaiser Alum. & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*,
    677 F.2d 1045 (5th Cir. 1982) .............................................................. 4

*Littell v. Hous. Indep. Sch. Dist.*,
    894 F.3d 616 (5th Cir. 2018) .......................................................... 6, 19

*Loftin v. City of Prentiss, Miss.*,
    33 F.4th 774 (5th Cir. 2022) ............................................................... 14

*Lopez v. Escobar*,
    2013 WL 4679062 (Tex. App. 2013).................................................. 22

*Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*,
    369 F.3d 464 (5th Cir. 2004) ................................................................ 4

*Mason v. Lafayette City-Par. Consol. Gov't*,
    806 F.3d 268 (5th Cir. 2015) ............................................................. 13

*Monacelli v. City of Dallas*,
    2023 WL 6563410 (N.D. Tex. Sept. 1, 2023)........................... 15, 18, 19

*Monell v. Dep't of Soc. Servs.*,
    436 U.S. 658 (1978)............................................................................ 6

*Moreno v. City of Dall.*,
    2015 WL 3890467 (N.D. Tex. June 18, 2015) .................................. 17

*Morrow v. Meachum*,
    917 F.3d 870 (5th Cir. 2019) ............................................................ 10

*Papasan v. Allain*,
    478 U.S. 265 (1986)............................................................................ 4

*Peña v. City of Rio Grande*,
    879 F.3d 613 (5th Cir. 2018) ........................................... 6, 7, 15, 17

*Peterson v. City of Fort Worth*,
    588 F.3d 838 (5th Cir. 2009) ...................................................... 15, 17

*Pinedo v. City of Dallas*,
    2015 WL 5021393 (N.D. Tex. Aug. 25, 2015) ............................................... 7

*Ratliff v. Aransas Cty.*,
    948 F.3d 281 (5th Cir.), *cert. denied*,
    141 S. Ct. 376 L. Ed. 2d 97 (2020) ........................................................... 19

*Ross v. City of Dallas*,
    2022 WL 992593 (N.D. Tex. Mar. 31, 2022) ............................................ 17

*Ross v. City of Dallas*,
    2023 WL 8436060 (N.D. Tex. Dec. 4, 2023) ............................................. 16

*Ryder Integrated Logistics v. Fayette Cnty.*,
    453 S.W.3d 922 (Tex.2015) ................................................................ 20, 23

*Sanchez v. Young County*,
    956 F.3d 785, 791 (5th Cir. 2020) ............................................................. 6

*Scott v. Harris*,
    550 U.S. 372 (2007) ................................................................................... 11

*See City of San Antonio v. Hartman*,
    201 S.W.3d 667 (Tex. 2006) ..................................................................... 25

*Self v. City of Mansfield, Tex.*,
    369 F. Supp. 3d 684 (N.D. Tex. 2019) ..................................................... 17

*Snyder v. Trepagnier*,
    142 F.3d 791 (5th Cir. 1998) .................................................................... 15

*Spiller v. City of Tex. City, Police Dep't*,
    130 F.3d 162 (5th Cir. 1997) ...................................................................... 7

*St. Louis v. Praprotnik*,
    485 U.S. 112 (1988) ................................................................................... 15

*Tarrant Cnty. v. Bonner*,
    574 S.W.3d 893 (Tex. 2019) ..................................................................... 25

*Teague v. City of Dallas*,
    344 S.W.3d 434 (Tex. App 2011) .............................................................. 21

*Tex. Dep't of Crim. Justice v. Miller*,
    51 S.W.3d 583 (Tex.2001) ........................................................................ 20

*Tex. Natural Res. Conservation Comm'n v. White*,
    46 S.W.3d 864 (Tex.2001) ........................................................................ 20

*Torres v. Madrid,*
    592 U.S. 306 (2021) ........................................................................................ 13

*Townsend v. City of Alvin,*
    2006 WL 2345922 (Tex. App. 2006) ............................................................ 23

*Travis v. City of Mesquite,*
    830 S.W.2d 94, 96 (Tex.1992) ...................................................................... 24

*United States v. Morris*,
    40 F.4th 323 (5th Cir. 2022) ......................................................................... 13

*Valle v. City of Houston*,
    613 F.3d 536 (5th Cir. 2010) ........................................................................ 18

*Watson v. Bryant*,
    532 F. App'x 453 (5th Cir. 2013) ................................................................. 10

*Williams v. City of Baytown,*
    467 S.W.3d 566 (Tex. App. 2015) ........................................................... 21, 22

*World Wide Street Preachers Fellowship v. Twn. of Columbia,*
    591 F.3d 747 (5th Cir. 2009) ........................................................................ 15

*Zarnow v. City of Wichita Falls,*
    614 F.3d 161 (5th Cir. 2010) .......................................................................... 7

## STATUTES

Tex. Civ. Prac. & Rem. Code § 101.055(2) ....................................................... 24

Tex. Civ. Prac. & Rem.Code Ann. § 101.021(1)(A) .......................................... 20

Tex. Transp. Code § 545.401(a) ........................................................................ 25

Tex. Transp. Code Ann. § 547.004(a)(2) ........................................................... 12

Tex. Transp. Code Ann. § 547.302(a) ................................................................ 12

## RULES

Fed. R. Civ. P. 12 (b)(6) ...................................................................................... 4

Fed. R. Civ. P. 8(a)(2) ......................................................................................... 5

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant City of Dallas ("City"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, files this Motion to Dismiss Plaintiff's Complaint ("Motion"). Specifically, the City moves to dismiss all claims alleged against it in Plaintiff's Complaint (ECF No. 1) (the "Complaint"), and respectfully shows the Court as follows:

## I.      SUMMARY OF MOTION

Plaintiff Tomyia Crenshaw ("Plaintiff") maintains in the Complaint that two Dallas Police Department ("DPD") officers instigated a car chase with an innocent, frightened citizen who subsequently—and consequently—lost control of his car and suffered severe injuries. Plaintiff claims the officers then callously ignored him and drove past his burning vehicle, flippantly ascribing Plaintiff's straits to his own bad decisions.

In the Complaint, no City employee is cognizably alleged to have arrested, detained, or even physically touched Plaintiff, so the Fourth Amendment is not implicated. Because Plaintiff was never detained, arrested, or "seized" according to U.S. Supreme Court and Fifth Circuit authority, the officers owed no constitutional duty to Plaintiff to render aid. The Complaint's handful of dissimilar citizen complaints completely fails to establish any sort of pattern of unconstitutional acts that plausibly alleges municipal liability under even the most expansive understanding of *Monell*. And, according to the broad consensus of multiple Texas appellate courts' interpretations of Texas law, no City vehicle was the actual cause of Plaintiff's accident and, therefore, there was no waiver of the City's immunity to state law claims.

Therefore, even assuming Plaintiff received injuries in the manner he claims, the Complaint does not state a legal claim that the City was plausibly responsible. Plaintiff's Complaint must be dismissed.

## II.  BRIEF FACTUAL SUMMARY

Plaintiff filed his Complaint on March 27, 2024. Compl. Plaintiff claims that on May 13, 2020, or alternatively, May 13, 2022, he was involved in a single-car automobile accident. Compl. ¶¶ 1; 24.[1] Plaintiff claims co-Defendant Senior Corporal Leonard Anderson ("Anderson") and co-Defendant Police Officer Trainee Darrien Robertson ("Robertson," collectively "the Officers") witnessed Plaintiff's car "leave a gas station and turn down Martin Luther King, Jr. Blvd. without headlights on" at around 2:20 a.m. *Id*. ¶ 24. Plaintiff claims that while he allegedly "had not committed any crimes and did not meet the requirements for engaging in a high-speed pursuit, a high-speed chase ensued." *Id*. ¶ 25. This pursuit, Plaintiff states, was "in direct violation of DPD policy . . ." *Id*.

At the pursuit's inception, the Officers activated their lights and sirens, but towards the end of the pursuit the Officers allegedly deactivated them. *Id*. After the lights were deactivated, Plaintiff's vehicle "jumped a curb" and "crashed at a high rate of speed." *Id*. ¶ 26. The Officers purportedly saw the incident but did not stop, and Anderson stated: "That's his fault." *Id*. ¶ 27. Good Samaritans pulled Plaintiff from the car "as flames began to consume the vehicle." *Id*. ¶¶ 28; 30. Plaintiff claims to have endured significant injuries, including burns, because of the crash. *Id*. ¶

Plaintiff alleges that DPD Chief Eddie Garcia "said he is appalled and embarrassed by the incident." *Id*. ¶ 34. Plaintiff further alleges that the Officers "violated numerous policies and procedures by improperly engaging in a high-speed vehicle chase and failing to stop and render aid." *Id*. ¶ 35. He alleges that DPD, for its part,

> violated established training protocols; failed to conduct appropriate performance review procedures; failed to implement appropriate recruitment, hiring, and candidate selection methods; failed to implement appropriate retention efforts; and

---

[1] The accident appears to have occurred in 2022.

failed to train, implement policies, and/or create an atmosphere that prohibited the very destructive, biased, and reckless conduct of Officers Anderson and Robertson.

*Id*.

Plaintiff also claims that "DPD has failed to enact proper policies and procedures concerning rendering emergency medical treatment and has failed to properly train its officers with respect to providing emergency medical treatment. DPD has been made aware of its failures several times." *Id*. ⁋ 37. He claims that in 2020, "a group" presented a document that "made several suggestions for improvement" to "several city officials, including then Police Chief U. Renee Hall, Dallas County Judge Clay Jenkins, and [the] Dallas City Manager," concerning duty-to-intervene policies and the duty to render aid. *Id*. ⁋ 37. DPD is alleged to have been "aware that its lack of a policy and lack of training with respect to providing emergency medical aid was inadequate, as there have been several reports of DPD officers either failing or refusing" to render aid "to those in need." *Id*. ⁋ 38. The Complaint alleges the following events as evidence of same:

- June 2020: a woman reported to a City board that several DPD officers sped past her on the freeway, nearly tearing the front bumper of her vehicle off and failing to stop to render aid;
- July 2020: following "an interaction with a DPD Officer," a woman alleged that she was injured and the officer "had no concern for her health . . ."; and
- July 2020: an officer detained a man "in a car with no air for over thirty minutes, causing him to have an asthma attack," but "[i]nstead of providing first aid to the man, the officers completely ignored him."

*Id*.

The Complaint also cites the 2018 arrest of Diamond Ross, who is alleged to have been placed in a holding cell unconscious and subsequently died. *Id*. ⁋ 39. The Complaint alleges an event to have occurred after the incident at issue in this litigation. *Id*. ⁋ 40.

Plaintiff lodges six "counts" against Defendants:

(1) Excessive Force – 42 U.S.C. § 1983 (against the Officers);
(2) Failure to Render Aid – 42 U.S.C. § 1983 (against all Defendants);
(3) Municipal Liability – 42 U.S.C. § 1983 (against the City);
(4) Texas Torts Claims Act (against the City);

(5) Respondeat Superior (against the City); and

(6) Exemplary Damages.

*Id*. ¶¶ 45-62.

This Motion seeks dismissal of all causes of action against the City.

### III.    APPLICABLE LEGAL STANDARDS FOR 12(b)6 DISMISSAL

Rule 12(b)(6) provides for dismissal of a claim if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims stated in the complaint and must be evaluated solely based on the pleadings. *Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir. 1986). The allegations contained in the complaint are to be construed in the plaintiff's favor and all *well-pleaded* facts are to be accepted as true. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). However, conclusory allegations and legal conclusions couched as factual allegations are not to be accorded a presumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (recognizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (emphasizing that on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")); *Kaiser Alum. & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) ("Although we must accept as true the well-pleaded allegations of a complaint . . . we do not accept as true conclusory allegations in the complaint"); *see also Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (legal conclusions masquerading as factual assertions are insufficient to prevent dismissal for failure to state a claim). While the complaint need not contain "detailed factual allegations," the plaintiff must plead "more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Therefore, and critically, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Furthermore, the alleged facts must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555 (abrogating *Conley v. Gibson*, 355 U.S. 41 (1957)). Thus, to survive a motion to dismiss made pursuant to Rule 12, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id.* . at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). If a complaint pleads facts that are "merely consistent with" a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id..* (internal quotation marks and citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (applying Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing the pleader is entitled to relief[]")).

### IV. ARGUMENT AND AUTHORITIES

#### a. Plaintiff's allegations do not state any section 1983 claims against the City.

Plaintiff seeks to hold the City liable under 42 U.S.C. § 1983, which makes liable "[e]very person" who, under color of state law, violates federal constitutional rights. For this purpose, municipal entities like the City qualify as "persons." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). But the City "cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.*

Isolated unconstitutional actions by municipal employees will almost never trigger municipal liability. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citations omitted). Rather, to hold the City liable under § 1983, a plaintiff must establish that an "official policy" of the City *itself*—and not the policy of an individual city official—was the "moving force" and actual cause of the loss of constitutional rights and any resultant harm. *Id.*

Thus, to state a § 1983 claim against the City, the Complaint must allege sufficient facts to permit the reasonable inference 1) that a constitutional violation occurred, and 2) an "official policy" attributable to the City's policymakers that 3) "was the moving force" behind it. *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 622–23 (5th Cir. 2018); *see Peña v. City of Rio Grande*, 879 F.3d 613, 621 (5th Cir. 2018); *Groden v. City of Dallas*, 826 F.3d 280, 283–85 (5th Cir. 2016).

At the pleading stage, a plaintiff alleging a *Monell* claim "has two burdens: to [plausibly allege] (1) that a constitutional violation occurred and (2) that a municipal policy was the moving force behind the violation." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (citing *Monell*, 436 U.S. at 694); *see also Hutcheson v. Dallas County*, 994 F.3d 477, 483 (5th Cir. 2021) (rejecting the argument that a district court errs by dismissing a *Monell* claim without first analyzing the underlying constitutional violation).

As to alleging an official policy, "[t]o proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.'" *Peña*, 879 F.3d at 622 (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (footnote omitted). And, "'[t]o establish a custom, a plaintiff must demonstrate (and, at the pleading stage, must plausibly plead) 'a pattern of abuses that transcends the error made in a single case.'" *Pinedo v. City of Dallas*, No. 3:14-cv-958-D, 2015 WL 5021393, at *5 (N.D. Tex. Aug. 25, 2015) (quoting *Piotrowski*, 237 F.3d

at 582); *see also James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009) ("Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'") (citation omitted).

As this Court has noted, whether claims are framed as failures to train, supervise, or discipline, they are all analyzed the same. *Jean v. City of Dallas, Texas*, No. 3:18-CV-2862-M, 2019 WL 7195308, at *5 n.6 (N.D. Tex. Aug. 12, 2019), *report and recommendation adopted*, 2019 WL 7187104 (N.D. Tex. Dec. 23, 2019) ("Although Plaintiffs separately assert claims for failure to train and failure to supervise or discipline, the elements required to prove a claim under either theory are the same."). Regardless, all of Plaintiff's theories fail for lack of a constitutional violation, an unconstitutional policy, and causation.

### i. The Complaint does not allege facts from which this Court may plausibly infer that a constitutional violation occurred.

Without a constitutional violation, a plaintiff may not maintain a § 1983 claim against any person or governmental entity. *See Bustos v. Martini Club Inc.*, 599 F.3d 458, 464-66 (5th Cir. 2010) (dismissing a complaint for failure to plead off-duty officers' alleged excessive force "was a misuse of their power as state officers"). While the Complaint arguably alleges facts that demonstrate *moral failings* on the Officers' part, the allegations do not qualify as *constitutional violations*.

### 1. Plaintiff essentially alleges a "state-created danger" theory of liability, which the Fifth Circuit does not recognize.

Plaintiff does not allege that the Officers physically struck, detained, or arrested him. Rather, the gravamen of Plaintiff's allegations is that (1) the Officers' improper high-speed pursuit created a dangerous situation that resulted in the car crash; and then (2) the Officers failed to render

aid. *See* Compl. ⁋⁋ 3 ("This chase lasted for several minutes, giving [the Officers] ample time to contemplate their actions and understand the danger this high speed chase posed to [Plaintiff] and others."); 4 ("The officers made no attempt to stop and render aid.")

Plaintiff's crash-related allegations most resemble "state-created danger" theories of liability. "Under the state-created danger theory, a state actor may be liable under § 1983 if the state actor created or knew of a dangerous situation and affirmatively placed the plaintiff in that situation." *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 864 (5th Cir. 2012) (citation omitted).

However, "the Fifth Circuit has never recognized the 'state-created-danger' exception. In [its] published, and thus binding, caselaw, [it has] repeatedly declined to recognize the state-created danger doctrine." *Fisher v. Moore*, 73 F.4th 367, 372 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 569 (2024) (cleaned up). Thus, at the outset, the Fifth Circuit does not recognize a constitutional right to be free from "the danger this high speed chase posed to [Plaintiff] and others." Compl. ⁋ 3. As a result, Plaintiff's section 1983 claims must be dismissed.

### 2.  Plaintiff was never "seized" under the Fourth Amendment.

Plaintiff alleges the Officers violated his Fourth and Fourteenth Amendment rights to be free from excessive force and unreasonable searches and seizures. Compl. ⁋⁋ 45-50. It appears that the Complaint claims these violations stem from "initiating pursuit of Plaintiff despite Plaintiff having never been charged with a crime." *Id*. ⁋ 48. However, nothing about Plaintiff's allegations plausibly states any sort of unconstitutional seizure.

In a case involving the use of roadblocks, the Supreme Court addressed a strikingly similar situation:

> It is clear, in other words, that a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom

of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied.* That is the reason there was no seizure in the hypothetical situation that concerned the Court of Appeals. The pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit; and though he was in fact stopped, he was stopped by a different means—his loss of control of his vehicle and the subsequent crash. If, instead of that, the police cruiser had pulled alongside the fleeing car and sideswiped it, producing the crash, then the termination of the suspect's freedom of movement would have been a seizure.

*Brower v. County of Inyo*, 489 U.S. 593, 596–97 (1989) (emphasis in original).

Here, like in *Brower*, Plaintiff was not "stopped" or "seized" by the Officers' pursuit, even when they activated their flashing "lights and sirens" as a command to stop. The pursuit did not curtail Plaintiff's freedom of movement; in fact, Plaintiff has not asserted that he stopped his vehicle or complied with the Officers' show of authority. Consequently, the chase itself does not constitute a Fourth Amendment seizure under *Brower*, nor does the fact that Plaintiff eventually lost control of his vehicle and crashed. *See California v. Hodari D.*, 499 U.S. 621, 628 (1991) (applying *Brower* and noting that in that case "[w]e did not even consider the possibility that a seizure could have occurred during the course of the chase because, as we explained, that 'show of authority did not produce his stop'"). The Supreme Court again examined *Brower* later and summarized as follows: "We illustrated the point by saying that no Fourth Amendment seizure would take place where a 'pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit,' but accidentally stopped the suspect by crashing into him." *County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998) (quoting *Brower*, 489 U.S. at 597). Here, the Complaint does not allege that the Officers even "accidentally

stopped" Plaintiff "by crashing into him"; only that they simply observed—and allegedly ignored—Plaintiff's crash.[2]

Critically, nothing in the Complaint can plausibly be interpreted to indicate the Officers intended to cause harm to Plaintiff, much less the harm that allegedly befell him. Even assuming *arguendo* that the Officers' attempts to stop Plaintiff were negligent, under Supreme Court and Fifth Circuit precedent, simply attempting a seizure that accidentally or even negligently resulted in harm is not a Fourth Amendment violation. *See Gorman v. Sharp*, 892 F.3d 172, 175 (5th Cir. 2018) ("*Brower* and subsequent precedents foreclose liability under the Fourth Amendment in the absence of intentional conduct."); *Watson v. Bryant*, 532 F. App'x 453, 457 (5th Cir. 2013) ("The Supreme Court [in *Brower*] held that Fourth Amendment violations occur only through intentional conduct . . . . In the absence of evidence showing that [the officer] intended to use deadly force, we must conclude that the negligent shooting here did not itself violate [the suspect's] Fourth Amendment rights.") (citations omitted); *Baskin v. City of Houston, Miss.*, 378 F. App'x 417, 418 n.1 (5th Cir. 2010) ("To the extent that a Fourth Amendment claim was raised, any attempt to allege excessive use of force in the course of a negligent seizure is foreclosed by the Supreme Court's decision in *Brower* . . . .").

Further, the decision in *Scott v. Harris*, 550 U.S. 372 (2007), is instructive. The facts in *Scott* involved a high-speed pursuit of a fleeing suspect by several police officers that spanned ten miles at speeds exceeding eighty-five miles per hour. *Id.* at 375. Six minutes after the pursuit began, an officer maneuvered his car in such a way that caused the fleeing suspect to lose control

---

[2] Further, Plaintiff has not alleged that the Officers ran Plaintiff off the road, sideswiped him, much less fired a deadly weapon. But even Plaintiff had made such an allegation, such an act would not have been a violation under the Fourth Amendment. In fact, Fifth Circuit case law has made clear that "the Supreme Court has never found the use of deadly force in connection with a dangerous car chase to violate the Fourth Amendment, let alone to be a basis for denying qualified immunity. And it's why we previously refused to extend *Garner* to high-speed chases. We refuse again today." *Morrow v. Meachum*, 917 F.3d 870, 878 (5th Cir. 2019) (cleaned up).

of his car and ultimately crash down an embankment. *Id.* The man suffered injuries that resulted in quadriplegia. *Id.* The Court analyzed the facts against the backdrop of qualified immunity and concluded at the first step of the analysis that the officer's actions did not violate the Constitution. *Id.* at 377, 386. In reaching this conclusion, the Court described the scene as one involving "[m]ultiple police cars with blue lights flashing and sirens blaring" and a fleeing suspect who ignored warnings to stop. *Id.* at 384. The Court further described the pursuit as one that posed "extreme danger to human life" and an "actual and imminent threat" to others, including the officers involved in the pursuit. *Id.* at 383-84. Regarding the fleeing suspect, the Court acknowledged that the officer's actions posed a high likelihood of serious injury or death to the suspect. *Id.* at 384. The Court acknowledged, however, that it was *the fleeing suspect who intentionally placed himself and others in danger* by ignoring warnings to stop and engaging in a reckless, high-speed flight that ultimately forced the officer to act. *Id.* Given the facts of the case, the Court determined that it was reasonable for the officer to take the steps that he took to end the pursuit and ultimately held that an officer who takes action to terminate a dangerous high-speed pursuit that threatens lives does not act unconstitutionally, even when the officer's actions place the fleeing motorist at risk of serious injury or death. *Id.* at 386.

Here, unlike *Scott*, the Officers are not alleged to have ever touched Plaintiff, much less run him off the road. As such, nothing about Plaintiff's allegations plausibly state a Fourth Amendment claim. *See also Carney v. New Orleans City*, 468 F. Supp. 3d 751, 761–62 (E.D. La. 2020) (dismissing a claim of high-speed pursuit, finding that "[t]he reason why a suspect's accidental crash in a police pursuit does not constitute a seizure under the Fourth Amendment is that '[t]he pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit; and though he was in fact stopped, he was stopped by a

different means—his loss of control of his vehicle and the subsequent crash'") (quoting *Brower*, 489 U.S. at 596-97)).

Notably, Plaintiff alleges the genesis of the pursuit was a direct violation of unnamed DPD policies when they pursued him even though "[Plaintiff] had not committed any crimes." Compl. ₽ 25. This is ill-informed. The Complaint admits that at around 2:20 a.m., Plaintiff turned down a public road (Martin Luther King, Jr. Boulevard) "without headlights on." *Id*. The Texas Transportation Code requires that "[a] vehicle shall display each lighted lamp and illuminating device required by this chapter to be on the vehicle: (1) at nighttime; and (2) when light is insufficient or atmospheric conditions are unfavorable so that a person or vehicle on the highway is not clearly discernible at a distance of 1,000 feet ahead." Tex. Transp. Code Ann. § 547.302(a). Violating this provision is a misdemeanor offense. *Id.* at § 547.004(a)(2). At the nighttime hour of 2:20 a.m., Plaintiff failed to comply with this requirement by law to have his headlights on. Thus, contrary to the Complaint, Plaintiff had committed a crime, and one in the Officers' plain view.

Lastly, the Supreme Court long ago explicitly found that the Fourteenth Amendment cannot provide any plaintiff a cause of action for the circumstances at bar:

> The issue in this case is whether a police officer violates the Fourteenth Amendment's guarantee of substantive due process by causing death through deliberate or reckless indifference to life in a high-speed automobile chase aimed at apprehending a suspected offender. We answer no, and hold that in such circumstances only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation.

*Lewis*, 523 U.S. at 836.

Nothing alleged in the Complaint remotely indicates the Officers intended to cause Plaintiff harm. Therefore, Plaintiff has not plausibly alleged his Fourth *and* Fourteenth Amendment claims and they should be dismissed for failure to state a claim.

### 3.   The Officers had no Fourteenth Amendment constitutional duty to stop and render aid.

In *DeShaney*, the Supreme Court held that the "Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago Cnty. Dep't of Soc. Serv*s., 489 U.S. 189, 196 (1989) (collecting cases). "The Due Process Clause does, however, require the responsible government or governmental agency to provide medical care to persons . . . who have been injured *while being apprehended* by the police." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) (emphasis added).

Fatal to Plaintiff's failure to render aid claims: he was never apprehended. "An officer's visual signal for a motorist to stop—whether made by hand or lights and sirens—is such a show of authority." *United States v. Morris*, 40 F.4th 323, 328 (5th Cir. 2022). As noted above, in similar circumstances, the Supreme Court "did not even consider the possibility that a seizure could have occurred during the course of the chase because, as we explained, that 'show of authority did not produce his stop." *Hodari D.*, 499 U.S. at 628. The end of Plaintiff's absconding from the Officers was not a yielding to a show of authority, but instead, Plaintiff "jumped a curb [along a public street] and crashed at a high rate of speed." Compl. ¶ 26. This was not a seizure.

Further, the Supreme Court recently explored the edges of what constitutes a "seizure" in a case involving the shooting of a suspect in *Torres v. Madrid*, and ultimately found that "the application of *physical force to the body of a person with intent to restrain* is a seizure even if the person does not submit and is not subdued." 592 U.S. 306, 325 (2021) (emphasis added). And, even if a suspect was "seized" but broke free, the Court noted that the Fourth Amendment does not recognize any "'*continuing* arrest during the period of fugitivity.'" *Id*. at 318 (quoting *Hodari*

*D.*, 499 U.S. at 625). Nothing in the Complaint even indicates that the Officers physically touched Plaintiff, much less detained, arrested, or took him to jail.

Plaintiff was not seized; he was successful in his attempt to evade seizure notwithstanding police commands to stop. Therefore, however objectionable the Officers' alleged actions, they did not have a constitutional duty to render Plaintiff aid.

In sum, Plaintiff states no constitutional deprivation. Where there is a finding on the merits that a plaintiff's constitutional rights were not violated, there is no basis for liability on the part of the municipality. *Alpha v. Hooper*, 440 F. 3d 670, 672 (5th Cir. 2006) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 798-99 (1986)); *see Loftin v. City of Prentiss, Miss.*, 33 F.4th 774, 783 (5th Cir. 2022) ("But without a predicate constitutional violation, there can be no *Monell* liability."). Since there is no constitutional violation alleged in the Complaint, Plaintiff's *Monell* claims against the City must be dismissed.

### ii. The Complaint does not allege facts from which this Court may plausibly infer that the City maintained any unconstitutional policies.

Plaintiff's Complaint does not allege that the City had an unconstitutional *written* policy that caused the Officers' alleged bad acts. Instead, the Complaint principally recites labels of *Monell* causes of action that sound in failure-to-train or failure-to-discipline theories of liability:

> The Dallas Police Department (DPD) violated established training protocols; failed to conduct appropriate performance review procedures; failed to implement appropriate recruitment, hiring, and candidate selection methods; failed to implement appropriate retention efforts; and failed to train, implement policies, and/or create an atmosphere that prohibited the very destructive, biased, and reckless conduct of Officers Anderson and Robertson.

Compl. ¶ 35; *see also* ¶¶ 60-61.[3]

"A failure-to-train action is a type of *Monell* claim." *Hutcheson*, 994 F.3d at 482. Although Plaintiff appears to also assert separate claims for failure to discipline, "the elements required to prove a claim under either theory are the same." *Jean*, 2019 WL 7195308, at *5 n.6; *see, e.g.*, *Monacelli v. City of Dallas*, No. 3:21-CV-02649-L (BT), 2023 WL 6563410, at *9 n.1 (N.D. Tex. Sept. 1, 2023), *report and recommendation adopted*, No. 3:21-CV-2649-L, 2023 WL 6370753 (N.D. Tex. Sept. 29, 2023) (considering failure-to-train and failure-to-discipline claims together.)

"The 'failure to train can amount to a policy if there is deliberate indifference to an obvious need for training where citizens are likely to lose their constitutional rights on account of novices in law enforcement.'" *Id.* (quoting *Peterson*, 588 F.3d at 849). For a failure-to-train or a failure-to-discipline claim to survive a Rule 12(b)(6) motion, a plaintiff must sufficiently plead "that (1) the city failed to train or [discipline] the officers involved; (2) there is a causal connection between the alleged failure to [discipline] or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or [discipline] constituted deliberate indifference to the plaintiff's constitutional rights." *Id.* (quoting *Peña*, 879 F.3d at 623). And "[a] pattern of similar constitutional violations by untrained [or undisciplined] employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train [or discipline]." *Connick v. Thompson*, 563 U.S. 51, 62

---

[3] Plaintiff makes, in passing, an allegation that the City "ratified" the Officers' action. *Id.* ¶ 60(b). However, the Complaint also notes that at least one top City official, the DPD Chief, publicly and forcefully disapproved of the Officers' actions. *Id.* ¶¶ 29; 34. Even leaving aside that the DPD Chief is not a policymaker, this is not ratification. *Peterson*, 588 F.3d at 849 (holding that, "if the authorized policymakers *approve* a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final" (quoting *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (emphasis added)). Moreover, the Fifth Circuit "has limited the theory of ratification to 'extreme factual situations,'" *id.* (citing *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)), such as officers' killing of the innocent occupant of a truck or their shooting of a fleeing suspect in the back, *see id.*; *accord Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017) ("Ratification . . . is limited to 'extreme factual situations.'") (quoting *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747 (5th Cir. 2009) [quoting *Peterson*, 588 F.3d at 848]). Plaintiff's allegations do not meet the Fifth Circuit's "ratification" requirements for liability.

(2011) (quoting *Bryan Cty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)). Further, the Fifth Circuit has made clear that "[t]o show deliberate indifference, a plaintiff normally must allege a 'pattern of *similar constitutional violations* by untrained employees.'" *Hutcheson*, 994 F.3d at 482 (emphasis added) (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)). Plaintiff's Complaint fails to plausibly alleges all three (3) elements of their *Monell* claims.

Plaintiff does not allege facts remotely close to a "pattern" for *Monell* liability for a City policy or for deliberate indifference.

First, as noted above, the Complaint alleges "reports" and "allegations" (not proven instances) of supposedly similar behavior in the summer of 2020. Compl. ⁋ 38. None of these instances are substantially similar to the circumstances here. *Compare id.* (placing a man "in a car with no air for over thirty minutes, causing him to have an asthma attack. Instead of providing first aid to the man, the officers completely ignored him."), *with* ⁋⁋ 26-27 (alleging that Plaintiff's car "immediately burst into flames," and "the officers did not stop, continuing their way without checking on the driver").

Second, the Complaint cites the 2018 case of Diamond Ross, who is alleged to have been placed in a holding cell while unconscious and subsequently died. *Id*. ⁋ 39. This incident is inapposite and irrelevant for numerous reasons. Critically, Ms. Ross "*was arrested* in the early morning hours of August 18, 2018. *While in police custody*, Ross was transported to the hospital and died the next day from the toxic effects of phencyclidine (PCP)." *Ross v. City of Dallas*, No. 3:20-CV-01690-E, 2023 WL 8436060, at *1 (N.D. Tex. Dec. 4, 2023) (emphasis added). Here, Plaintiff was never arrested or in police custody. Further, this Court ultimately granted summary judgment for Ms. Ross's arresting officers because plaintiffs in that case did "not me[e]t their heavy burden to show the officers' deliberate indifference" and did not show "that any delay in

medical treatment resulted in substantial harm." *Ross v. City of Dallas*, No. 3:20-CV-1690-E, 2022 WL 992593, at *6 (N.D. Tex. Mar. 31, 2022). A case where officers *arrested* an individual and were later *dismissed as defendants* cannot provide notice to the City's policymaker that officers are allegedly not rendering adequate aid prior to arrest.

Third, and fatally, such a small handful of events cannot meet the Fifth Circuit's high bar for numerosity. *See Peterson*, 588 F.3d at 851 (noting that twenty-seven incidents of excessive force over a period of four years did not "reflect a pattern that can be said to represent official policy of condoning excessive force so as to hold the city liable for the acts of its employees' unconstitutional conduct"); *Pineda*, 291 F.3d at 329 (holding that eleven incidents of warrantless entry did not support a pattern of unconstitutional warrantless entry); *Moreno v. City of Dallas*, No. 3:13-CV-4106-B, 2015 WL 3890467, at *8-9 (N.D. Tex. June 18, 2015) (allegations of eight prior incidents in which police officers used excessive force were not sufficient to indicate a pattern); *see also Fuentes v. Nueces County*, 689 F. App'x 775, 778 (5th Cir. 2017) ("Although there is no rigid rule regarding numerosity, [the Fifth Circuit has found] that 27 prior incidents of excessive force over a three-year period . . . and 11 incidents offering 'unequivocal evidence' of unconstitutional searches over a three-year period . . .were not sufficiently numerous to constitute a pattern.").[4]

Courts routinely dismiss pleadings for such failures. *See, e.g.*, *Peña*, 879 F.3d at 623 (upholding dismissal of pleadings where plaintiff failed to identify pattern); *Self v. City of Mansfield, Tex.*, 369 F. Supp. 3d 684, 702-03 (N.D. Tex. 2019) (dismissing plaintiff's complaint after finding, among other things, no alleged "pattern of repeated constitutional violations" or

---

[4] "[T]he Fifth Circuit has been quite clear on the significant hurdle of proving a widespread unwritten policy or custom. It is one thing for Plaintiffs to present a pattern that should move [the police chief]. It is quite another to find a pattern that reflects the very nature and character of an entire police force." *Sanchez v. Gomez*, No. EP-17-CV-133-PRM, 2020 WL 1036046, at *38 (W.D. Tex. Mar. 3, 2020) (citations omitted).

"evidence of persistent, repeated, and constant violations of constitutional rights by virtue of this alleged failure to train"); *Harvey v. Montgomery County, Tex.*, 881 F. Supp. 2d 785, 798 (S.D. Tex. 2012) (dismissing First Amendment claims for failure to allege a pattern of similar constitutional violations); *Monacelli*, 2023 WL 6563410, at *10 (dismissing *Monell* claims for lack of pattern).

Because Plaintiff has not alleged an unconstitutional written City policy or a pattern of substantially similar unconstitutional acts, Plaintiff has not plausibly alleged a City policy or the requisite deliberate indifference to sustain his *Monell* claim even if he had alleged an unconstitutional act.

### iii. The Complaint does not allege facts from which this Court may plausibly infer any City policies were the "moving force" behind Plaintiff's injuries.

Plaintiff must allege facts which show "moving force" causation to establish his § 1983 claims. *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010). To show "moving force causation," Plaintiff must demonstrate a "direct causal link" between the municipality's policy and the deprivation of Plaintiff's federal rights. *Id.* at 404). "[T]he connection must be more than a mere 'but for' coupling between cause and effect. The deficiency in training, hiring, or supervision must be the actual cause of the constitutional violation." *Thompson v. Connick*, 578 F.3d 293, 300 (5th Cir. 2009) (cleaned up), *rev'd on other grounds*, 563 U.S. 51 (2011) . As one court in this circuit explained, in the police training context,

> [e]ven showing the obviousness of a need for additional training regarding the constitutional obligations of police officers may not be enough to establish deliberate indifference because it does not necessarily mean that the officers will so obviously make wrong decisions that failing to train them amounts to a decision by the city itself to violate the Constitution.

*Barrios-Barrios v. Clipps*, 825 F. Supp. 2d 730, 746-47 (E.D. La. 2011) (citing *Connick*, 563 U.S. at 70) (quotation marks omitted).

Moreover, the Fifth Circuit has held that "absent specific allegations supporting a plausible causation inference, this legal conclusion does not state a claim for relief and warrants dismissal under Rule 12(b)(6)." *Ratliff v. Aransas County*, 948 F.3d 281, 285 (5th Cir. 2020). Thus, to adequately allege causation at the pleading stage, Plaintiff's pleadings must be able to plausibly answer: "Would the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?" *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989), *quoted in Littell*, 894 F.3d at 629.

The Complaint repeatedly alleges that the Officers' high-speed pursuit of Plaintiff was against explicit "DPD policy." *See, e.g.*, Compl. ⁋ 6 ("[b]efore [the Officers] pursued [Plaintiff], in violation of DPD policy"); ⁋ 25 ("This [high-speed pursuit] was in direct violation of DPD policy stating that unless a suspect is wanted for a felony or in the process of a felony, DPD should not pursue and/or engage in a high-speed chase for safety reasons."). To find plausible *Monell* causation for an isolated act *against an explicit departmental regulation* would render the "moving force" pleading requirement a dead letter. *See Monacelli*, 2022 WL 4668054, at *10 ("The court agrees with the City that "[i]f one non-deadly incident, which goes unratified, can suffice to constitute sufficient municipal causation for an event two years later by different officers, then the words 'actual cause' will fail to mean anything.").

Local governments are only responsible for "their *own* illegal acts." *Darden v. City of Fort Worth, Tex.*, 808 F. App'x. 246, 249 (5th Cir. 2020) (emphasis in original). Because Plaintiff has not alleged facts, nor does Fifth Circuit case law envision a scenario, in which the City's alleged

failures caused or even encouraged the Officers' supposed bad acts, Plaintiff fails to state a claim for lack of causation.

> **b.  Plaintiff's allegations do not state any plausible tort claims against the City.**

Plaintiff alleges the City is liable under the Texas Torts Claims Act for the Officers' actions. Compl.  ¶¶ 62-67. Texas law, however, does not provide a waiver of sovereign/governmental immunity in the circumstances alleged in the Complaint.

The Tort Claims Act provides a limited waiver of governmental immunity from suit against a government unit if its employee, while negligently operating a motor-driven vehicle within the scope of his employment, proximately causes personal injuries or death. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1)(A) ("A governmental unit in the state is liable for: property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if: the property damage, personal injury, or death *arises from the operation or use of a motor-driven vehicle* or motor-driven equipment . . . .") (emphasis added); *see Tex. Dep't of Crim. Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001) ("The Tort Claims Act provides a limited waiver of sovereign immunity . . . ."). To demonstrate a waiver under this provision, a plaintiff must show a nexus between the employee's use of the vehicle and the injuries sustained. *Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542-43 (Tex. 2003). A causal nexus means that "the [vehicle]'s use must have actually caused the injury." *Id.* at 543 (quoting *Tex. Nat. Res. Conservation Comm'n v. White,* 46 S.W.3d 864, 869 (Tex. 2001)). The operation or use of a motor vehicle "does not cause injury if it does no more than furnish the condition that makes the injury possible." *Id.* "In other words, even where the plaintiff has alleged a tort on the part of a government driver, there is no immunity waiver absent the

negligent or otherwise improper use of a motor-driven vehicle." *Ryder Integrated Logistics v. Fayette County*, 453 S.W.3d 922, 928 (Tex. 2015) (per curiam).

> ### i. Under Texas law, Plaintiff's injuries were not the result of the Officers' "use" of a vehicle as defined by the Texas Torts Claims Act.

"The statute itself does not define 'arises from.'" *Ryder*, 453 S.W.3d at 928. But "[g]iven the Legislature's preference for a limited immunity waiver," the Texas Supreme Court "strictly construe[s] section 101.021's vehicle-use requirement." *Id.* at 927.

For this case, multiple Texas appellate courts have examined similar—or essentially identical—fact patterns and declined to find a sufficient nexus between the use of a government vehicle and the injuries for a waiver of immunity.

In a strikingly similar case, *Teague v. City of Dallas,* a court of appeals found no waiver of immunity when a plaintiff sued for personal injuries sustained in a crash that occurred after a suspect refused to obey a police officer's directive to stop. 344 S.W.3d 434, 436 (Tex. App.—Dallas 2011, pet. denied). During the subsequent police chase, the suspect crossed over a center island curb and collided with a responding officer's patrol car. *Id.* The court of appeals held that the undisputed facts did not demonstrate a causal nexus between the police's attempted detention and chase and the subsequent crash because the responding vehicle was not involved in the crash; it was the suspect driver's decision to cross the median that caused the collision. *Id.* at 439.

In *Williams v. City of Baytown*, a court of appeals examined a case where a suspect, being chased by police, crashed his truck into a third party's car after the suspect's truck ran over a "spike strip" the police had placed to stop the chase. 467 S.W.3d 566, 569 (Tex. App.—Houston [1st Dist.] 2015, no pet.). The chase began when the suspect fled police on a public road, later reaching speeds of ninety miles per hour, running red lights, and dangerously weaving in and out of traffic—all with the officers in pursuit. *Id.* at 570. Another officer up the road placed the spike strip on the

street. *Id*. After the suspect's truck ran over the strip, it rammed into a nearby car, setting it on fire and killing its driver. *Id*. The court of appeals found no waiver, because "no police car was directly involved in the collision—no officer blinded oncoming traffic or entered a freeway access road the wrong way during the chase." *Id*. at 576.

A court of appeals similarly rejected a Tort Claims Act waiver in *City of Dallas v. Hillis*, 308 S.W.3d 526 (Tex. App.—Dallas 2010, pet. denied). In *Hillis,* the plaintiffs contended that the city's police officers were negligent in "initiating and continuing a high-speed chase contrary to the no-chase policy of the Dallas Police Department." *Id.* at 532. The *Hillis* court rejected the notion that immunity was waived simply because a collision took place in the context of a police chase because "[t]he causal nexus is not satisfied by the mere involvement of a vehicle, nor by an operation or use that 'does no more than furnish the condition that makes the injury possible.'" *Id.* at 532 (quoting *Whitley*, 104 S.W.3d at 543). The court of appeals observed: "When an alleged cause is geographically, temporally, or causally attenuated from the alleged effect, that attenuation will tend to show that the alleged cause did no more than furnish the condition that made the effect possible." *Id.*

A court of appeals followed the *Hillis* court's reasoning in *Lopez v. Escobar*, No. 04-13-00151-CV, 2013 WL 4679062, at *5 (Tex. App.—San Antonio 2013, no pet.) (mem. op.). In *Lopez*, police officers signaled a truck to stop in a highway median, but the truck driver instead darted into oncoming traffic and collided with Escobar, the plaintiff. *Id.* at *2. In holding that the accident did not arise from the officer's operation or use of a motor vehicle, the court of appeals held that "pursuing" the truck driver into the median did not proximately cause Escobar's injuries. *Id.* at *6. Rather, the suspect driver caused them. *Id.*

Other courts of appeal, as well, have declined to find waivers under the Tort Claims Act in cases in which the government vehicle was not involved in causing the injuries made the basis of the suit. In *Townsend v. City of Alvin*, the court rejected the plaintiffs' contention that a police officer exercised control over a speeding individual's vehicle when the officer instructed the individual to drive straight home after a traffic stop, even though the officer knew the driver did not possess a driver's license. No. 14-05-00915-CV, 2006 WL 2345922, at *1 (Tex. App.— Houston [14th Dist.] 2006, no pet.) (mem. op.). In that case, the suspect driver ran a red light and killed another driver on the road a few minutes after the police encounter. *Id.* The court observed that the facts alleged did not establish a waiver of immunity because the police officer did not control the suspect's car at the time of the accident. *Id.* at *3-4.

Finally, in *City of Sugarland v. Ballard*, a court of appeals considered a wrongful death case in which the plaintiffs alleged that the police failed to properly secure the decedent in a patrol car. 174 S.W.3d 259, 262 (Tex. App.—Houston [1st Dist.] 2005, no pet.). The decedent escaped the car on foot and died in an auto-pedestrian accident with an oncoming car. *Id.* The court held the death did not arise from the car's operation. *Id.* at 266. The court reasoned that the cause of the death was the decedent's "decision to flee into freeway traffic." *Id.* The failure to secure the decedent merely furnished the condition that made it possible for him to escape. *Id.*

In reviewing a number of these intermediate appellate cases, the Supreme Court of Texas recently held that a plaintiff sufficiently alleged that an injury arose from an officer's use of a vehicle and that the vehicle's use was a proximate cause of an accident for the purposes of the Tort Claims Act when a police officer, who allegedly approached oncoming traffic using activated overhead lights, headlights, and a high-beam spotlight, blinded an oncoming driver. *Ryder*, 453 S.W.3d at 926, 929, 931. In *Ryder,* the supreme court cited the *Hillis* decision with approval. *Id.*

at 929-30. But in distinguishing that case, the Court reasoned that the police officer driver in *Ryder*, by blinding oncoming traffic, did more than furnish a condition that later caused an accident; instead, he was alleged to be a cotortfeasor, whose faulty driving was directly implicated as a cause of the accident. *Id.* at 928-30; *see Travis v. City of Mesquite*, 830 S.W.2d 94, 96, 99 (Tex. 1992) (holding that the summary-judgment evidence was sufficient to raise a fact issue as to cause in fact where a suspect driver and chasing police officers all entered a one-way access road going the wrong direction and the suspect driver crashed head-on into the plaintiffs' car, and the defense counsel had conceded that "fact issues remain").

Here, as examined above, the salient facts alleged are simply this: Plaintiff committed a roadway misdemeanor; the Officers attempted a stop him by using their lights and sirens; Plaintiff did not stop because he allegedly found the Officers' lights and sirens "further terrifying"; the Officers pursued Plaintiff with their lights and sirens activated; Plaintiff "lost control of [his] vehicle," his car "jumped a curb" along the public street, and his car struck a tree, Compl. ⁋⁋ 1-3; and the Officers' vehicle made no contact with Plaintiff's car. Considering Texas's strict laws on requiring a close nexus between the alleged injury and the government vehicle, the Complaint has not stated facts from which this Court can reasonably infer that the city's governmental immunity is waived. Therefore, Plaintiff's state law tort claims must be dismissed.

### ii. The Complaint does not negate the Texas Torts Claims Act's emergency exception.

Lastly, Plaintiff's claims also fall within the Texas Tort Claims Act's emergency exception. Tex. Civ. Prac. & Rem. Code § 101.055(2). Because they do, the Act does not waive the City's immunity from those claims regardless of whether they would otherwise fall within the scope of that waiver. Under Section 101.055, the Act

does not apply to a claim arising . . . from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others.

*Id.* § 101.055(2).[5]

The plaintiff bears the burden of negating Section 101.055's applicability. *See City of San Antonio v. Hartman*, 201 S.W.3d 667, 672 (Tex. 2006). Nothing in the Complaint indicates the Officers violated emergency "laws and ordinances." Plaintiff claims the Officers violated City policies, but according to the Texas Supreme Court, "a police department's internal policies, in and of themselves, are not 'laws' or 'ordinances'" for purposes of the Act. *City of San Antonio v. Maspero*, 640 S.W.3d 523, 530 (Tex. 2022). Further, nothing in the Complaint meets the standard of "the Transportation Code," which holds that "reckless driving consists of driving a vehicle in 'willful or wanton disregard for the safety of persons or property.'" *Id.* at 531 (quoting Tex. Transp. Code § 545.401(a)). "[T]his standard requires 'conscious indifference,' or 'subjective awareness of an extreme risk.'" *Id.* (quoting *Tarrant County v. Bonner*, 574 S.W.3d 893, 902 (Tex. 2019)). Here, Plaintiff's complaint acknowledges that he violated a traffic law, refused to stop in response to the Officers' lawful show of authority, ran off the road and crashed his vehicle. Therefore, the Officers' actions cannot create liability for the City.

---

[5] The pursuit of a fleeing suspect is considered an "emergency." *City of Austin v. Powell*, 684 S.W.3d 455, 463 (Tex. App.--Austin 2022, pet. granted) ("The Transportation Code permits operators of authorized emergency vehicles to disregard certain rules of the road, such as speed limits, under certain circumstances, including when . . . *pursuing a fleeing suspect*.") (emphasis added).

## IV.    CONCLUSION

Plaintiff's Complaint offers no substantive allegations that the City *itself* caused his alleged injuries and amounts to little more than *respondeat superior* liability.[6] Accordingly, the Court should grant the City's Motion and dismiss Plaintiff's claims against the City.

---

[6] Plaintiff lists several other "counts" that do not merit extensive attention. "Count V" is labeled as "Respondeat Superior." Compl. ¶¶ 58-60. Under basic municipal liability law, outside of the already-discussed Torts Claims Act, a governmental entity cannot be held liable under a theory of respondeat superior or vicarious liability. *Monell*, 436 U.S. at 694. "Count VI" is labeled as "Exemplary Damages." Compl. ¶¶ 61-62. First, the Tort Claims Act "does not authorize exemplary damages." Tex. Civ. Prac. & Rem.Code Ann. § 101.024. Second, under Texas law, "an award of punitive damages is not a separate cause of action," *Sulzer Carbomedics, Inc. v. Or. Cardio–Devices, Inc.*, 257 F.3d 449, 461 (5th Cir. 2001), such that a demand for punitive damages is not "separate and distinct from the underlying claim for compensatory damages," where "Texas, like the majority of states, limits punitive damages to cases in which actual compensatory damages are found," *Lanier v. Salas,* 777 F.2d 321, 325 (5th Cir. 1985). The same is true for demands for punitive damages sounding in federal law. *See, e.g., Auster Oil & Gas, Inc. v. Stream*, 835 F.2d 597, 604 (5th Cir. 1988) (addressing 42 U.S.C. § 1983 claim). "Punitive damages are not an independent claim or cause of action, but are a remedy available in various causes of action." *Id.* Therefore, to the extent Plaintiff brings these two Counts as separate causes of action, they should be dismissed for failure to state a claim.

## CERTIFICATE OF SERVICE

I certify that on April 30, 2024, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the CM/ECF electronic case filing system of the court. The electronic case filing system will send a "Notice of Electronic Filing" notification to all case participants registered for electronic notice, including all *pro se* parties and/or attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*s/ J. Cheves Ligon*
J. Cheves Ligon