# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **TOMYIA CRENSHAW** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **vs.** | § | |
| | § | **Civil Action No. 3:24-CV-731-L** |
| | § | |
| **LEONARD ANDERSON,** | § | |
| **DARRIEN ROBERTSON,** | § | |
| **AND THE CITY OF DALLAS,** | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT CITY OF DALLAS' MOTION TO DISMISS

TO THE HONORABLE UNITED STATES MAGISTRATE JUDGE:

Plaintiff Tomyia Crenshaw files this, his Response to Defendant City of Dallas' Motion to Dismiss Plaintiff's Complaint (Dkt. No. 7, "Motion"), and in support thereof would respectfully show the Court as follows:

# TABLE OF CONTENTS

I.  SUMMARY OF THE ARGUMENT ................................................................. 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ...................................... 2

III.  RULE 12(B)(6) STANDARD .................................................................... 3

IV.  ARGUMENTS AND AUTHORITIES........................................................ 5

  A.  Plaintiff's Complaint Properly States a Section 1983 Claim ......................... 5

    1.  Plaintiff's Complaint Properly Alleges Facts From Which the Court May Plausibly Infer That a Policy or Practice exists ................................................... 6

    2.  Plaintiff's Complaint Plausibly Alleges that the Policies in Question Were the Moving Force Behind the Violation of Plaintiff's Constitutional Rights...................... 10

    3.  Plaintiff's Complaint Sufficiently Alleges That His Constitutional Rights Were Violated ................................................................................... 12

      i.  Defendant's "State-Created Danger" Argument Fails........................................ 13

      ii.  Plaintiff Has Alleged Facts From Which the Court May Plausibly Infer His Fourth Amendment Rights Were Violated........................................................ 13

      iii. Plaintiff Had a Fourteenth Amendment Right to Receive Emergency Medical Aid from Defendants........................................................................ 14

  B.  Plaintiff's Complaint Properly States a Texas Tort Claims Act Against Defendant City of Dallas ................................................................................. 15

    1.  Plaintiff's Injuries Were the Result of Defendants' Use of the Vehicle ................. 15

    2.  The Texas Tort Claims Act Emergency Exception Is Not Applicable.................. 17

V.  CONCLUSION .......................................................................................... 19

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................... 4

*Barr v. City of San Antonio*,
  No. CIVASA-06-CA-0261-XR, 2006 WL 2322861 (W.D. Tex. July 25, 2006).................... 10

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................... 4

*Bland Indep. Sch. Dist. v. Blue*,
  34 S.W.3d 547 (Tex. 2000).............................................................................. 16

*Brower v. Cnty. of Inyo*,
  489 U.S. 593 (1989)...................................................................................... 14

*Buttross v. Great Lakes Ins. SE*,
  No. 1:22-CV-00086-BU, 2022 WL 16749045 (N.D. Tex. Oct. 14, 2022)............................. 4

*City of Amarillo v. Martin*,
  971 S.W.2d 426 (Tex. 1998)............................................................................. 19

*City of San Antonio v. Maspero*,
  640 S.W.3d 523 (Tex. 2022)............................................................................. 17

*Doe v. Beaumont Indep. Sch. Dist.*,
  615 F. Supp. 3d 471 (E.D. Tex. 2022)................................................................. 4

*Doe v. Leander Indep. Sch. Dist.*,
  No. 1:20-CV-00408-LY, 2020 WL 13833132 (W.D. Tex. Dec. 22, 2020) ........................... 10

*Estate of Davis ex rel. McCully v. City of N. Richland Hills*,
  406 F.3d 375 (5th Cir.2005) ............................................................................ 9

*Firefighters' Ret. Sys. v. Grant Thornton, L.L.P.*,
  894 F.3d 665 (5th Cir. 2018) .......................................................................... 4

*Fisher v. Moore*,
  73 F.4th 367 (5th Cir. 2023) ......................................................................... 13

*Flores v. City of Palacios*,
  381 F.3d 391 (5th Cir. 2004) ......................................................................... 13

*Fuentes v. Nueces Cnty., Tex.*,
  689 Fed. Appx. 775 (5th Cir. 2017).................................................................. 10

*Groden v. City of Dallas, Tex.*,
  826 F.3d 280 (5th Cir. 2016) .......................................................................... 6

*Harper v. McAndrews*,
  499 F. Supp. 3d 312 (E.D. Tex. 2020)................................................................ 15

*Hicks-Fields v. Harris Cty.*,
  860 F.3d 803 (5th Cir. 2017) .......................................................................... 6

*Ikerd v. Blair*,
   101 F.3d 430 (5th Cir. 1996) ................................................................. 13

*In re Supreme Beef Processors, Inc.*,
   468 F.3d 248 (5th Cir. 2006) ................................................................. 4

*Jackson v. City of Houston*,
   No. 4:23-CV-00052, 2023 WL 7093031 (S.D. Tex. Oct. 26, 2023) ....................... 18

*Jackson v. Valdez*,
   852 Fed. Appx. 129 (5th Cir. 2021)......................................................... 9

*Kingsley v. Hendrickson*,
   576 U.S. 389 (2015).......................................................................... 9

*Kitchen v. Dallas Cnty.*,
   759 F.3d 468 (5th Cir. 2014) ............................................................... 9

*Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*,
   07 U.S. 163 (1993)........................................................................... 5

*May v. City of Arlington, Tex.*,
   398 F. Supp. 3d 68 (N.D. Tex. 2019) ....................................................... 6

*Moreno v. City of Dallas*,
   No. 3:13-CV-4106-B, 2015 WL 3890467 (N.D. Tex. June 18, 2015) ........................ 9

*Peña v. City of Rio Grande City*,
   879 F.3d 613 (5th Cir. 2018) ............................................................... 6

*Peterson v. City of Fort Worth, Tex.*,
   588 F.3d 838 (5th Cir. 2009) .............................................................. 10

*Pineda v. City of Houston*,
   291 F.3d 325 (5th Cir. 2002) ............................................................. 10

*Piotrowski v. City of Houston*,
   237 F.3d 567 (5th Cir. 2001) .............................................................. 8

*Reese v. Anderson*,
   926 F.2d 494 (5th Cir. 1991) .............................................................. 5

*Rico v. JPMorgan Chase Bank N.A.*,
   No. 3:10-CV-1643-L, 2011 WL 1792854 (N.D. Tex. May 10, 2011) ....................... 17

*Ryder Integrated Logistics, Inc. v. Fayette Cnty.*,
   453 S.W.3d 922 (Tex. 2015)............................................................ 15, 16

*Sanchez v. Gomez*,
   283 F. Supp. 3d 524 (W.D. Tex. 2017) .................................................... 10

*Sanders-Burns v. City of Plano*,
   594 F.3d 366 (5th Cir. 2010) .............................................................. 9

*Scott v. Harris*,
   550 U.S. 372 (2007)....................................................................... 14

*Sosa v. Coleman*,
  646 F.2d 991 (5th Cir. 1981) ......................................................................... 3

*Tanglewood E. Homeowners v. Charles-Thomas, Inc.*,
  849 F.2d 1568 (5th Cir. 1988) ..................................................................... 3

*Tennessee v. Garner*,
  471 U.S. 1 (1985) ........................................................................................ 13

*Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*,
  141 S.W.3d 198 (Tex. 2004) ....................................................................... 16

*Webster v. City of Houston*,
  735 F.2d 838 (5th Cir. 1984) ........................................................................ 8

**Statutes**

TEX. CIV. PRAC. & REM. CODE § 101.055 ......................................................... 17

TEX. CIV. PRAC. & REM. CODE 101.021. .......................................................... 15

TEX. TRANSP. CODE § 546.001. ........................................................................ 18

TEX. TRANSP. CODE § 546.003 ......................................................................... 18

TEX. TRANSP. CODE § 546.005 ......................................................................... 18

**Rules**

FED. R. CIV. P. 12(b)(6) ............................................................................... 3, 4

FED. R. CIV. P. 15(a)(2) .................................................................................. 19

FED. R. CIV. P. 8(a) ......................................................................................... 4

# I.    SUMMARY OF THE ARGUMENT

"That's his fault." This is the statement by senior police officer Leonard Anderson to trainee Darrien Robertson as they looked at Plaintiff's vehicle burning after it had crashed. Instead of accepting the responsibility that they had caused this crash to occur after engaging in a needless and reckless high-speed chase, these officers acted with utter indifference to Plaintiffs' life and drove in the opposite direction. Defendant Anderson was acting in accordance with the City's policies and practices and was training Defendant Robertson in that manner when they determined to leave Plaintiff burning in his vehicle instead of getting out and rendering aid. This vile action deprived Plaintiff of his constitutional rights and caused him to be seized and then left for dead despite the fact that the officers caused this collision to occur. Unfortunately, this is not the first time that officers for the Dallas Police Department have turned their blind eye to injuries and needs of those that they have in their custody or care. Defendants must be held accountable for this deliberately indifferent behavior to Plaintiff's constitutional rights.

Defendant's Motion to Dismiss is mainly composed of smoke screens and red herring arguments that have no relevant connection to Plaintiff's actual pleadings which must be the main focus in a Rule 12(b)(6) inquiry. A motion to dismiss at this stage must be rarely granted as the only requirement is that the complaint states a plausible claim. When read in the proper light, Plaintiff's Complaint sets forth more than sufficient grounds to assert a § 1983 claim against the City along with a claim under the Texas Tort Claims Act. Plaintiff has shown significant policies and procedures that were promulgated by the policymaker that were the moving force in Plaintiff's constitutional violation. Additionally, Defendants' actions fall squarely within the waiver of immunity under the Texas Tort Claims Act and the facts do not give rise to any exception.

When construed liberally, Plaintiff's facts paint more than a sufficient picture of the egregious actions by Defendants that would give rise to a plausible claim. Our Courts and our cities should be encouraging officers to run to render aid to those in need regardless of the circumstances that got them there, but Defendants' actions show a policy that encourages officers to ignore the cries for help and act with deliberate indifference to the lives and safety of others even when those officers caused the danger. Therefore, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

This case stems from the reprehensible and unlawful actions of Defendant City of Dallas ("Defendant"), Defendant Leonard Anderson ("Defendant Anderson"), Defendant Darrien Robertson ("Defendant Robertson") that occurred on May 13, 2022. On that date, Defendants Anderson and Robertson were engaged in a routine patrolling assignment when they noticed a red car, driven by Plaintiff Tomyia Crenshaw ("Plaintiff") pass by without a headlight on. Defendants Anderson and Robertson then pulled out behind Plaintiff's car and activated their emergency lights and sirens, ultimately engaging in a high-speed pursuit of Plaintiff.

Defendants Anderson and Robertson pursued Plaintiff for several blocks before eventually turning off their emergency lights and sirens. Although their emergency lights and sirens were no longer on, Defendants Anderson and Robertson continued to pursue Crenshaw. Defendants Anderson and Robertson did not stop pursuing Plaintiff until they caused his car to crash. Indeed, it was only once Plaintiff's car had crashed and was engulfed in flames did the pursuit stop. However, instead of stopping to assess and help remedy the fiery situation which they had created, Defendants Anderson and Robertson brushed off the incident by saying, "That's his fault," and

then simply turned onto a different street and drove away, leaving Plaintiff to nearly die inside of his burning vehicle.

As a result of Defendant's heinous conduct, Plaintiff has suffered third-degree burns on over fifty percent (50%) of his body. Some of Plaintiff's burns go all the way down to his bones—particularly those sustained from his waist down. Additionally, Plaintiff has suffered a broken arm, leg, collar bone, hip, and several ribs. As a result of such injuries, Plaintiff had to be hospitalized from May 13, 2022, to September 3, 2022. Since the incident, Plaintiff has undergone over twenty (20) different surgeries and is still receiving outpatient treatment for his injuries. Additionally, Plaintiff—a once healthy 23-year-old—must now use a wheelchair and/or walker to perform many daily activities he previously had no problem with. Plaintiff anticipates past and future medical bills and expenses, past and future disfigurement, past and future physical limitations and/or incapacity, and past and future pain and suffering and mental anguish.

Accordingly, Plaintiff filed his Original Complaint ("Complaint") against Defendant City of Dallas, Defendant Anderson, and Defendant Robertson on March 27, 2024. On April 30, 2024, Defendant City of Dallas filed its Motion to Dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6), and Plaintiff filed its Response in Opposition to Defendant City of Dallas Motion to Dismiss ("Response") on May 21, 2024.

### III.    RULE 12(B)(6) STANDARD

"A motion to dismiss for failure to state a claim 'is viewed with disfavor, and is rarely granted.'" *Tanglewood E. Homeowners v. Charles-Thomas, Inc.*, 849 F.2d 1568, 1572 (5th Cir. 1988) (quoting *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981)). The purpose of a Rule 12(b)(6) motion to dismiss is to test the formal sufficiency of a complaint, not to decide the merits of the case. *See Buttross v. Great Lakes Ins. SE*, No. 1:22-CV-00086-BU, 2022 WL 16749045, at *3

(N.D. Tex. Oct. 14, 2022), *R. & R. adopted*, No. 1:22-CV-086-H-BU, 2022 WL 16752849 (N.D. Tex. Nov. 7, 2022) (stating that the motion is not to be used as "a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case"). To be granted, a motion to dismiss under Rule 12(b)(6) must establish that the complaint fails to meet the liberal notice pleading standard of Rule 8(a)(2), which merely requires, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). The 12(b)(6) "pleading standard should not be robotically applied, however, so as to overwhelm a plaintiff's right to adjudicate her claim on the merits." *Doe v. Beaumont Indep. Sch. Dist.*, 615 F. Supp. 3d 471, 486 (E.D. Tex. 2022). As such, in reviewing a 12(b)(6) motion to dismiss, courts have "an affirmative duty to ask whether it 'appears *certain*' that plaintiff '*cannot* prove *any* set of facts' that would entitle her to legal relief." *Id.* (quoting *In re Supreme Beef Processors, Inc.*, 468 F.3d 248, 251 (5th Cir. 2006) (emphasis in original).

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept as true all facts alleged in a plaintiff's complaint and must draw all reasonable inferences in favor of the plaintiff. *See Firefighters' Ret. Sys. v. Grant Thornton, L.L.P.*, 894 F.3d 665, 669 (5th Cir. 2018). When the factual matter contained within the complaint, accepted as true, states a claim for relief that is plausible on its face, a Court must deny a motion to dismiss under Rule 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint has facial plausibility when it allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Id.* The allegations need not contain detailed, factual allegations, and the right to relief need not be probable. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, the "allegations must be enough to raise a right to relief above the speculative level…on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.*

Defendant attempts to subject Plaintiff to a higher standard than is required or permitted under Rule 12(b)(6). Indeed, a slew of the cases that Defendant cites in support of its argument that Plaintiff's claims should be dismissed involve a trial court's decision on a motion for summary judgment, or an appeal of a trial court's decision on a motion for summary judgment. Reliance on such cases is improper, because it is well established that "the evidentiary burden on the non-movant in a summary judgment motion is significantly greater than in a motion to dismiss." *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991). As such, these cases do not support dismissal at the pleading stage; if anything, they show that the Fifth Circuit and its district courts routinely allow Section 1983 claims to proceed to discovery. Additionally, it is well established that Section 1983 claims are not subjected to a higher pleading standard. *See Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993) (holding that, "[a] federal court may not apply a 'heightened pleading standard'—more stringent than the usual pleading requirements of Federal Rule of Civil Procedure 8(a)—in civil rights cases alleging municipal liability under § 1983").

This Court should not be swayed by Defendant's attempt to raise the pleading standard that Plaintiff's Complaint is subject to. Instead, this Court should simply apply the well-settled standard set forth above in determining the Complaint's sufficiency under Rule 12(b)(6).

## IV.    ARGUMENTS AND AUTHORITIES

### A.    Plaintiff's Complaint Properly States a Section 1983 Claim

To survive a 12(b)(6) motion to dismiss a claim of municipal liability under Section 1983, a plaintiff need only "set forth facts, or those from which the court can reasonably infer, that: '(1)

an official policy; (2) promulgated by the municipal policymaker[1]; (3) was the moving force behind the violation of a constitutional right.'" *May v. City of Arlington, Tex.*, 398 F. Supp. 3d 68, 78 (N.D. Tex. 2019), *supplemented*, No. 3:16-CV-1674-L, 2019 WL 1429662 (N.D. Tex. Mar. 28, 2019) (quoting *Hicks-Fields v. Harris Cty.*, 860 F.3d 803, 808 (5th Cir. 2017)). A plaintiff is not required to "offer proof of his or her allegations at the pleading stage." *Id.* Plaintiff's Complaint clearly meets this standard.

1. **Plaintiff's Complaint Properly Alleges Facts From Which the Court May Plausibly Infer That a Policy or Practice exists**

It is worth noting that Defendant's Motion does not even attempt to address several of the policies set forth in Plaintiff's Complaint. *See* Dkt. No. 7 at 14–18. Instead, Defendant only attacks Paragraph 35 of the Complaint, which Defendant characterizes as a policy of failing to train and failing to discipline. *See* Dkt. No. 7 at 14.[2]

Plaintiff's Complaint meets the pleading standards with respect to the first element. *See* Dkt. No. 1 at ¶ 27 ("…policies to not render aid despite seeing and causing what happened"); ¶ 35 ("The Dallas Police Department (DPD) violated established training protocols; failed to conduct appropriate performance review procedures; failed to implement appropriate recruitment, hiring, and candidate selection methods; failed to implement appropriate retention efforts; and failed to train, implement policies, and/or create an atmosphere that prohibited the very destructive, biased, and reckless conduct of Officers Anderson and Robertson"); ¶ 37 ("DPD has failed to enact proper policies and procedures concerning rendering emergency medical treatment and has failed to

---

[1] Defendant does not challenge Plaintiff's Complaint with respect to the second element. In any event, "the specific identity of the policymaker is a legal question that need not be pled." *Groden v. City of Dallas, Tex.*, 826 F.3d 280, 284 (5th Cir. 2016).

[2] Defendant notes in its Motion that Plaintiff has not alleged that Defendant had any unconstitutional written policies. To the extent Defendant is alleging the other policies (which it does not address in its Motion) set forth in Plaintiff's Complaint are insufficient because they are unwritten, Defendant is wrong. The Fifth Circuit has explicitly stated that a City can be held liable under Section 1983 for a written or unwritten policy or custom. *See Peña v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018).

PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF DALLAS' MOTION TO DISMISS    6

properly train its officers with respect to providing emergency medical treatment"); ¶ 41 ("DPD has refused or otherwise failed to provide medical treatment in the face of an emergency. Such incidents are illustrative of the polic[i]es, practices, and procedures of DPD and the City of Dallas were acting in accordance with and that were the driving force behind Defendants' violation of Crenshaw's clearly established constitutional rights"); ¶ 44 ("The incident occurred as a result of…the unlawful policies in place at the Dallas Police Department, and/or the failure to have appropriate policies in place, the failure to train and supervise the involved officer(s), and negligent hiring and retention of the involved officer(s)"); ¶ 57 (stating that Defendant was "on notice of the Constitutional defects in the training of Dallas police officers, including, but not limited to failure to adopt proper policies requiring that officers render medical aid to civilians, and inadequate training of officers in rendering emergency medical aid"); ¶ 60(c) ("As a matter of both policy and practice, the City of Dallas Police Department had a de facto or informal custom of allowing officers to engage in a vehicular pursuit of potential suspects in the absence of a warrant for the suspect['] arrest, or without committing a felony"); ¶ 60(d) ("As a matter of widespread custom and policy, the City of Dallas Police Department did not require police officers to either stop and render aid to civilians suspected of committing violations of the law, or require officers to refrain from high-speed pursuit of individuals not convicted of a felony, in violation of Plaintiff's Fourth, and Fifth, and/or Fourteenth Amendments rights so as to constitute a deliberately indifferent failure to adopt policies necessary to prevent constitutional violations by the City of Dallas"); ¶ 60(e) ("As a matter of both policy and practice, the City of Dallas encourages, and is thereby the moving force behind, the very type of misconduct at issue in Counts I-II by failing to adequately train, supervise, control and discipline its officers such that its failure to do so manifests deliberate indifference"); ¶ 60(f) ("As a matter of both policy and practice, the City of Dallas failed to use

PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF DALLAS' MOTION TO DISMISS   7

appropriate and generally accepted law enforcement policies, procedures, and training in handling injured, medically disabled, or wounded civilians"); ¶ 60(g) ("As a matter of both policy and practice, the City of Dallas facilitates the very type of misconduct at issue in Counts I-II by failing to adequately investigate, punish, and discipline prior instances of similar misconduct, thereby leading Dallas police officers to believe their actions will never be meaningfully scrutinized. Accordingly, in that way, the City of Dallas directly encourages future uses of excessive deadly force, unlawful detention, failures to intervene, such as those Plaintiff complains of"); ¶ 60(h) ("As a matter of both policy and practice, the City of Dallas encourages and is the moving force behind the failure to render aid by promoting and encouraging a policy, practice, and procedure for police officers not to render aid to individuals injured by the police officers' conduct").

The policy or custom in a Section 1983 municipal liability claim may come in the form of a common practice of city officials or employees that, although not officially adopted or promulgated, is common enough to constitute a custom that fairly represents municipal policy. *See Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) (citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984)). Plaintiff has plausibly alleged facts sufficient to infer a pattern by Defendant and its employees of failing and/or refusing to render medical aid to those in need, failing to adopt policies and procedures for Dallas Police Officers with respect to rendering medical aid to those in need, and failing to properly train Dallas Police Officers on rendering medical aid to those in need. Indeed, Plaintiff's Complaint contains several, similar instances of conduct by the Dallas Police Department. *See* Dkt. No. 1 ¶¶ 38–40. In its Motion, Defendant claims that these past incidents cited by Plaintiff fail to establish a pattern because they are not "substantially similar to the circumstances here," and because they do not meet "the Fifth Circuit's high bar for numerosity." *See* Dkt. No. 7 at 16–17. Defendant's arguments are unpersuasive.

First, neither the United States Supreme Court, nor the Fifth Circuit Court of Appeals, require that the past instances of conduct a Plaintiff alleges to show a pattern for purposes of Section 1983 municipal liability be "substantially" similar as Defendant alleges. *See* Dkt. No. 7 at 16. Instead, all that is required is that they be "fairly similar." *See Kitchen v. Dallas Cnty.*, 759 F.3d 468, 484 (5th Cir. 2014) (quoting *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010)), abrogated in part on other grounds by *Kingsley v. Hendrickson*, 576 U.S. 389, 397–98 (2015); *Moreno v. City of Dallas*, No. 3:13-CV-4106-B, 2015 WL 3890467, at *9 (N.D. Tex. June 18, 2015) ("While a pattern of *similar* violations is required, the Fifth Circuit has held that the specificity required 'should not be exaggerated.'") (emphasis in original) (quoting *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir.2005)). Here, Plaintiff— who is without the benefits of discovery—has alleged a total of eight (8) instances where Dallas Police Officers either failed or refused to provide medical aid. *See* Dkt. No. 1 at ¶¶ 38–40. All of these instances can—at the very *least*—be considered "fairly similar" to the facts and circumstances of the present case. As such, dismissal on this ground is inappropriate.

Second, Defendant's contention that Plaintiff does not meet "the Fifth Circuit's high bar for numerosity" is a complete red herring, because the Fifth Circuit has no "bar for numerosity" at all. *See* Dkt. No. 7 at ¶ 17. Indeed, the Fifth Circuit has explicitly stated that, "we have no rigid rule regarding numerosity to prove a widespread pattern." *See Jackson v. Valdez*, 852 Fed. Appx. 129, 135 (5th Cir. 2021). One of the cases that Defendant cites in support of its contention that the Fifth Circuit has such a "high bar for numerosity" even states that, "[t]here is no bright line rule for determining how many prior incidents are sufficient to establish a pattern." *See Moreno,* 2015 WL 3890467, at *8. The remaining three cases Defendant cites to support its argument are irrelevant to determining whether Plaintiff has pled sufficient facts to survive a Rule 12(b)(6)

PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF DALLAS' MOTION TO DISMISS   9

motion to dismiss, because none of those three cases involve a 12(b)(6) motion to dismiss. *See Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838 (5th Cir. 2009) (motion for summary judgment); *Pineda v. City of Houston*, 291 F.3d 325 (5th Cir. 2002) (motion for summary judgment); *Fuentes v. Nueces Cnty., Tex.*, 689 Fed. Appx. 775 (5th Cir. 2017) (motion for summary judgment).

Lastly, it is worth reiterating that no discovery has been conducted in this case, and "[a]t the motion to dismiss stage…it is not appropriate to dismiss a case for failure to state a claim when evidence might be adduced showing that the City has constructively adopted such a policy or custom as Plaintiff alleges." *See Barr v. City of San Antonio*, No. CIVASA-06-CA-0261-XR, 2006 WL 2322861, at *4 (W.D. Tex. July 25, 2006). Accordingly, this Court should deny Defendant's Motion to Dismiss Plaintiff's Section 1983 claim.

### 2.     Plaintiff's Complaint Plausibly Alleges that the Policies in Question Were the Moving Force Behind the Violation of Plaintiff's Constitutional Rights

To survive a Rule 12(b)(6) motion to dismiss, Plaintiff need only allege that Defendant's had the requisite degree of culpability and that there is a causal link between Defendant's actions and the deprivation of Plaintiff's rights. *See Sanchez v. Gomez*, 283 F. Supp. 3d 524, 539 (W.D. Tex. 2017). A plaintiff plausibly alleges that a defendant acted with the requisite degree of culpability by alleging that Defendant's actions reflect deliberate indifference to the risk that a violation of Plaintiff's rights may follow from such actions. *See Id.* To properly plead the existence of a "causal link", plaintiff "need only provide enough facts to allow the Court to make a plausible inference that the policy was the moving force behind the harm in this case." *See Id.*

Plaintiff's Complaint has plausibly pleaded that Defendant acted with deliberate indifference, especially at this stage in the proceedings where no discovery has taken place. *See Doe v. Leander Indep. Sch. Dist.*, No. 1:20-CV-00408-LY, 2020 WL 13833132, at *7 (W.D. Tex. Dec. 22, 2020), *R. & R. adopted*, No. 1:20-CV-408-LY, 2021 WL 11670039 (W.D. Tex. Jan. 8,

PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF DALLAS' MOTION TO DISMISS  10

2021) (stating that many of plaintiff's allegations did not rise to the level of deliberate indifference but that "others – at this stage of the proceedings – allege something more than mere negligence or mere unreasonableness" and that, "[a]t this early stage of the proceedings, the culmination of these allegations are sufficient enough to satisfy [p]laintiff's requirement of pleading deliberate indifference"); Dkt. No. 1 at ¶ 27 (stating that when Defendants Robertson and Anderson chose to drive away after the vehicle crashed, they were doing so in accordance with "DPD policies to not render aid despite seeing and causing what happened"), ¶ 29 (stating that Defendant Robertson was not fired, but was merely suspended, following the incident), ¶ 36 (stating that Defendants disregarded several warnings, which "led to the ill-fated high-speed chase and horrific vehicular accident"), ¶ 37 (stating that several City officials were made aware of the failures associated with its policies (or lack thereof) concerning rendering emergency medical treatment and its failure to train officers in providing such treatment, but that suggestions to improve such policies were "clearly ignored…in deliberate indifference to the lives and safety of its citizens"), ¶ 38 (stating that the Dallas Police Department "was aware that its lack of policy and lack of training with respect to providing emergency medical aid was inadequate"), ¶ 57 (stating that Defendant was "on notice of the Constitutional defects in the training of Dallas police officers, including but not limited to failure to adopt proper policies requiring that officers render medical aid to civilians, and inadequate training of officers in rendering emergency medical aid").

The most notable showing of this deliberate indifference is Officer Anderson's statement to the trainee after seeing Plaintiff's vehicle engulfed in flames state "That's his fault." Dkt. No. 1 at ¶ 27. This statement by an officer who is supposed to be training another officer on the proper policies and procedures and as his supervisor shows the City's policies and the deliberate indifference to the life and rights of Plaintiff when they saw an accident that they caused and

deliberately chose to drive the opposite way. This egregious attitude and response arises well above the standard needed to assert a § 1983 claim.

Likewise, Plaintiff's Complaint contains sufficient factual allegations from which the Court may infer a causal link between Defendant's conduct and the deprivation of Plaintiff's rights. *See* Dkt. No. 1 at ¶ 30 (stating that Plaintiff was trapped in a burning vehicle as a result of Defendants Robertson and Anderson's conduct), ¶ 41 (stating that Defendants Anderson and Robertson "were acting in accordance with" Defendant's policies and procedures and that such policies and procedures "were the driving force behind Defendants' violation of [Plaintiff]'s clearly established constitutional rights"), ¶ 44 ("[t]he incident occurred as a result of…the unlawful policies…, the failures to have appropriate policies in place, the failure to train and supervise the involved officer(s), and negligent hiring and retention of the involved officer(s)"), ¶ 60 (stating that the Defendant officers' actions were undertaken in accordance to the policy and practice of Defendant), ¶¶ 60 – 61 (describing the various policies and practices of Defendant and how such policies and practices are the moving force behind constitutional violations).

Because Plaintiff's Complaint contains sufficient facts to support a plausible inference that Defendant's policies were the moving force behind the violation of Plaintiff's constitutional rights, this Court should deny Defendant's Motion to Dismiss Plaintiff's claim for municipal liability under Section 1983.

### 3.     Plaintiff's Complaint Sufficiently Alleges That His Constitutional Rights Were Violated

Defendant alleges that Plaintiff's Complaint fails to "allege facts from which this Court may plausibly infer that a constitutional violation occurred." *See* Dkt. No. 7 at 7. However, as demonstrated below and as evidenced by simply reading Plaintiff's Complaint, Plaintiff has plausibly alleged that his Fourth and Fourteenth Amendment rights were violated.

PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF DALLAS' MOTION TO DISMISS 12

i.          **Defendant's "State-Created Danger" Argument Fails**

Defendant alleges that, because the facts and allegations set forth in Plaintiff's Complaint "resemble" a "state-created danger" theory of liability, Plaintiff's claims should be dismissed. *See* Dkt. No. 7 at 8. However, Defendant's argument is nothing more than a smoke screen and does not support dismissal under Rule 12(b)(6).

Plaintiff does not contend—either in his Complaint or in this Response—that he is proceeding under a "state-created danger" theory to impose liability against Defendant. Contrary to Defendant's assertion, Plaintiff's claims do not even remotely "resemble" those brought under that theory, because the "state-created danger" theory is "an exception to the general rule that the government has no duty under the Due Process Clause to protect people from *privately* inflicted harms." *Fisher v. Moore*, 73 F.4th 367, 368–69 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 569, 217 L. Ed. 2d 303 (2024) (emphasis added). Clearly, Plaintiff does not allege in his Petition that his injuries were inflicted by some private, third-party. Instead, Plaintiff is claiming that Defendant City of Dallas and certain Dallas Police Officers directly injured Plaintiff themselves.

ii.          **Plaintiff Has Alleged Facts From Which the Court May Plausibly Infer His Fourth Amendment Rights Were Violated**

The Fourth Amendment guarantees citizens the right to be free from unreasonable searches and seizures, including the right to be free from the use of excessive force by law enforcement. *See Ikerd v. Blair*, 101 F.3d 430, 433–34 (5th Cir. 1996). To bring a claim under Section 1983 for excessive force in violation of the Fourth Amendment, a Plaintiff must show that he was seized. *See Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004). "Whenever an officer restrains the freedom of a person to walk away, he has seized that person." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985).

In the present case, Plaintiff was seized when the Defendants caused his vehicle to crash by initiating their high-speed pursuit. When Plaintiff's vehicle crashed, it was set ablaze, trapping Plaintiff inside and completely curtailing Plaintiff's ability and freedom to exit his vehicle and walk away. Dkt. No. 1. Trapping Plaintiff inside a burning vehicle certainly constitutes a seizure for Fourth Amendment purposes.

In its Motion, Defendant says that in *Brower v. County of Inyo*, the United States Supreme Court addressed a "strikingly similar situation." Dkt. No. 7 at 8. However, Defendant completely misstates the holding in *Brower*, by stating that, "[h]ere, like in Brower, Plaintiff was not 'stopped' or 'seized.'" Dkt. No. 7 at 9. However, the Supreme Court in *Brower* held just the opposite: that the plaintiff was seized. *See Brower v. Cnty. of Inyo*, 489 U.S. 593, 599 (1989). In further support of its argument that Plaintiff was not seized, Defendant cites *Scott v. Harris*. Dkt. No. 7 at 10. However, in that case—which was decided at the summary judgment stage—there was no dispute that a seizure had occurred. *See Scott v. Harris*, 550 U.S. 372, 381 (2007) ("[petitioner] does not contest that his decision to terminate the car chase by ramming his bumper into respondent's vehicle constituted a 'seizure'"). Thus, Defendant has not shown that the Complaint does not put forth a plausible claim to overcome the motion to dismiss.

### iii.    Plaintiff Had a Fourteenth Amendment Right to Receive Emergency Medical Aid from Defendants

Defendant's next argument is that Plaintiff had no right to receive, and Defendants Anderson and Robertson had no duty to provide, emergency medical aid, because Plaintiff was never seized. Def.'s Mot. to Dismiss at 13. As explained above, however, Plaintiff's Complaint has alleged enough facts for this Court to reasonably infer that Plaintiff was seized.

Even if Plaintiff was not seized under the Fourth Amendment, the caselaw discussing the right to receive medical treatment does not explicitly provide that the right to such treatment is

PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF DALLAS' MOTION TO DISMISS 14

limited to persons who have been subject to a Fourth Amendment seizure. *See Harper v. McAndrews*, 499 F. Supp. 3d 312, 328 (E.D. Tex. 2020) ("An actionable failure to render medical aid requires (1) deliberate indifference; (2) which results in substantial harm."). No doubt under these standards, Plaintiff can more than show a failure to render aid arising to the level of a constitutional violation. Defendants knew that their reckless and baseless chase caused Plaintiff to crash and be engulfed in the flames. They also knew that this crash and the ongoing flames posed more than a substantial degree of risk of harm but actually were harming Plaintiff at the time. Yet, these officers in accordance with the City of Dallas's policies and procedures deliberately chose to ignore the pain and suffering Plaintiff was experiencing and decide to look at Plaintiff, state that it was "his fault" by a trainer for the police department, and drive off without rendering any aid whatsoever. The Chief of Police even admitted that the officers should have rendered aid.  These facts and allegations more than sufficiently state a constitutional violation.

**B.    Plaintiff's Complaint Properly States a Texas Tort Claims Act Against Defendant City of Dallas**

       **1.    Plaintiff's Injuries Were the Result of Defendants' Use of the Vehicle**

The Texas Tort Claims Act ("TTCA") waives governmental immunity in certain circumstances. For example, under the TTCA, local government entities, such as Defendant, may be held liable in negligence for property damage, personal injury, and death arising from the operation or use of a motor-driven vehicle or equipment. *See* TEX. CIV. PRAC. & REM. CODE 101.021. For a plaintiff's harm to arise from the "use" of a vehicle, the "government employee must have been actively operating the vehicle at the time of the incident," and "the vehicle must have been used as a vehicle." *Ryder Integrated Logistics, Inc. v. Fayette Cnty.*, 453 S.W.3d 922, 927 (Tex. 2015). Additionally, plaintiff must allege "negligent or otherwise improper use of a motor-driven vehicle." *See Id.* at 928. Lastly, to show that the harm "arises from" such negligence,

PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF DALLAS' MOTION TO DISMISS 15

there must be a "nexus between the operation of use of the motor-driven vehicle or equipment and a plaintiff's injuries." *Id.* (quoting *Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 543 (Tex. 2003)). The Texas Supreme Court has also described this standard as "something more than actual cause but less than proximate cause." *See Id.* at 929; *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004) ("'[A]rise out of' means ... there is but[-]for causation, though not necessarily direct or proximate causation.").

Plaintiff's Complaint clearly alleges that the officers were driving the vehicle at the time of the incident and does not allege any facts which might suggest that the police vehicle was being used as anything other than a vehicle. *See* Dkt. No. 1 at ¶¶ 24–27. Additionally, Plaintiff has met the "arises out of" prong. Plaintiff's Complaint contains several facts which would make it plausible to infer that there is a nexus between Defendants' negligent use of their police cruiser and Plaintiff's injuries. *See* Dkt. No. 1 at ¶ 27 (stating that Defendants "caus[ed] what happened"), ¶ 30 (stating that, "[a]s a result of" Defendants conduct, Plaintiff was trapped in his burning vehicle), ¶ 42 (stating that the Defendant officers "cause[d] the accident in question"), ¶ 43 (stating that Defendant officers "drove away from a horrific crash scene they helped cause"), ¶ 64 (stating that Defendant officers "negligently used…Dallas Police Department patrol vehicles to engage in a reckless pursuit of Plaintiff which proximately caused Plaintiff's injuries").

None of the cases Defendant relies on in support of its argument are instructive, as all of those cases were decided in response to a plea to the jurisdiction—not a motion to dismiss under Rule 12(b)(6). *See* Def.'s Mot. to Dismiss at 21–23. "[A] court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised." *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 555 (Tex. 2000); *See Rico v. JPMorgan Chase Bank N.A.*, No. 3:10-CV-1643-L, 2011 WL

1792854, at *2 (N.D. Tex. May 10, 2011) (stating that in ruling on a motion to dismiss under Rule 12(b)(6), "the court cannot look beyond the pleadings"). Accordingly, this Court should deny Defendant's Motion to Dismiss with respect to Plaintiff's TTCA claim.

### 2.    The Texas Tort Claims Act Emergency Exception Is Not Applicable

Defendant contends that Plaintiff's claim falls within the TTCA's "emergency exception." *See* Dkt. No. 7 at 24; TEX. CIV. PRAC. & REM. CODE § 101.055(2). To show that the emergency exception does not apply, a plaintiff must plead facts from which the Court may reasonably infer that (1) the officers were not responding to an emergency call or reacting to an emergency situation, or (2) the response or reaction was not in compliance with the laws and ordinances applicable to emergency action, or in the absence of such law or ordinance, the action was taken with conscious indifference or reckless disregard for the safety of others. *See* TEX. CIV. PRAC. & REM. CODE § 101.055(2); *City of San Antonio v. Maspero*, 640 S.W.3d 523, 529 (Tex. 2022).

Here, there was no emergency call that Officers Anderson and Robertson were responding to at the time of the accident; instead, their pursuit was initiated based on their own observations of Plaintiff's vehicle. *See* Dkt. No. 1 at ¶¶ 1–2. Likewise, in initiating their pursuit, Officers Anderson and Robertson were reacting to a minor traffic violation for a broken headlight, which can hardly be said to constitute an "emergency situation." *Id*. The fact that Defendants Anderson and Robertson had already turned off their police lights and sirens before the accident occurred further demonstrates that they were not responding to an emergency at the time of the accident in question. *See Id.* at ¶ 3. Accordingly, the emergency exception does not apply.

Even assuming, *arguendo*, that Defendants were responding to an emergency, their response was not in compliance with the laws and ordnances applicable to emergencies—namely, Section 546.001 of the Texas Transportation Code. Under that section, police operating authorized

emergency vehicles may, among other things, exceed the speed limit. *See* TEX. TRANSP. CODE §
546.001. However, the ability to exceed the speed limit is limited to situations in which exceeding
the speed limit will "not endanger life or property." *See Id*. Further, a person operating an
emergency vehicle must use "audible or visual signals," such as police lights and sirens. *See* TEX.
TRANSP. CODE § 546.003. Additionally, the Texas Transportation Code is clear that drivers of
authorized emergency vehicles are not relieved of their "duty to operate the vehicle with
appropriate regard for the safety of all persons," or from "the consequences of reckless disregard
for the safety of others." *See* TEX. TRANSP. CODE § 546.005.

It is clear that Defendants' conduct did in fact endanger both life and property, considering
both Plaintiff's vehicle and his person caught on fire as a result of Defendants' actions. *See Jackson
v. City of Houston*, No. 4:23-CV-00052, 2023 WL 7093031, at *8 (S.D. Tex. Oct. 26, 2023)
(denying defendant's motion to dismiss based on the emergency exception, because "[t]here are
too many factual uncertainties for the Court to determine, at this stage, that [defendant officer] did
not endanger life or property"). Additionally, at the time of the accident, Defendants Robertson
and Anderson were no longer using their lights and sirens. *See* TEX. TRANSP. CODE § 546.003.

Even assuming further that Defendants Robertson and Anderson did not violate the Texas
Transportation Code provisions applicable to emergency situations, or assuming that those
provisions do not apply, Plaintiff's TTCA claim still should not be dismissed because Defendants
Anderson and Robertson acted with "[C]onscious indifference or reckless disregard." TEX.
TRANSP. CODE § 546.005.

Because Plaintiff's Complaint pleads sufficient facts to plausibly allege that the emergency
exception contained within the TTCA does not apply, Defendant's Motion should be denied with
respect to Plaintiff's TTCA claim. An operator of a motor vehicle acts recklessly if he commits an

PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF DALLAS' MOTION TO DISMISS 18

act that he either knew or should have known posed a high degree of risk of serious injury. *See City of Amarillo v. Martin*, 971 S.W.2d 426, 430 (Tex. 1998). Here, Plaintiff's Complaint contains sufficient factual matter from which this Court may reasonably infer Defendants Anderson and Robertson acted recklessly. Indeed, Plaintiff alleges that Defendants Anderson and Robertson had "ample time to contemplate their actions and understand the danger this high-speed chase posed to [Plaintiff] and others." Dkt. No. 1 at ¶ 3. Plaintiff further contends that Defendants Anderson and Robertson refused to pull over and help Plaintiff even after causing and witnessing the fiery crash, and instead merely quipped, "That's his fault," and drove away. *Id.* ¶¶ 4–5. Additionally, the fact that Dallas Police Department has a policy against initiating a high-speed pursuit in cases not involving a felony suggests that Defendants Anderson and Robertson were aware that such a high speed pursuit posed safety risks. *See* Pl.'s Compl. ¶ 25.

Accordingly, because Plaintiff had plead sufficient facts from which this Court can infer that the emergency exception to the TTCA does not apply, this Court should deny Defendant's Motion to Dismiss with respect to Plaintiff's TTCA claims.

## V.     CONCLUSION

As demonstrated above, Plaintiff's Complaint is more than sufficient to survive dismissal under Federal Rule of Civil Procedure 12(b)(6). Accordingly, this Court should deny Defendant's Motion to Dismiss in its entirety.

Alternatively, should this Court determine that Defendant is entitled to dismissal on any of Plaintiff's claims, Plaintiff respectfully asks that this Court allow Plaintiff the opportunity to amend its Complaint. *See* FED. R. CIV. P. 15(a)(2) ("The court should freely give leave [to amend a pleading] when justice so requires.").

Respectfully submitted,

**BEN CRUMP LAW, PLLC**

*/s/ Paul A. Grinke*
Paul A. Grinke
State Bar No. 24032255
paul@bencrump.com
Aaron Dekle
State Bar No. 24100961
aaron@bencrump.com
5 Cowboys Way, Suite 300
Frisco, Texas 75034
(972) 942-0494 Telephone


**MCCATHERN, PLLC**

Carl L. Evans, Jr.
State Bar No. 24056989
cevans@mccathernlaw.com
Alizabeth A. Guillot
State Bar No. 24138578
aguillot@mccathernlaw.com
Stephen Bergren
State Bar No. 24134428
sbergren@mccathernlaw.com
3710 Rawlins Street, Suite 1600
Dallas, Texas 75219
(214) 741-2662 Telephone

**COUNSEL FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2024, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notice of this filing to all counsel of record.


*/s/ Paul A. Grinke*
Paul A. Grinke


PLAINTIFF'S RESPONSE TO DEFENDANT CITY OF DALLAS' MOTION TO DISMISS  20