IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TOMYIA CRENSHAW, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Civil Action No. 3:24-CV-0731-L |
| LEONARD ANDERSON *et al.*, | § § § § | |
| *Defendants*. | § § | |

**DEFENDANTS LEONARD ANDERSON AND DARRIEN ROBERTSON'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT, AND BRIEF IN SUPPORT**

CITY ATTORNEY OF THE CITY OF DALLAS

TAMMY L. PALOMINO
City Attorney

*/s/ J. Cheves Ligon*
J. Cheves Ligon
Senior Assistant City Attorney
Texas State Bar No. 24070147
john.ligon@dallas.gov
7DN Dallas City Hall
1500 Marilla Street
Dallas, Texas 75201
Telephone:   214-670-1236
Facsimile:   214-670-0622
*Attorneys for Defendants*

**TABLE OF CONTENTS**

I. SUMMARY OF MOTION ...................................................................................................1

II. BRIEF FACTUAL SUMMARY ........................................................................................1

III. APPLICABLE LEGAL STANDARDS FOR 12(b)6 DISMISSAL..................................3

IV. ARGUMENT AND AUTHORITIES.................................................................................5

a. Plaintiff's allegations do not state any section 1983 claims against the Officers. ........................................................................................................................5

1. Plaintiff essentially alleges a "state-created danger" theory of liability, which the Fifth Circuit does not recognize. ......................................................................5

2. Plaintiff was never "seized" under the Fourth Amendment. ...............................6

3. The Officers had no Fourteenth Amendment constitutional duty to stop and render aid. ...........................................................................................................11

4. The Complaint does not allege sufficient facts to overcome the Officers' qualified immunity defense................................................................................12

V. CONCLUSION...................................................................................................................14

CERTIFICATE OF SERVICE ...................................................................................................15

## TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................. 3, 4

*Baskin v. City of Houston, Mississippi*,
    378 F. App'x 417 (5th Cir. 2010) ................................................................................ 8

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................. 3, 4

*Beltran v. City of El Paso*,
    367 F.3d 299 (5th Cir.2004) ......................................................................................... 6

*Brower v. Cnty. of Inyo*,
    489 U.S. 593 (1989) ..................................................................................................... 7

*California v. Hodari D.*,
    499 U.S. 621 (1991) ............................................................................................... 7, 12

*Carney v. New Orleans City*,
    468 F. Supp. 3d 751 (E.D. La. 2020) ......................................................................... 10

*City of Revere v. Mass. Gen. Hosp.*,
    463 U.S. 239 (1983) ................................................................................................... 11

*Cnty. of Sacramento v. Lewis*,
    523 U.S. 833 (1998) ..................................................................................................... 8

*Conley v. Gibson*,
    355 U.S. 41 (1957) ....................................................................................................... 4

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*,
    489 U.S. 189 (1989) ................................................................................................... 11

*Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*,
    675 F.3d 849 (5th Cir. 2012) ........................................................................................ 6

*Fernandez-Montes v. Allied Pilots Ass'n*,
    987 F.2d 278 (5th Cir. 1993) ........................................................................................ 3

*Fisher v. Moore*,
    73 F.4th 367 (5th Cir. 2023) ........................................................................................ 6

*Gorman v. Sharp*,
    892 F.3d 172 (5th Cir. 2018) ............................................................................................... 8

*In re Katrina Canal Breaches Litig.*,
    495 F.3d 191 (5th Cir. 2007) ............................................................................................... 3

*Jackson v. Procunier*,
    789 F.2d 307 (5th Cir. 1986) ............................................................................................... 3

*Johnson v. Dallas I.S.D.*,
    38 F.3d 198 (5th Cir.1994) .................................................................................................. 6

*Kaiser Alum. & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*,
    677 F.2d 1045 (5th Cir. 1982) ............................................................................................. 3

*Leffall v. Dallas I.S.D.*,
    28 F.3d 521 (5th Cir.1994) .................................................................................................. 6

*Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*,
    369 F.3d 464 (5th Cir. 2004) ............................................................................................... 3

*Mason v. Lafayette City-Par. Consol. Gov't*, 8
    06 F.3d 268 (5th Cir. 2015) ............................................................................................... 11

*Morrow v. Meachum*,
    917 F.3d 870 (5th Cir. 2019) ............................................................................................... 8

*Papasan v. Allain*,
    478 U.S. 265 (1986) ............................................................................................................ 3

*Rice v. ReliaStar Life Ins. Co.*,
    770 F.3d 1122 (5th Cir. 2014) ........................................................................................... 10

*Rios v. City of Del Rio, Tex.*,
    444 F.3d 417 (5th Cir. 2006) ............................................................................................... 6

*Scott v. Harris,*
    550 U.S. 372 (2007) ............................................................................................................ 9

*Torres v. Madrid,*
    592 U.S. 306 (2021) .......................................................................................................... 12

*United States v. Morris*,
    40 F.4th 323 (5th Cir. 2022) ............................................................................................. 11

*Watson v. Bryant*,
    532 F. App'x 453 (5th Cir. 2013) ........................................................................................ 8

**STATUTES**

Tex. Transp. Code Ann. § 547.004(a)(2) ....................................................................................... 10

Tex. Transp. Code Ann. § 547.302(a) ........................................................................................... 10

**RULES**

Fed. R. Civ. P. 12 (b)(6) .................................................................................................................. 3

Fed. R. Civ. P. 8(a)(2) ..................................................................................................................... 4

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendants Sr. Cpl. Leonard Anderson and Officer Darrien Robertson (the "Officers"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, file this Motion to Dismiss Plaintiff's Complaint ("Motion"). Specifically, the Officers move to dismiss all claims alleged against them in Plaintiff's Complaint (ECF No. 1) (the "Complaint"), and respectfully show the Court as follows:

## I. SUMMARY OF MOTION

Plaintiff Tomyia Crenshaw ("Plaintiff") maintains in the Complaint that two Dallas Police Department ("DPD") officers instigated a car chase with an innocent, frightened citizen who subsequently—and consequently—lost control of his car and suffered severe injuries. Plaintiff claims the officers then ignored him and drove past his burning vehicle, ascribing Plaintiff's straits to his own bad decisions.

In the Complaint, Plaintiff does not allege or provide sufficient factual content to allow the court to reasonably infer that either of the Officers arrested, detained, or even physically touched him. Thus, the Fourth Amendment is not implicated. Because Plaintiff was never detained, arrested, or "seized" according to Supreme Court and Fifth Circuit authority, the Officers owed no constitutional duty to Plaintiff to render aid. Further, because no case law at the time of the incident clearly established that the Officers' actions violated Plaintiff's constitutional rights, the Complaint cannot overcome their entitlement to qualified immunity.

Therefore, even assuming Plaintiff sustained injuries as alleged, the Complaint does not state a plausible legal claim against the Officers upon which relief can be granted. Plaintiff's Complaint must be dismissed.

## II. BRIEF FACTUAL SUMMARY

Plaintiff filed his Complaint on March 27, 2024. Compl. Plaintiff claims that on May 13,

1

2020, or alternatively, May 13, 2022, he was involved in a single-car automobile accident. Compl. ¶¶ 1; 24.[1] Plaintiff claims the Officers witnessed Plaintiff's car "leave a gas station and turn down Martin Luther King, Jr. Blvd. without headlights on" at around 2:20 a.m. *Id*. ¶ 24. Plaintiff claims that while he allegedly "had not committed any crimes and did not meet the requirements for engaging in a high-speed pursuit, a high-speed chase ensued." *Id*. ¶ 25. This pursuit, Plaintiff states, was "in direct violation of DPD policy . . ." *Id*.

At the pursuit's inception, the Officers activated their lights and sirens, but towards the end of the pursuit the Officers allegedly deactivated them. *Id*. After the lights were deactivated, Plaintiff's vehicle "jumped a curb" and "crashed at a high rate of speed." *Id*. ¶ 26. The Officers purportedly saw the incident but did not stop, and Anderson stated: "That's his fault." *Id*. ¶ 27. Good Samaritans pulled Plaintiff from the car "as flames began to consume the vehicle." *Id*. ¶¶ 28; 30. Plaintiff claims to have endured significant injuries, including burns, because of the crash. *Id*. ¶

Plaintiff alleges that DPD Chief Eddie Garcia "said he is appalled and embarrassed by the incident." *Id*. ¶ 34. Plaintiff further alleges that the Officers "violated numerous policies and procedures by improperly engaging in a high-speed vehicle chase and failing to stop and render aid." *Id*. ¶ 35.

Plaintiff lodges six "counts" against Defendants:

(1) Excessive Force – 42 U.S.C. § 1983 (against the Officers);
(2) Failure to Render Aid – 42 U.S.C. § 1983 (against all Defendants);
(3) Municipal Liability – 42 U.S.C. § 1983 (against the City);
(4) Texas Torts Claims Act (against the City);
(5) Respondeat Superior (against the City); and
(6) Exemplary Damages.

---

[1] The accident appears to have occurred in 2022.

*Id*. ¶¶ 45-62.

On April 30, 2024, the City filed its Motion to Dismiss. ECF No. 7. This Motion seeks dismissal of all causes of action against the Officers.

### III.    APPLICABLE LEGAL STANDARDS FOR 12(b)6 DISMISSAL

Rule 12(b)(6) provides for dismissal of a claim if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims stated in the complaint and must be evaluated solely based on the pleadings. *Jackson v. Procunier*, 789 F.2d 307, 309 (5th Cir. 1986). The allegations contained in the complaint are to be construed in the plaintiff's favor and all *well-pleaded* facts are to be accepted as true. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). However, conclusory allegations and legal conclusions couched as factual allegations are not to be accorded a presumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (recognizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (emphasizing that on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")); *Kaiser Alum. & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) ("Although we must accept as true the well-pleaded allegations of a complaint . . . we do not accept as true conclusory allegations in the complaint"); *see also Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (legal conclusions masquerading as factual assertions are insufficient to prevent dismissal for failure to state a claim). While the complaint need not contain "detailed factual allegations," the plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*,

3

550 U.S. at 555. Therefore, and critically, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Furthermore, the alleged facts must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555 (abrogating *Conley v. Gibson*, 355 U.S. 41 (1957)). Thus, to survive a motion to dismiss made pursuant to Rule 12, a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). If a complaint pleads facts that are "merely consistent with" a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id..* (internal quotation marks and citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (applying Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing the pleader is entitled to relief[]")).

A plaintiff also must meet specific requirements to surmount the defense of qualified immunity:

> To state a claim under 42 U.S.C. § 1983, a plaintiff must first show a violation of the Constitution or of federal law, and then show that the violation was committed by someone acting under color of state law. The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal. When a defendant raises a qualified immunity defense, the plaintiff has the burden of demonstrating the inapplicability of that defense. To meet this burden, the plaintiff must show (1) that

4

the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.

*Turner v. Lieutenant Driver*, 848 F.3d 678, 685 (5th Cir. 2017) (cleaned up).[2]

## IV.     ARGUMENT AND AUTHORITIES

Plaintiff's claims fail because they do not state claims for any cognizable constitutional or state law causes of action. Additionally, because there was no "clearly established" law at the time of the incident prohibiting the Officers' actions, both Officers are entitled to dismissal based on qualified immunity. Therefore, the Officers move for dismissal under both general *Twombly* standards and based on qualified immunity.

### a.  Plaintiff's allegations do not state any section 1983 claims against the Officers.

Plaintiff seeks to hold the Officers liable under 42 U.S.C. § 1983, which makes liable "[e]very person" who, under color of state law, violates federal constitutional rights. *See, e.g.* Compl. ¶¶ 19-20 (alleging "Tomyia Crenshaw was injured and denied medical attention by first responders in violation of 42 U.S.C. § 1983" and "Crenshaw pursues this action pursuant to 42 U.S.C. § 1983").

The Complaint does not allege facts from which this Court may reasonably infer that a constitutional violation occurred, much less facts that can overcome the Officers' qualified immunity defense. While the Complaint arguably alleges facts of *moral failings* on the Officers' part, the allegations do not qualify as *constitutional violations*.

#### 1.  Plaintiff essentially alleges a "state-created danger" theory of liability, which the Fifth Circuit does not recognize.

Plaintiff does not allege the Officers physically struck, detained, or arrested him. Rather, the gravamen of Plaintiff's allegations is that (1) the Officers' improper high-speed pursuit created

---

[2] The Officers are specifically invoking their qualified immunity defenses. Nonetheless, the Officers maintain that no constitutional violations occurred—whether "clearly established" or not.

5

a dangerous situation that resulted in the car crash; and then (2) the Officers failed to render aid. *See* Compl. ¶¶ 3 ("This chase lasted for several minutes, giving [the Officers] ample time to contemplate their actions and understand the danger this high speed chase posed to [Plaintiff] and others."), ¶4 ("The officers made no attempt to stop and render aid.")

Plaintiff's crash-related allegations most resemble "state-created danger" theories of liability. "Under the state-created danger theory, a state actor may be liable under § 1983 if the state actor created or knew of a dangerous situation and affirmatively placed the plaintiff in that situation." *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 864 (5th Cir. 2012). However, "the Fifth Circuit has never recognized the 'state-created-danger' exception. In [its] published, and thus binding, authority, [it has] repeatedly declined to recognize the state-created danger doctrine." *Fisher v. Moore*, 73 F.4th 367, 372 (5th Cir. 2023) (cleaned up), *cert. denied*, 144 S. Ct. 569 (2024).[3] Thus, at the outset, the Fifth Circuit does not recognize a constitutional right to be free from "the danger this high speed chase posed to [Plaintiff] and others," Compl. ¶ 3. As a result, Plaintiff's section 1983 claims fail as a matter of law and must be dismissed.

### 2. Plaintiff was never "seized" under the Fourth Amendment.

Plaintiff alleges the Officers violated his Fourth and Fourteenth Amendment rights to be free from excessive force and unreasonable searches and seizures. Compl. ¶¶ 45-50. The

---

[3] The Fifth Circuit has eschewed the doctrine for decades. *See, e.g. Rios v. City of Del Rio*, 444 F.3d 417, 422 (5th Cir. 2006) (*"*[T]his court has frequently spoken of the 'state-created danger' theory, and has discussed its various permutations and requirements as applied in other circuits, but neither the Supreme Court nor this court has ever either adopted the state-created danger theory or sustained a recovery on the basis thereof."); *Beltran v. City of El Paso,* 367 F.3d 299, 307 (5th Cir.2004) ("This court has consistently refused to recognize a 'state-created danger' theory of § 1983 liability . . . ."); *Rivera v. Hous. Indep. Sch. Dis.,* 349 F.3d 244, 249 (5th Cir. 2003) ("We have never recognized state-created danger as a trigger of State affirmative duties under the Due Process clause."); *Johnson v. Dallas Indep. Sch. Dist.,* 38 F.3d 198, 201 (5th Cir. 1994) ("[N]o Fifth Circuit case has yet predicated relief on a state created danger theory . . . ."); *Leffall v. Dallas Indep. Sch. Dist.,* 28 F.3d 521, 530 (5th Cir.1994) ("We have found no cases in our circuit permitting § 1983 recovery for a substantive due process violation predicated on a state-created danger theory . . . .").

Complaint claims these violations stem from "initiating pursuit of Plaintiff despite Plaintiff having never been charged with a crime." *Id*. ¶ 48. However, nothing about Plaintiff's allegations plausibly states any sort of unconstitutional seizure.

In a case involving the use of roadblocks, the Supreme Court addressed a strikingly similar situation:

> It is clear, in other words, that a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied.* That is the reason there was no seizure in the hypothetical situation that concerned the Court of Appeals. The pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit; and though he was in fact stopped, he was stopped by a different means—his loss of control of his vehicle and the subsequent crash. If, instead of that, the police cruiser had pulled alongside the fleeing car and sideswiped it, producing the crash, then the termination of the suspect's freedom of movement would have been a seizure.

*Brower v. County of Inyo*, 489 U.S. 593, 596–97 (1989)

Here, like in *Brower*, Plaintiff does not allege facts demonstrating that he was "stopped" or "seized" by the Officers' pursuit, even after they activated their flashing "lights and sirens" as a command to stop. The pursuit did not curtail Plaintiff's freedom of movement; in fact, Plaintiff has not asserted that he stopped his vehicle or complied with the Officers' show of authority. Consequently, neither the chase itself nor Plaintiff's eventual loss of control and crash constitutes a Fourth Amendment seizure under *Brower. See California v. Hodari D.*, 499 U.S. 621, 628 (1991) (applying *Brower* and noting that in that case "[w]e did not even consider the possibility that a seizure could have occurred during the course of the chase because, as we explained, that 'show of authority did not produce his stop'"). The Supreme Court again examined *Brower* later and summarized as follows: "We illustrated the point by saying that no Fourth Amendment seizure

7

would take place where a 'pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit,' but accidentally stopped the suspect by crashing into him." *County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998) (quoting *Brower*, 489 U.S. at 597). Here, the Complaint does not allege that the Officers even "accidentally stopped" Plaintiff "by crashing into him"; it alleges only that they observed—and ignored—Plaintiff's crash.[4]

Critically, nothing in the Complaint can plausibly be interpreted to indicate the Officers intended to cause harm to Plaintiff, much less the harm that allegedly befell him. Even assuming *arguendo* that the Officers' attempts to stop Plaintiff were negligent, under Supreme Court and Fifth Circuit precedent, attempting a seizure that accidentally or even negligently resulted in harm is not a Fourth Amendment violation. *See Gorman v. Sharp*, 892 F.3d 172, 175 (5th Cir. 2018) ("*Brower* and subsequent precedents foreclose liability under the Fourth Amendment in the absence of intentional conduct."); *Watson v. Bryant*, 532 F. App'x 453, 457 (5th Cir. 2013) ("The Supreme Court [in *Brower*] held that Fourth Amendment violations occur only through intentional conduct . . . . In the absence of evidence showing that [the officer] intended to use deadly force, we must conclude that the negligent shooting here did not itself violate [the suspect's] Fourth Amendment rights.") (citations omitted); *Baskin v. City of Houston, Miss.*, 378 F. App'x 417, 418 n.1 (5th Cir. 2010) ("To the extent that a Fourth Amendment claim was raised, any attempt to allege excessive use of force in the course of a negligent seizure is foreclosed by the Supreme Court's decision in *Brower* . . . .").

---

[4] Further, Plaintiff has not alleged that the Officers ran Plaintiff off the road, sideswiped him, much less fired a deadly weapon. But even if Plaintiff had made such an allegation, such an act would not have been a violation under the Fourth Amendment. In fact, Fifth Circuit authority has made clear that "the Supreme Court has never found the use of deadly force in connection with a dangerous car chase to violate the Fourth Amendment, let alone to be a basis for denying qualified immunity. And it's why we previously refused to extend *Garner* to high-speed chases. We refuse again today." *Morrow v. Meachum*, 917 F.3d 870, 878 (5th Cir. 2019) (cleaned up).

8

Further, the decision in *Scott v. Harris*, 550 U.S. 372 (2007), is instructive. The facts in *Scott* involved a high-speed pursuit of a fleeing suspect by several police officers that spanned ten miles at speeds exceeding eighty-five miles per hour. *Id.* at 375. Six minutes after the pursuit began, an officer maneuvered his car in such a way that caused the fleeing suspect to lose control of his car and ultimately crash down an embankment. *Id.* The man suffered injuries that resulted in quadriplegia. *Id.* The Court analyzed the facts against the backdrop of qualified immunity and concluded at the first step of the analysis that the officer's actions did not violate the Constitution. *Id.* at 377, 386. In reaching this conclusion, the Court described the scene as one involving "[m]ultiple police cars with blue lights flashing and sirens blaring" and a fleeing suspect who ignored warnings to stop. *Id.* at 384. The Court further described the pursuit as one that posed "extreme danger to human life" and an "actual and imminent threat" to others, including the officers involved in the pursuit. *Id.* at 383-84. Regarding the fleeing suspect, the Court acknowledged that the officer's actions posed a high likelihood of serious injury or death to the suspect. *Id.* at 384. The Court acknowledged, however, that it was *the fleeing suspect who intentionally placed himself and others in danger* by ignoring warnings to stop and engaging in a reckless, high-speed flight that ultimately forced the officer to act. *Id.* Given the facts of the case, the Court determined that it was reasonable for the officer to take the steps that he took to end the pursuit and ultimately held that an officer who takes action to terminate a dangerous high-speed pursuit that threatens lives does not act unconstitutionally, even when the officer's actions place the fleeing motorist at risk of serious injury or death. *Id.* at 386.

Here, unlike *Scott*, the Officers are not alleged to have ever touched Plaintiff, much less run him off the road. As such, nothing about Plaintiff's allegations plausibly state a Fourth Amendment claim. *See also Carney v. New Orleans City*, 468 F. Supp. 3d 751, 761-62 (E.D. La.

2020) (dismissing a claim of high-speed pursuit, finding that "[t]he reason why a suspect's accidental crash in a police pursuit does not constitute a seizure under the Fourth Amendment is that '[t]he pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit; and though he was in fact stopped, he was stopped by a different means—his loss of control of his vehicle and the subsequent crash'") (quoting *Brower*, 489 U.S. at 596-97)).

Notably, Plaintiff alleges the genesis of the pursuit was a direct violation of unnamed DPD policies when they pursued him even though "[Plaintiff] had not committed any crimes." Compl. ¶ 25. This is ill-informed. First, § 1983 creates a cause of action for deprivations of "rights, privileges, and immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Violating internal rules, like the DPD "policies" Plaintiff claims were violated, cannot amount to constitutional violations in and of themselves. *See Rice v. ReliaStar Life Ins. Co.*, 770 F.3d 1122, 1133 (5th Cir. 2014) ("But officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision. Violating a departmental regulation, on its own, is not sufficient to deprive [the officer] of qualified immunity.") (cleaned up). Second, the Officers did not violate the internal rules Plaintiff cites. The Complaint admits that at around 2:20 a.m., Plaintiff turned down a public road (Martin Luther King, Jr. Boulevard) "without headlights on." *Id*. The Texas Transportation Code requires that "[a] vehicle shall display each lighted lamp and illuminating device required by this chapter to be on the vehicle: (1) at nighttime; and (2) when light is insufficient or atmospheric conditions are unfavorable so that a person or vehicle on the highway is not clearly discernible at a distance of 1,000 feet ahead." Tex. Transp. Code § 547.302(a). Violating this provision is a misdemeanor offense. *Id.* § 547.004(a)(2). At the nighttime hour of 2:20 a.m., Plaintiff failed to comply with this

requirement by law to have his headlights on. Thus, contrary to the Complaint, Plaintiff had committed a crime—and one in the Officers' plain view.

Lastly, the Supreme Court long ago explicitly found that the Fourteenth Amendment cannot provide any plaintiff a cause of action for the circumstances at bar:

> The issue in this case is whether a police officer violates the Fourteenth Amendment's guarantee of substantive due process by causing death through deliberate or reckless indifference to life in a high-speed automobile chase aimed at apprehending a suspected offender. We answer no, and hold that in such circumstances only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation.

*Lewis*, 523 U.S. at 836.

Nothing alleged in the Complaint indicates the Officers intended to cause Plaintiff harm. Therefore, Plaintiff has not plausibly alleged claims under either the Fourth *or* the Fourteenth Amendment, and both claims should be dismissed for failure to state a claim.

### 3. The Officers had no Fourteenth Amendment constitutional duty to stop and render aid.

The Supreme Court has held that the "Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *DeShaney v. Winnebago Cnty. Dep't of Soc. Serv*s., 489 U.S. 189, 196 (1989) (collecting cases). "The Due Process Clause does, however, require the responsible government or governmental agency to provide medical care to persons . . . who have been injured *while being apprehended* by the police." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) (emphasis added).

Fatal to Plaintiff's failure to render aid claims is the fact that he was never apprehended. "An officer's visual signal for a motorist to stop—whether made by hand or lights and sirens—is such a show of authority." *United States v. Morris*, 40 F.4th 323, 328 (5th Cir. 2022). As noted

11

above, in similar circumstances, the Supreme Court "did not even consider the possibility that a seizure could have occurred during the course of the chase because, as we explained, that 'show of authority did not produce his stop." *Hodari D.*, 499 U.S. at 628. The end of Plaintiff's absconding from the Officers was not a yielding to a show of authority; instead, Plaintiff "jumped a curb [along a public street] and crashed at a high rate of speed." Compl. ¶ 26. This was not a seizure.

Further, in *Torres v. Madrid*, the Supreme Court recently explored the edges of what constitutes a "seizure" in a case involving the shooting of a suspect, ultimately finding that "the application of *physical force to the body of a person with intent to restrain* is a seizure even if the person does not submit and is not subdued." 592 U.S. 306, 325 (2021) (emphasis added). And, even if a suspect was "seized" but broke free, the Court noted that the Fourth Amendment does not recognize any "'*continuing* arrest during the period of fugitivity.'" *Id.* at 318 (quoting *Hodari D.*, 499 U.S. at 625). As previously noted, there are no allegations in the Complaint that even indicate the Officers physically touched Plaintiff, much less detained, arrested, or took him to jail.

Plaintiff was not seized; he successfully evaded seizure notwithstanding police commands to stop. Therefore, however objectionable the Officers' alleged actions may have been, the Officers did not have a constitutional duty to render Plaintiff aid. In sum, Plaintiff states no constitutional deprivation.

### 4. The Complaint does not allege sufficient facts to overcome the Officers' qualified immunity defense.

The pleading standards remain "the same when a motion to dismiss is based on qualified immunity," *Terwilliger v. Reyna*, 4 F.4th 270, 279 (5th Cir. 2021), but "[t]he crucial question is whether the complaint pleads facts that, if true, would permit the inference that Defendants are liable under § 1983 and would overcome their qualified immunity defense," *id.* at 280 (cleaned

12

up). At the motion to dismiss stage, "[i]t is the plaintiff's burden to demonstrate that qualified immunity is inappropriate." *Id.* at 280 (citing *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009)).

Even if the Complaint sufficiently alleges the Officers committed constitutional violations—which it does not—none of the rights alleged were "clearly established" at the time of the incident. "[A] clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Melton v. Phillips*, 875 F.3d 256, 265 (5th Cir. 2017) (en banc) (internal quotation marks and citation omitted). The Supreme Court has

> repeatedly told courts . . . not to define clearly established law at a high level of generality. The dispositive question is whether the violative nature of *particular* conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition.

*Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotations and citations omitted).

The Officers are aware of no case law with facts even remotely similar to the case at bar to establish that they violated Plaintiff's constitutional rights. Therefore, in addition to the lack of any cognizable constitutional violation in the first place, the Officers are entitled to dismissal based on qualified immunity.

## V. CONCLUSION

Plaintiff's Complaint does not plausibly plead the Officers violated Plaintiff's constitutional rights.[5] Absent a constitutional violation, Plaintiffs claims against the Officers necessarily fail. Accordingly, the Court should grant the Officers' Motion and dismiss all claims asserted against them in Plaintiff's Complaint.

---

[5] Plaintiff lists several other "counts" that do not merit extensive attention. "Count VI" is labeled as "Exemplary Damages." Compl. ¶¶ 61-62. First, the Texas Tort Claims Act "does not authorize exemplary damages." Tex. Civ. Prac. & Rem.Code Ann. § 101.024. Second, under Texas law, "an award of punitive damages is not a separate cause of action," *Sulzer Carbomedics, Inc. v. Or. Cardio–Devices, Inc.*, 257 F.3d 449, 461 (5th Cir. 2001), such that a demand for punitive damages is not "separate and distinct from the underlying claim for compensatory damages," where "Texas, like the majority of states, limits punitive damages to cases in which actual compensatory damages are found," *Lanier v. Salas,* 777 F.2d 321, 325 (5th Cir. 1985). The same is true for demands for punitive damages sounding in federal law. *See, e.g., Auster Oil & Gas, Inc. v. Stream*, 835 F.2d 597, 604 (5th Cir. 1988) (addressing 42 U.S.C. § 1983 claim). "Punitive damages are not an independent claim or cause of action, but are a remedy available in various causes of action." *Id.* Therefore, to the extent Plaintiff brings these two Counts as separate causes of action, they should be dismissed for failure to state a claim.

## CERTIFICATE OF SERVICE

      I certify that on June 3, 2024, I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the CM/ECF electronic case filing system of the court. The electronic case filing system will send a "Notice of Electronic Filing" notification to all case participants registered for electronic notice, including all *pro se* parties and/or attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

                                            *s/ J. Cheves Ligon*
                                            J. Cheves Ligon