IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TOMYIA CRENSHAW, | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3: 24-CV-731-L |
| | § | |
| LEONARD ANDERSON, et al., | § | |
| Defendants. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court are two motions to dismiss pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure. Defendant City of Dallas (the "City") filed its

motion on April 30, 2024, (Dkt. No. 7) ("City Mot."), and Defendants Leonard

Anderson and Darrien Robertson (together, "Officers") filed their motion on June 3,

2024 (Dkt. No. 12) ("Officers Mot.").

Pursuant to 28 U.S.C. § 636(b), United States District Judge Sam Lindsay

referred both motions to the undersigned magistrate judge for hearing, if necessary,

and for proposed findings and recommendations for disposition of the motions. (*See*

Dkt. Nos. 8, 14, 17.) Upon careful review of the complaint, the parties' briefing, and

the relevant case law, the undersigned finds that the City's Motion (Dkt. No. 7)

should be **GRANTED**, and the Officers' Motion (Dkt. No. 12) should be

**GRANTED**.

# I.  BACKGROUND

Plaintiff filed his complaint on March 27, 2024.  (*See* Dkt. No. 1) ("Compl.").)

Plaintiff alleges that on May 13, 2022,[1] around 2:20 a.m., Dallas Police Department

("DPD") officers Senior Corporal Anderson and Officer Trainee Robertson were

patrolling South Dallas.  (*See* Compl. ¶ 24.)  Anderson was training Robertson at the

time.  (*Id*.)  The Officers were stationed near a Chevron gas station when they saw a

red vehicle driven by Plaintiff, leave the gas station and turn down Martin Luther

King, Jr. Boulevard without its headlights on.  (*Id*.)

The Officers attempted to stop Plaintiff, and a high-speed chase ensued.  (*See*

Compl. ¶¶ 2, 25.)  Plaintiff alleges he was concerned because "a random vehicle

[began] to chase him."  (*Id*. ¶ 2.)  Plaintiff alleges that the lights and sirens were

activated "eventually" (Compl. ¶ 2), but the City maintains that the lights and sirens

were activated "[a]t the pursuit's inception" (City Mot. at 2).   According to Plaintiff,

the Officers deactivated the lights and siren toward the end of the pursuit "but

continued to follow Plaintiff's vehicle at high speeds as if the pursuit was ongoing."

(Compl. ¶ 25.)  Plaintiff also alleges that engaging in a high-speed pursuit was a

direct violation of DPD policy, since Plaintiff had not committed any crimes and

was not wanted for a felony or in the process of a felony.  (*Id*.)

---

[1] Defendants point out (and the Court acknowledges) that the complaint recites the date of the incident as both May 13, 2020 (*see* Compl. ¶ 1) and May 13, 2022 (*see id*. ¶ 24). May 13, 2022, however, appears to be the correct date.  (*See* Dkt. No. 11 at 2; Dkt. No. 15 at 2.)

Plaintiff alleges that after the Officers deactivated lights and sirens, dashboard camera ("dashcam") footage from the Officers' vehicle showed that Plaintiff's vehicle "jumped a curb," "crashed at a high rate of speed," and "immediately burst into flames." (*Id.* ¶ 26.) The Officers allegedly saw the crash but did not stop, "continuing their way without checking on the driver." (*Id.* at ¶ 27.) Plaintiff avers that dashcam footage showed the Officers driving by the wreckage, and Anderson stated, "That's his fault." (*Id.*) Bystanders pulled Plaintiff from the car and carried him away "as flames began to consume the vehicle." (*Id.* ¶¶ 28, 30.) The Officers later returned to the scene after hearing on the police radio that a vehicle was in flames. (*Id.* ¶ 28.) When the Officers returned to the scene, body camera video showed paramedics tending to Plaintiff "as other police officers face[d] off against angry onlookers who had seen Anderson and Robertson drive off." (*Id.*)

Plaintiff alleges that DPD Chief Eddie Garcia "said he [was] appalled and embarrassed by the incident." (Compl. ¶ 34.) Plaintiff further alleges that the Officers "violated numerous policies and procedures by improperly engaging in a high-speed vehicle chase and failing to stop and render aid." (*Id.* ¶ 35.)

Plaintiff alleges that he suffered third degree burns over 50 percent of his body, some "to the bone," as well as a broken arm, leg, collar bone, hip, and ribs. (Compl. ¶ 31.) Due to his extensive injuries, Plaintiff was hospitalized from the date of the incident, May 13, 2022, through September 3, 2022. (*Id.*) Plaintiff also alleges that he is still receiving outpatient treatment due to his injuries; he is unable to stand or

walk for any length of time; and he must now use a wheelchair or a walker to perform many activities of daily living.  (*Id*. at ¶ 32.)

Plaintiff's complaint alleges six causes of action:

1. Excessive Deadly Force, pursuant to 42 U.S.C. § 1983 (Against Defendants Anderson and Robertson);

2. Failure To Render Medical Aid, pursuant to 42 U.S.C. § 1983 (Against All Defendants);

3. Municipal Liability, pursuant to 42 U.S.C. § 1983 (Against the City);

4. Texas Civil Practice and Remedies Code § 101.021, also known as the Texas Tort Claims Act ("TTCA") (Against the City);

5. Respondeat Superior (Against the City); and

6. Exemplary Damages.

(Compl. ¶¶ 45-62.)

On May 21, 2024, Plaintiff filed a response to the City's motion (Dkt. No. 11) ("Resp. City"), and the City filed a reply on June 4, 2024 (Dkt. No. 13) ("City Repl.").  On June 24, 2024, Plaintiff filed a response to the Officers' motion (Dkt. No. 15) ("Resp. Officers"), and the Officers filed a reply on July 5, 2024 (Dkt. No. 16) ("Officers Repl.").  Accordingly, the motions are ripe for determination.

## II.  LEGAL STANDARDS

### A.    12(b)(6) Motion to Dismiss

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable*

*Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008).  To meet this "facial plausibility" standard, a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).  However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted).  A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  And "[a] claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679); *see also*

5

*Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" (quoting *Iqbal*, 556 U.S. at 678 (quoting, in turn, Fed. R. Civ. P. 8(a)(2)))).

Federal Rule of Civil Procedure 8(a)(2) does not mandate detailed factual allegations, but it does require that a plaintiff allege more than labels and conclusions. And, while a court must accept a plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

In ruling on a Rule 12(b)(6) motion, the court limits its review to the face of the pleadings. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). At the motion to dismiss stage, the court does not evaluate the plaintiff's likelihood of success. It only determines whether the plaintiff has stated a claim upon which relief can be granted. *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

**C.    Municipal Liability**

The above general pleading standards also apply to a claim against a municipality. *See Hutcheson v. Dall. Cnty., Tex.*, 994 F.3d 477, 482 (5th Cir. 2021) ("There is no heightened pleading standard for [42 U.S.C.] § 1983 claims against municipalities. To survive a motion to dismiss, the complaint need not contain detailed factual allegations but still must state sufficient facts to establish a plausible claim on its face." (citing *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018))).

Because "[a] person may sue a municipality that violates his or her constitutional rights [only] 'under color of any statute, ordinance, regulation, custom, or usage,'" *id.* (quoting Section 1983; citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)), a plaintiff alleging a *Monell* claim "has two burdens: to [plausibly allege] (1) that a constitutional violation occurred and (2) that a municipal policy was the moving force behind the violation," *Sanchez v. Young Cnty., Tex.*, 956 F.3d 785, 791 (5th Cir. 2020) (citing *Monell*, 436 U.S. at 694).  "In municipal-liability cases," therefore, the threshold question "is whether the complained-of 'act may fairly be said to represent official policy.'" *Id.* at 792-93 (cleaned up; quoting *Monell*, 436 U.S. at 694); *see also Hutcheson*, 994 F.3d at 483 (rejecting the argument that a district court errs by dismissing a *Monell* claim without first analyzing the underlying constitutional violation).

Accordingly, a plaintiff may proceed on a *Monell* claim only by identify[ing] "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)." *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002) (cleaned up). Municipalities are not liable "on the theory of respondeat superior" and are "almost never liable for an isolated unconstitutional act on the part of an employee." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009); *see also Hutcheson*, 994 F.3d at 482; *Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 497 & n.11 (5th Cir. 2021) (noting that where a plaintiff's claim fails as to one prong, a court "need not consider whether [his] claim also fails the other two *Monell* prongs" (citing *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168-69 (5th Cir. 2010))).

"Official policy can arise in various forms. It usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Piotrowski v. City of Hous.*, 237 F.3d 567, 579 (5th Cir. 2001) (quoting, in turn, *Webster v. City of Hous.*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc))); *see also Brown*, 985 F.3d at 497 ("An 'official policy' may take two forms – either a 'policy statement formally announced by an official policymaker' or a 'persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well

settled as to constitute a custom that fairly represents municipal policy.'" (quoting *Zarnow*, 614 F.3d at 168-69)).

"To proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.'"  *Peña*, 879 F.3d at 622 (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997); footnote omitted); *see also Pinedo*, 2015 WL 5021393, at *5 (N.D. Tex. Aug. 25, 2015) ("To establish a custom, a plaintiff must demonstrate (and, at the pleading stage, must plausibly plead) 'a pattern of abuses that transcends the error made in a single case.'" (quoting *Piotrowski*, 237 F.3d at 582)).

## C.    Qualified Immunity

Under 42 U.S.C. § 1983, private citizens may sue public officials for violations of their federal statutory or constitutional rights.  *See Monroe v. Pape*, 365 U.S. 167, 171 (1961).  Section 1983, however, shields public officials from civil liability under the doctrine of qualified immunity "so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)); *see also Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995). "[T]he immunity issue must be resolved at the earliest possible stage of the litigation since it entails an entitlement to immunity from suit and not merely a defense to liability."  *Gibson*, 44 F.3d at 277 (citing *Hunter v. Bryant*, 502 U.S. 224, 226 (1991)).

Since the motion to dismiss stage is the earliest possible stage of litigation, the issue of qualified immunity must be decided then if properly raised. *See Carswell v. Camp*, 37 F.4th 1062, 1067-68 (5th Cir. 2022).

"A public official is entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation." *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011). To be "'clearly established,' the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the right." *Anderson v. Creighton*, 483 U.S. 635 (1987). "Both steps in the qualified immunity analysis are questions of law." *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013). A good-faith assertion of qualified immunity alters the usual burden of proof, "shifting it to the plaintiff to show that the defense is not available." *Ratliff v. Aransas Cnty.*, 948 F.3d 281, 287 (5th Cir. 2020). An officer is entitled to qualified immunity "if there is no violation, or if the conduct did not violate law clearly established at the time." *Bailey v. Iles*, No. 22-30509, 2023 WL 8062239 at *2 (5th Cir. Nov. 21, 2023). Courts have the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

# III.  ANALYSIS

Plaintiff alleges that the Officers violated his Fourth and Fourteenth Amendment rights to be free from excessive force and unreasonable searches and seizures.  (Compl. ¶¶ 45-50.)  Plaintiff does not allege that the Officers physically struck, detained, or arrested him.  (*See generally* Compl.)  Rather, Plaintiff alleges that (1) the Officers' improper high-speed pursuit created a dangerous situation that resulted in the car crash; and then (2) the Officers failed to render aid.  (*See* Compl. ¶¶ 3, 4.)

Plaintiff's municipal liability claims against the City amount to allegations that the City's policies caused the alleged bad acts of the Officers because DPD failed to properly train and discipline the Officers and failed to "implement policies and/or create an atmosphere that that prohibited the very destructive, biased, and reckless conduct of Officers Anderson and Robertson."  (Compl. ¶ 35; *see also* ¶¶ 60-61.)  Plaintiff also alleges that "DPD has failed to enact proper policies and procedures concerning rendering emergency medical treatment and has failed to properly train its officers with respect to providing emergency medical treatment.  DPD has been made aware of its failures several times."  (*Id*. ¶ 37.)

## A.    Preliminary Matters

### 1.    Plaintiff objects the Court finding guidance from cases deciding summary judgment motions.

Plaintiff contends that Defendants are "subject[ing] [him] to a higher standard than is required or permitted under Rule 12(b)(6)" because they cite cases decided on

appeal from summary judgment.  (*See* Resp. City at 5; Resp. Officers at 9.)  Without citing any authority, Plaintiff claims that Defendants' reliance on cases at the summary-judgment stage is "improper, because it is well established that 'the evidentiary burden on the non-movant in a summary judgment motion is significantly greater than in a motion to dismiss."  (*Id.* (citing *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991).)  While this is a true statement about the differing burdens, it does not mean that the substantive legal principles expressed in these cases are irrelevant in the context of a motion to dismiss.  *See, e.g.*, *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 984 n.5 (C.D. Cal. 1999) (explaining that while the standards by which a court decides a question of law are significant, "the issue of who bears the 'burden of proof' regarding those standards cannot affect the legal question" that such a motion would present).

    And even if the procedural posture of the cases cited by Defendants occurred at the summary-judgment stage, because "more general" allegations are permitted at the motion-to-dismiss stage, "the Court must only evaluate whether Plaintiffs pled sufficient facts that would allow it to draw the reasonable inference that Defendants are liable for the alleged misconduct."  *Oporto v. City of El Paso*, No. EP-10-CV-110, 2010 WL 3503457, at *6 (W.D. Tex. Sept. 2, 2010) (cleaned up).  Contrary to Plaintiff's contentions, the fact that questions of law may be decided at this phase by relying on cases deciding those questions at the summary-judgment phase does not mean that Plaintiff is held to the higher summary-judgment standard.

In addition, recent cases on Rule 12(b)(6) motions in the § 1983 context from the Fifth Circuit, as well as this Court, reveal that a decision's procedural posture does not preclude the application of its legal holdings in a dismissal context.  *See, e.g.*, *Moore v. City of Dallas, Tex.*, No. 23-10566, 2024 WL 913368, at *3 (5th Cir. Mar. 4, 2024) (unpublished) (upholding rule 12(b)(6) dismissal of common law tort claims against officer (citing *Shinn on Behalf of Shinn v. Coll. Station Indep. Sch. Dist.*, 96 F.3d 783, 785 (5th Cir. 1996) (appeal from summary judgment); *Monacelli v. City of Dallas*, No. 3:21-CV-2649-L, 2023 WL 6370753, at *1 (N.D. Tex. Sept. 29, 2023) (granting rule 12(b)(6) dismissal of *Monell* claims (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 661 (1978) (appeal from "cross-motions for summary judgment"); *Rusanowsky v. City of Dallas*, No. 3:22-CV-01132-K, 2023 WL 2728722, at *5 (N.D. Tex. Mar. 30, 2023) (granting rule 12(b)(6) dismissal of *Monell* claims (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 381 (1989) (appeal from "[a] jury trial."); and *Vess v. City of Dallas*, No. 3:21-CV-1764-D, 2022 WL 625080, at *7 (N.D. Tex. Mar. 3, 2022) (granting rule 12(b)(6) dismissal of *Monell* claims (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 582 (5th Cir. 2001), appeal from jury trial).

Therefore, Plaintiff's concern that the Court might be "swayed by Defendant[s'] attempt to raise the pleading standard" (*see* Resp. City at 5; Resp. Officers at 10) is unfounded.  The Court will apply relevant case law for the purposes of determining questions of law using the applicable legal standard.  *See Oporto*, 2010 WL 3503457, at *6.

## 2. Plaintiff disclaims any reliance on a state-created danger theory of liability.

The Officers and the City argue in their motions that Plaintiff's allegations

most resemble "state-created danger" theories of liability and that dismissal is

warranted because this theory is not recognized by the Fifth Circuit.[2] (*See* Officers

Mot. at 5; City Mot. at 8.) Although Defendants are correct that this theory is not

recognized by the Fifth Circuit, Plaintiff avers that he is not claiming a "state-created

danger" theory of liability. (*See* Resp. Officers at 11; Resp. City at 13.) Accordingly,

the undersigned will not consider Defendants' state-created danger liability

arguments as grounds for dismissal.

## B. Plaintiff's § 1983 claims against the Officers

Plaintiff seeks to hold the Officers liable under 42 U.S.C. § 1983, which makes

liable "[e]very person" who, under color of state law, violates federal constitutional

rights. (*See, e.g.*, Compl. ¶¶ 19-20.) The Officers move for dismissal under both

general Rule 12(b)(6) standards and based on qualified immunity. (*See generally*

Officers Mot.) The Officers argues that Plaintiff's claims fail because they do not

state any constitutional violations or any cognizable claims under state law.

---

[2] The state-created danger doctrine is an exception to the general rule that a state has
no duty to protect one private citizen from another. *See, e.g.*, *Cano v. Garcia*, No. SA-20-CV-
01331-OLG, 2021 WL 2582581, at *5 (W.D. Tex. June 22, 2021), *adopted*, 2021 WL
8444847 (W.D. Tex. July 13, 2021), *aff'd as modified*, 2022 WL 1548671 (5th Cir. May 16,
2022) (citing *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 865 (5th
Cir. 2012). The Fifth Circuit has repeatedly declined to recognize this exception. *Id.*
(internal citations omitted); *see also Fisher v. Moore*, 73 F.4th 367, 372 & n.13 (5th Cir. 2023))
(collecting cases).

Additionally, they argue they are entitled to dismissal based on qualified immunity because there was no "clearly established" law at the time of the incident prohibiting the Officers' actions.

For the reasons explained below, the undersigned concludes that Plaintiff has not alleged facts supporting a to reasonable inference that the Officers violated Plaintiff's constitutional rights. Because Plaintiff has not demonstrated that a constitutional violation occurred, there is no need to consider whether the Officers' actions are entitled to qualified immunity.

### 1. Plaintiff's allegations do not constitute a seizure under the Fourth Amendment.

Plaintiff alleges that the Officers violated his Fourth and Fourteenth Amendment rights to be free from excessive force and unreasonable searches and seizures, by "initiating pursuit of Plaintiff despite Plaintiff having never been charged with a crime." (Compl. ¶¶ 45-50.) Plaintiff summarizes his Fourth Amendment claim as follows:

> In the present case, Plaintiff was seized when the Defendants caused his vehicle to crash by initiating their high-speed pursuit. When Plaintiff's vehicle crashed, it was set ablaze, trapping Plaintiff inside and *completely* curtailing Plaintiff's ability and freedom to exit his vehicle and walk away. Trapping Plaintiff inside a burning vehicle certainly constitutes a seizure for Fourth Amendment purposes.

(Resp. Officers at 13-14 (emphasis in original) (citing Dkt. No. 1."); *see also* Resp. City at 13-15.) Plaintiff thus contends that these actions by the Officers plausibly state a claim that he was "seized" because "[w]henever an officer restrains the

15

freedom of a person to walk away, he has seized that person," *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). (*See id.*)

The Fourth Amendment confers the right to be free from "unreasonable searches and seizures[.]" U.S. Const. amend. IV. A seizure is unreasonable under the Fourth Amendment if it involves excessive force. *See Graham v. Connor*, 490 U.S. 386, 394–95 (1989). To prevail on a Fourth Amendment excessive-force claim, a plaintiff must prove he suffered: (1) an injury, (2) resulting directly and only from, (3) an officer's use of objectively unreasonable force. *Ikerd v. Blair*, 101 F.3d 430, 433–34 (5th Cir. 1996) (citation omitted). Only if a seizure has occurred does the Court ask "whether the officer's actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). Thus, the threshold question is whether a seizure has occurred. *See id.* at 396. A seizure of the person occurs if there is actual physical restraint by an officer or a citizen submission to a governmental show of authority. *See California v. Hodari D.*, 499 U.S. 621, 624–26 (1991).

Upon review of the allegations in Plaintiff's complaint and the relevant case law, the undersigned concludes that the facts as alleged do not constitute a seizure under the Fourth Amendment. Even if believed, Plaintiff's allegations fail to plausibly state any sort of unconstitutional seizure. Without a constitutional violation, a plaintiff may not maintain a § 1983 claim against any person or governmental entity. *See Bustos v. Martini Club Inc.*, 599 F.3d 458, 464-66 (5th Cir.

16

2010) (dismissing a complaint for failure to plead off-duty officers' alleged excessive force "was a misuse of their power as state officers").

As an initial matter, Plaintiff failed to cite any authority that supports his contention that the Officers' alleged actions constitute a violation of Plaintiff's Fourth Amendment rights and failed to cite any case illustrating that a law enforcement officer's initiation of a similar vehicle pursuit scenario could potentially lead to constitutional liability. As previously stated, the threshold question is whether a seizure has occurred. *See Graham*, 490 U.S. at 396. A seizure of the person occurs if there is actual physical restraint by an officer or a citizen submission to a governmental show of authority. *See Hodari D.*, 499 U.S. at 624–26. But Plaintiff does not allege any physical restraint by police, and the facts he alleges show he was actively evading—and did not submit to—a show of authority.

In *Brower v. County of Inyo*, the Supreme Court analyzed a §1983 claim in which a man driving a stolen car led police on a high-speed chase for about 20 miles before crashing into a police roadblock, resulting in his death. 489 U.S. 593, 594 (1989). The Ninth Circuit found that no seizure occurred because police did not restrain the decedent prior to his failure to stop voluntarily at the roadblock, despite opportunities to do so prior to the impact. *Id*. at 595. The Supreme Court, however, concluded that the decedent's "independent decision to continue the chase" did not eliminate the responsibility of the police for "the termination of his movement *effected by the roadblock*." *Id*. at 594 (emphasis added).

17

Plaintiff contends that Defendants "misstate[d] the holding in *Brower*" because the Supreme Court found that the suspect in *Brower* had been "seized" unlike here where Defendants contend that "Plaintiff was not 'stopped' or 'seized.'" (*See* Resp. Officers at 12 (citing *Brower*, 489 U.S. at 599).) But Plaintiff is only partially correct—the Supreme Court in *Brower* held that the plaintiff was seized, but it was police's use of the roadblock that stated a constitutional deprivation, not the pursuit alone. *See Brower*, 489 U.S. at 595-97. In fact, the Court contrasted that plaintiff's seizure with a situation similar to the instant case in which a suspect loses control of his vehicle while attempting to elude police during a chase. *Id.* at 595 ("The Court of Appeals impelled to its result by consideration of what it described as the 'analogous situation' of a police chase in which the suspect unexpectedly loses control of his car and crashes. We agree that no unconstitutional seizure occurs there[.]" (citation omitted)). Explaining the difference, the Court stated:

> The pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit; and though he was in fact stopped, he was stopped by a different means - his loss of control of his vehicle and the subsequent crash. If, instead of that, the police cruiser had pulled alongside the fleeing car and sideswiped it, producing the crash, then the termination of the suspect's freedom of movement would have been a seizure.

*Id.* at 597. This contrasting scenario described by the Supreme court mirrors the facts of the instant case. Officers Anderson and Robertson sought to stop Plaintiff by pursuing him using their lights and sirens, and Plaintiff was in fact stopped, not by the Officers, but by a different means—Plaintiff's loss of control of his vehicle and

the subsequent crash.  (*See* Compl. ¶ 3.)  As the Supreme Court explained, such a scenario is not a seizure.  *See Brower*, 489 U.S. at 597.

Therefore, "a Fourth Amendment seizure does not occur . . . even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied*."  *See Brower*, 489 U.S. at 596-97 (emphasis in original).

Here, like the alternate scenario described in *Brower*, Plaintiff was not "stopped" or "seized" by the Officers' pursuit, even when they activated their lights and sirens as a command to stop.  The pursuit did not curtail Plaintiff's freedom of movement; in fact, Plaintiff does not assert that he stopped his vehicle or complied with the Officers' show of authority.  Consequently, the fact that Plaintiff eventually lost control of his vehicle and crashed does not constitute a Fourth Amendment seizure.  *See Hodari D.*, 499 U.S. at 628 (applying *Brower* and noting that in *Brower* "[w]e did not even consider the possibility that a seizure could have occurred during the course of the chase because, as we explained, that 'show of authority did not produce his stop'"); *see also Cnty. of Sacramento v. Lewis*, 523 U.S. 844 (1998) (finding no Fourth Amendment seizure even where a pursuing police car accidentally stopped the suspect by crashing into him (quoting *Brower*, 489 U.S. at 597 and collecting cases)).

But even if Plaintiff had alleged that the Officers sideswiped him, "accidentally stopped" him "by crashing into him," or ran him off the road, it would

19

not have been a violation under the Fourth Amendment.  As explained by the Fifth

Circuit, "the Supreme Court has never found the use of deadly force in connection

with a dangerous car chase to violate the Fourth Amendment, let alone to be a basis

for denying qualified immunity."  *Morrow v. Meachum*, 917 F.3d 870, 878 (5th Cir.

2019) (noting that the only question before the Supreme Court in *Brower* was whether

a police roadblock constituted a seizure) (internal citations omitted).

Plaintiff alleges that the Officers observed and ignored Plaintiff's crash (*see*

Compl. ¶¶ 4-5), but nothing in the complaint can plausibly be interpreted to allege

that the Officers intended to cause harm to Plaintiff, much less the harm that

allegedly befell him.  (*See generally* Compl.)  Even assuming arguendo that the

Officers' attempts to stop Plaintiff were negligent, under Supreme Court and Fifth

Circuit precedent, attempting a seizure that accidentally or even negligently results in

harm is not a Fourth Amendment violation.  *See Gorman v. Sharp*, 892 F.3d 172, 175

(5th Cir. 2018) ("*Brower* and subsequent precedents foreclose liability under the

Fourth Amendment in the absence of intentional conduct."); *Watson v. Bryant*, 532 F.

App'x 453, 457 (5th Cir. 2013) ("The Supreme Court [in *Brower*] held that Fourth

Amendment violations occur only through intentional conduct[.]  In the absence of

evidence showing that [the officer] intended to use deadly force, we must conclude

that the negligent shooting here did not itself violate [the suspect's] Fourth

Amendment rights.") (citations omitted); *Baskin v. City of Houston, Miss.*, 378 F.

App'x 417, 418 n.1 (5th Cir. 2010) ("To the extent that a Fourth Amendment claim

was raised, any attempt to allege excessive use of force in the course of a negligent

20

seizure is foreclosed by the Supreme Court's decision in *Brower . . . .*").  Accordingly, nothing about Plaintiff's allegations plausibly allege a Fourth Amendment claim.

Plaintiff avers that because he "had not committed any crimes," the Officers' pursuit was "in direct violation of DPD policy stating that unless a suspect is wanted for a felony or in the process of a felony, DPD should not pursue and/or engage in a high-speed chase for safety reasons."  (Compl. ¶ 25.)  Even assuming that such a policy exists, the complaint admits that Plaintiff turned down Martin Luther King, Jr. Boulevard at around 2:20 a.m. "without headlights on" (*id.* at ¶ 24), which is a violation of traffic laws.  *See* Tex. Transp. Code Ann. § 547.302(a) ("A vehicle shall display each lighted lamp and illuminating device required by this chapter to be on the vehicle: (1) at nighttime; and (2) when light is insufficient or atmospheric conditions are unfavorable so that a person or vehicle on the highway is not clearly discernible at a distance of 1,000 feet ahead.")  Thus, Plaintiff had committed a crime (albeit a misdemeanor), *id.* at § 547.004(a)(2), in plain view of the Officers.

Plaintiff's § 1983 action also cannot be founded upon an alleged violation of due process rights guaranteed by the Fourteenth Amendment.  *See Lewis*, 523 U.S. at 849.  In *Lewis*, the Supreme Court set out to resolve the circuit conflict "over the standard of culpability on the part of a law enforcement officer for violating substantive due process in a pursuit case."  The *Lewis* court ultimately held that "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983."  *Id.* at 854.  As noted previously, nothing alleged in

Plaintiff's complaint plausibly alleges that the Officers intended to cause Plaintiff harm.  Therefore, Plaintiff has not plausibly alleged that the Officers' conduct deprived him of his due process rights.

### 2.    Officers had no Fourteenth Amendment constitutional duty to stop and render aid.

Plaintiff also alleges that the Officers' failure to render first aid is a Fourteenth Amendment violation.  (*See* Compl. ¶¶ 7, 55-56.)  But the Due Process Clause of the Fourteenth Amendment only protects an individual's life, liberty, and property from government action.  *DeShaney v. Winnebago Cnty. Dep't Soc. Servs.*, 489 U.S. 189, 196 (1989) (holding that the "Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual") (collecting cases); *see also Kovacic v. Villarreal*, 628 F.3d 209, 213 (5th Cir. 2010).

"The Due Process Clause does, however, require the responsible government or governmental agency to provide medical care to persons . . . who have been injured while being apprehended by the police."  *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *see also Kovacic*, 628 F.3d at 213 (explaining that a "special relationship" "is formed '[w]hen the state, through the affirmative exercise of its powers, acts to restrain an individual's freedom to act on his own behalf "through incarceration, institutionalization, or other similar restraint of personal liberty'" (citing *McClendon v. City of Columbia*, 305 F.3d 314, 324 (5th Cir. 2002) (quoting *DeShaney*, 489 U.S. at 198, 200))).  In this case, however, Plaintiff was not

apprehended when he alleges that officers owed him a duty.  Despite the Officers'

"show of authority" by way of flashing lights and sirens as an indication for Plaintiff

to stop, Plaintiff did not stop.  *See United States v. Morris*, 40 F.4th 323, 328 (5th Cir.

2022) ("An officer's visual signal for a motorist to stop—whether made by hand or

lights and sirens—is such a show of authority."); *see also Hodari D.*, 499 U.S. at 628

(Under similar circumstances, the Supreme Court "did not even consider the

possibility that a seizure could have occurred during the course of the chase because [

] that 'show of authority did not produce [a] stop.")

 Here, the complaint does not allege that the Officers physically touched

Plaintiff, nor was Plaintiff detained, arrested, or taken to jail.  As such, there was no

seizure.  Rather, Plaintiff successfully evaded seizure notwithstanding the Officers'

"show of authority" indicating that Plaintiff should stop.  However uncaring or

objectionable the Officers' alleged actions after seeing Plaintiff's car crash (*see* Compl.

¶¶ 26-27), they did not have a constitutional duty to render aid to Plaintiff.  Based on

the foregoing, Plaintiff has not alleged sufficient facts to demonstrate that the Officers

deprived Plaintiff of his due process rights.

 As noted above, courts must first determine whether the factual allegations,

viewed in the light most favorable to the plaintiff reveal a constitutional violation.

*See Saucier v. Katz*, 533 U.S. at 201.  If the facts alleged do not reveal such a violation,

there is no need for the court to proceed to the next step in the qualified immunity

analysis.  *Id*.  Because Plaintiff has not plausibly alleged an underlying constitutional

violation, his § 1983 claims against Officers Anderson and Robertson fail as a matter of law, and there is no need to conduct further analysis.

## C.    Plaintiff's § 1983 claims against the City

To state a § 1983 claim against the City, the complaint must allege sufficient facts to permit the reasonable inference that a constitutional violation occurred, and an "official policy" attributable to the City "was the moving force" behind it. *Littell*, 894 F.3d at 622–23; *Peña*, 879 F.3d at 621; *Groden v. City of Dallas*, 826 F.3d 280, 283–85 (5th Cir. 2016).

Plaintiff's complaint alleges a myriad of *Monell* theories, such as failure to train and supervise, failure to implement appropriate recruitment, hiring, and candidate selection methods; and failure to implement appropriate retention efforts. (*See* Compl. ¶ 35.) Plaintiff also alleges that "DPD has failed to enact proper policies and procedures concerning rendering emergency medical treatment and has failed to properly train its officers with respect to providing emergency medical treatment [asserting that] DPD has been made aware of its failures several times." (*Id.* ¶ 37.)

Yet, for the reasons explained above, Plaintiff cannot prevail on his § 1983 claims because he has failed to allege a plausible constitutional violation upon which the City's municipal liability could be based. *See Bustos*, 599 F.3d at 467; *see also Whitley v. Hanna*, 726 F.3d 631, 648-49 (5th Cir. 2013) ("[I]nadequate supervision, failure to train, and policy, practice or custom claims fail without an underlying constitutional violation."). Even assuming arguendo that Plaintiff plausibly alleged

24

that an unconstitutional act caused him injury, his claims against the City still fail for the reasons set forth below.

### 1. Plaintiff's complaint does not plausibly allege that the City maintained unconstitutional policies.

A municipality can only be liable under §1983 where the "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. An "official policy" is:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (en banc). When relying on prior unconstitutional incidents to show a widespread practice, the incidents "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Peterson*, 588 F.3d at 850.

Plaintiff's Complaint does not allege that the City had an unconstitutional written policy that caused the Officers' alleged bad acts, but rather Plaintiff alleges that DPD:

> violated established training protocols; failed to conduct appropriate
> performance review procedures; failed to implement appropriate
> recruitment, hiring, and candidate selection methods; failed to
> implement appropriate retention efforts; and failed to train, implement
> policies, and/or create an atmosphere that prohibited the very
> destructive, biased, and reckless conduct of Officers Anderson and
> Robertson.

(Compl. ¶ 35.)

In addition to alleging a general failure to train on the part of DPD (*see* Compl. ¶ 35), Plaintiff alleges that "DPD has failed to enact proper policies and procedures concerning rendering emergency medical treatment and has failed to properly train its officers with respect to providing emergency medical treatment." (*Id*. ¶ 37.)   He further alleges that "DPD has been made aware of its failures several times" and cites several incidents as evidence that DPD's policies concerning the duty to intervene and the duty to render aid were inadequate.  (*Id*. ¶¶ 37-38.)

"A failure-to-train action is a type of *Monell* claim." *Hutcheson*, 994 F.3d at 482.  Although Plaintiff appears to also assert separate claims for failure to discipline, "the elements required to prove a claim under either theory are the same." *Jean v. City of Dallas, Texas*, No. 3:18-CV-2862-M, 2019 WL 7195308, at *5 n.6 (N.D. Tex. Aug. 12, 2019) ("Although Plaintiffs separately assert claims for failure to train and failure to supervise or discipline, the elements required to prove a claim under either theory are the same." (citation omitted)), *adopted*, 2019 WL 7187104 (N.D. Tex. Dec. 23, 2019); *see also Monacelli*, 2023 WL 6563410, at *9 n.1 (considering failure-to-train and failure-to-discipline claims together).  "The 'failure to train can amount to a policy if there is deliberate indifference to an obvious need for training where citizens

26

are likely to lose their constitutional rights on account of novices in law enforcement.'" *Hutcheson*, 994 F.3d at 482 (quoting *Peterson*, 588 F.3d at 849).

For a failure-to-train or a failure-to-discipline claim to survive a Rule 12(b)(6) motion, a plaintiff must sufficiently plead "that (1) the city failed to train or [discipline] the officers involved; (2) there is a causal connection between the alleged failure to [discipline] or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or [discipline] constituted deliberate indifference to the plaintiff's constitutional rights." *Id*. (quoting *Peña v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018)). "A pattern of similar constitutional violations by untrained [or undisciplined] employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train [or discipline]." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409 (1997)). However, "in certain extreme circumstances, a single act by a municipal employee [may] form the basis of municipal liability apart from a pattern of unconstitutional activity." *Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005). But "[t]he 'single incident exception' is extremely narrow," *Valle v. City of Houston*, 613 F.3d 536, 549 (5th Cir. 2010), and "is generally reserved for those cases in which the government actor was provided no training whatsoever." *Peña*, 879 F.3d at 624.

Plaintiff alleges that "DPD was aware that its lack of a policy and lack of training with respect to providing emergency medical aid was inadequate, as there have been several reports of DPD officers either failing or refusing to provide aid to

those in need." (Compl. ¶ 38.)  Plaintiff also alleges "reports" and "allegations" of supposedly similar behavior in June and July 2020.  (*See id.*)  In one example, Plaintiff alleges that "a woman reported to the Board that several DPD officers sped past her on the freeway, nearly tearing the front bumper of her vehicle off and failing to stop to render aid."  (*Id.*)  Another woman complained to the Board that she was injured following an interaction with a DPD officer and when she explained to the officer that she was injured, the officer had no concern for her health or well-being and simply "waved her off 'like a fly or dog' and yelled for her to get out of his way." (*Id.*)  In the final example, an officer detained a man "in a car with no air for over thirty minutes, causing him to have an asthma attack," but "[i]nstead of providing first aid to the man, the officers completely ignored him."  (*Id.*)  None of these examples are substantially similar to the circumstances here, where Plaintiff alleges that after a high-speed pursuit by the Officers, Plaintiff's car "immediately burst into flames," and "the officers did not stop, continuing their way without checking on the driver."  (*Id.* ¶¶ 26-27).

Plaintiff also cites the 2018 arrest of a woman, who is alleged to have been placed in a holding cell unconscious and subsequently died (*id.* ¶ 39) and an incident that occurred in September 2022 (after the incident in this litigation), where a man with a mental health disorder was taken to jail instead of to the hospital and died soon after (*id.* ¶ 40).  These two incidents are dissimilar from Plaintiff's case for several reasons, most notably that the individuals were arrested and in police custody when the incidents occurred.  (*Id.*)  Here, Plaintiff was never arrested or in police

custody.  Therefore, these handful of examples lack common characteristics with the instant case, nor are they sufficiently numerous to establish a pattern.

A pattern of similar prior incidents "requires similarity and specificity; '[p]rior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question.'" *Fuentes v. Nueces Cty., Tex.*, 689 F. App'x 775, 778 (5th Cir. 2017) (quoting *Peterson*, 588 F.3d at 851 (alteration in original)). "In addition to similarity and specificity, a pattern must be comprised of 'sufficiently numerous prior incidents' rather than merely isolated instances.'" *Id.* (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)); *see Peterson*, 588 F.3d at 851 (noting that 27 incidents of excessive force over a period of four years did not "reflect a pattern that can be said to represent official policy of condoning excessive force so as to hold the city liable for the acts of its employees' unconstitutional conduct"); *Pineda*, 291 F.3d at 329 (holding that 11 incidents of warrantless entry did not support a pattern of unconstitutional warrantless entry); *Moreno v. City of Dallas*, No. 3:13-CV-4106-B, 2015 WL 3890467, at *8-9 (N.D. Tex. June 18, 2015) (allegations of eight prior incidents in which police officers used excessive force were not sufficient to indicate a pattern); *see also Monacelli v. City of Dallas*, No. 3:21-CV-02649-L (BT), 2023 WL 6563410, at *9 (N.D. Tex. Sept. 1, 2023) (explaining that alleging only two prior instances of similar constitutional violations failed to plausibly state a claim for failure to discipline or failure to train), *adopted*, 2023 WL 6370753 (N.D. Tex. Sept. 29, 2023); *Jean*, 2019 WL 7195308, at

*6 (alleging three specific instances where officers were not disciplined for similar misconduct was insufficient).

Based on the allegations in Plaintiffs' complaint, Plaintiff has failed to plausibly show a pattern of similar constitutional violations that reveals the City's failure to train was the result of deliberate indifference.

### 2.    Plaintiff's complaint does not plausibly allege that any City policies were the "moving force" behind Plaintiff's injuries.

Even if Plaintiff plausibly alleged that a constitutional violation caused his injury *and* plausibly alleged the existence of a City policy or pattern demonstrating deliberate indifference, his allegations still fall short of constituting "moving force" under § 1983.  To show "moving force causation," Plaintiff must demonstrate a "direct causal link" between the municipality's policy and the deprivation of Plaintiff's federal rights.  *Valle*, 613 F.3d at 542 (citing *Bryan Cnty. v. Brown*, 520 U.S. at 404).  "[T]he connection must be more than a mere 'but for' coupling between cause and effect. The deficiency in training, hiring, or supervision must be the actual cause of the constitutional violation."  *Thompson v. Connick*, 578 F.3d 293, 300 (5th Cir. 2009) (cleaned up), *rev'd on other grounds*, 563 U.S. 51 (2011).

Thus, to adequately allege causation at the pleading stage, Plaintiff's pleadings must be able to plausibly answer: "Would the injury have been avoided had the employee been trained under a program that was not deficient in the identified respect?" *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989).  Here, Plaintiff's complaint repeatedly alleges that the Officers' high-speed pursuit of Plaintiff was

30

against explicit "DPD policy." (*See, e.g.*, Compl. ¶¶ 6, 25.)  These conclusory allegations alone are insufficient to plausibly allege that the City failed to train or supervise its officers.  Plaintiff does not plausibly plead that a failure to train or supervise the Officers was the moving force in causing his constitutional injury; and he does not allege, other than in conclusory terms, that any policymaker acted with deliberate indifference to the allegedly inadequate training or supervision of DPD officers.  Therefore, in addition to reasons discussed above, Plaintiff's claim fails for lack of causation.

As the Fifth Circuit has held, "absent specific allegations supporting a plausible causation inference, this legal conclusion does not state a claim for relief and warrants dismissal under Rule 12(b)(6)."  *Ratliff v. Aransas County*, 948 F.3d 281, 285 (5th Cir. 2020).  Accordingly, the undersigned concludes that Plaintiff's § 1983 claims against the City should be dismissed for failure to state a claim.

**D.   Plaintiff's claims under the Texas Torts Claims Act**

Plaintiff asserts a claim against the City under the Texas Torts Claims Act ("TTCA"), because the Officers were acting within the scope of their employment when they negligently used tangible property (their DPD vehicle) "to engage in a reckless pursuit of Plaintiff which proximately caused Plaintiff's injuries." (Compl. ¶¶ 64-65.)  "The TTCA does not create a cause of action but, instead, waives immunity for certain suits against Texas governmental entities." *Campbell v. Pena*, No. 3:23-CV-2232-B, 2024 WL 3841517, at *1 (N.D. Tex. Aug. 15, 2024) (quoting *Johnson v. MHMR Auth. of Brazos Valley*, No. CV H-23-3448, 2023 WL 8630064, at *5

31

(S.D. Tex. Dec. 13, 2023)).  Plaintiff alleges that governmental/sovereign immunity

has been waived and no exception applies to his claim.  (Compl. ¶¶ 63, 67.)

　　　In its motion to dismiss, the City argues that Texas law does not provide a

waiver of sovereign/ governmental immunity under the circumstances alleged in

Plaintiff's complaint.  (*See* City Mot. at 20-23.)  The City also argues that Plaintiff's

claims fall within the TTCA's emergency exception, and therefore, the City's

immunity from Plaintiff's claims is not waived regardless of whether his claims

would otherwise fall within the scope of that waiver.  (*See* id. at 24-25 (citing Tex.

Civ. Prac. & Rem. Code § 101.055(2)).)

　　　"The ["TTCA"] provides a limited waiver of immunity for certain suits

against governmental entities and caps recoverable damages."  *Mission Consol. Indep.*

*Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008) (citing Tex. Civ. Prac. & Rem.

Code § 101.023).  Because the TTCA "is the only, albeit limited, avenue for

common-law recovery against the government," all tort claims alleged against a

governmental entity alone or with its employee are brought under the TTCA for

purposes of § 101.106(f), even if immunity is not waived under the TTCA.  *Id*. at

659; *accord Alexander v. Walker*, 435 S.W.3d 789, 792 (Tex. 2014); *see also Rivera v.*

*Garcia*, 589 S.W.3d 242, 246 (Tex. App.—San Antonio, 2019, no pet.) (explaining

that the phrase "[c]ould have been brought" applies to all tort claims even where the

TTCA does not waive immunity).

　　　The TTCA provides a limited waiver of governmental immunity from suit

against a government unit if its employee, while negligently operating a motor-driven

vehicle within the scope of his employment, proximately causes personal injuries or death.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021(1)(A) ("A governmental unit in the state is liable for: property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if: the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment[.]"); *see also Tex. Dep't of Crim. Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001) ("The Tort Claims Act provides a limited waiver of sovereign immunity[.]").

To demonstrate a waiver under this provision, a plaintiff must show a nexus between the employee's use of the vehicle and the injuries sustained.  *Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542-43 (Tex. 2003).  A causal nexus means that "the [vehicle]'s use must have actually caused the injury."  *Id*. at 543 (quoting *Tex. Nat. Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 869 (Tex. 2001)).  The operation or use of a motor vehicle "does not cause injury if it does no more than furnish the condition that makes the injury possible."  *Id*.  "In other words, even where the plaintiff has alleged a tort on the part of a government driver, there is no immunity waiver absent the negligent or otherwise improper use of a motor-driven vehicle."  *Ryder Integrated Logistics v. Fayette County*, 453 S.W.3d 922, 928 (Tex. 2015).

1.     **Plaintiff's injuries did not result from the Officers' "use" of a vehicle as defined by the TTCA.**

The City argues that multiple Texas appellate courts have examined similar, or essentially identical, fact patterns and declined to find a sufficient nexus between the use of a government vehicle and a plaintiff's injuries for a waiver of immunity. (*See* City Mot. at 20-24.)  According to the City, it is well-settled under Texas law that a fugitive's injuries resulting from a chase are not the result of any act for which immunity is waived.  (*See* City Repl. at 4.)  Plaintiff argues in response that he has shown the requisite "nexus" as defined under the TTCA between the Officers' use of the police vehicle and his injuries.  (*See* Resp. City at 15-17.)

Instead of pointing to any authority under Texas law to support his claim, Plaintiff maintains that the procedural posture of this case renders the authority cited by the City inapplicable in the context of a rule 12(b)(6) motion.  (*See* Resp. City at 15-17.)  Plaintiff does not cite any authority for this proposition, nor is the Court aware of any federal authority holding that a state court's decisions explaining state law are not controlling because of this—or any—procedural posture.  As explained above, there is no blanket rule stating that questions of law in a Rule 12(b)(6) motion may not be decided using applicable case law articulated in cases decided at the summary-judgment phase.  *See supra* Section III.A.

Contrary to Plaintiff's arguments regarding a causal link between the Officers' use of the police vehicle and his injuries (see Resp. City at 15-16), numerous Texas courts of appeal have declined to find waivers of sovereign immunity under the

34

TTCA in cases where the government vehicle was not involved in causing the injuries made the basis of the suit. *See, e.g.*, *Teague v. City of Dallas,* 344 S.W.3d 434 (Tex. App.—Dallas 2011, pet. denied) (plaintiff failed to demonstrate causal nexus between attempted detention and chase and crash because suspect driver's decision to cross the median caused the collision and police vehicle was not involved in crash); *Williams v. City of Baytown*, 467 S.W.3d 566, 569 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (no waiver where "no police car was directly involved in the collision—no officer blinded oncoming traffic or entered a freeway access road the wrong way during the chase"); *City of Dallas v. Hillis*, 308 S.W.3d 526 (Tex. App.— Dallas 2010, pet. denied) (finding that "[t]he causal nexus is not satisfied by the mere involvement of a vehicle, nor by an operation or use that 'does no more than furnish the condition that makes the injury possible'") (quoting *Whitley*, 104 S.W.3d at 543); but see *Ryder*, 453 S.W.3d at 928-30 (police officer driver, by blinding oncoming traffic, did more than furnish a condition that later caused an accident; instead, he was alleged to be a cotortfeasor); *Travis v. City of Mesquite*, 830 S.W.2d 94, 96, 99 (Tex. 1992) (holding summary-judgment evidence was sufficient to raise fact issue as to causation where suspect driver and chasing police entered one-way access road in the wrong direction and suspect crashed head-on into plaintiffs' car).

Here, Plaintiff alleges he "lost control of [his] vehicle," his car "jumped a curb" along the public street, and his car struck a tree (Compl. ¶¶ 1-3), but the Officers' vehicle made no contact with Plaintiff's car. These facts are analogous to *Teague*, *Williams*, and *Hillis*, where the police vehicle was not involved in the collision

35

that caused the plaintiff's injuries, but distinguishable from *Ryder* and *Travis*, where the police officer's faulty driving was arguably a direct cause of the accident. Considering Texas law requiring a close nexus between the alleged injury and the government vehicle, the undersigned concludes that Plaintiff's complaint has not stated facts from which this Court can reasonably infer that the City's governmental immunity is waived. Therefore, Plaintiff's state law tort claims should be dismissed.

### 2. The facts alleged in Plaintiff's complaint fall within the TTCA's "emergency exception."

The City also contends that Plaintiff's claim falls within the TTCA's "emergency exception" provision. (*See* City Mot. at 24.) The TTCA "does not apply to a claim arising . . . from the action of an employee while responding to an emergency call or reacting to an emergency situation if the action is in compliance with the laws and ordinances applicable to emergency action, or in the absence of such a law or ordinance, if the action is not taken with conscious indifference or reckless disregard for the safety of others." Tex. Civ. Prac. & Rem. Code § 101.055(2). The plaintiff has the burden of proof to establish that the emergency exception does not apply. *See Barbour v. City of Forney*, No. 3:15-CV-90-B, 2015 WL 4094005, at *6 (N.D. Tex. June 17, 2015) (citing *Quested v. City of Houston*, 440 S.W.3d 275, 284 (Tex.App.-Houston [14th Dist.] 2014, aff'd), *adopted*, 2015 WL 4113571 (N.D. Tex. July 7, 2015).

First, nothing in Plaintiff's complaint indicates that the Officers violated emergency "laws and ordinances." Plaintiff alleges that the Officers violated City

policies (*see, e.g.*, Compl. ¶ 6), but according to the Texas Supreme Court, "a police department's internal policies, in and of themselves, are not 'laws' or 'ordinances'" for purposes of the Act. *City of San Antonio v. Maspero*, 640 S.W.3d 523, 530 (Tex. 2022). Further, nothing in the complaint meets the standard of the Transportation Code, which holds that "reckless driving consists of driving a vehicle in 'willful or wanton disregard for the safety of persons or property.'" *Id.* at 531 (quoting Tex. Transp. Code § 545.401(a)). "[T]his standard requires 'conscious indifference,' or 'subjective awareness of an extreme risk.'" *Id.* (quoting *Tarrant County v. Bonner*, 574 S.W.3d 893, 902 (Tex. 2019)).

Here, Plaintiff's complaint acknowledges that he violated a traffic law, refused to stop in response to the Officers' lawful show of authority, ran off the road and crashed his vehicle. Because Plaintiff has not shown that the emergency exception was inapplicable here, his state law tort claim fails for this additional and independent reason.

**E.    Plaintiff's miscellaneous causes of action**

Plaintiff also lists Counts for "respondeat superior" (Compl. ¶¶ 58-60) and "exemplary damages" (Compl. ¶¶ 61-62), neither of which merit extensive analysis. As previously discussed, a governmental entity cannot be held liable under a theory of respondeat superior or vicarious liability. *Monell*, 436 U.S. at 694.

With respect to damages, first, the TTCA "does not authorize exemplary damages." Tex. Civ. Prac. & Rem. Code Ann. § 101.024. Second, under Texas law, "an award of punitive damages is not a separate cause of action," *Sulzer Carbomedics,*

*Inc. v. Or. Cardio–Devices, Inc.*, 257 F.3d 449, 461 (5th Cir. 2001), such that a demand for punitive damages is not "separate and distinct from the underlying claim for compensatory damages," where "Texas, like the majority of states, limits punitive damages to cases in which actual compensatory damages are found," *Lanier v. Salas*, 777 F.2d 321, 325 (5th Cir. 1985).  The same is true for demands for punitive damages sounding in federal law.  *See, e.g., Auster Oil & Gas, Inc. v. Stream*, 835 F.2d 597, 604 (5th Cir. 1988) (addressing 42 U.S.C. § 1983 claim) ("Punitive damages are not an independent claim or cause of action, but are a remedy available in various causes of action."). Therefore, to the extent Plaintiff brings these two Counts as separate causes of action, they should be dismissed for failure to state a claim.

**E.    Leave to Amend Complaint**

Plaintiff's responses to both motions conclude with a request, in the alternative, to amend his complaint should the Court find his pleading insufficient. (*See* Resp. City at 19; Resp. Officers at 16.)  Under Rule 15(a)(1), "[a] party may amend its pleading once as a matter of course within" 21 days of service of (1) a responsive pleading, or (2) a Rule 12(b) motion, "whichever is earlier."  Fed. R. Civ. P. 15(a)(1)(B).  The City filed its 12(b) motion on April 30, 2024 (City Mot.), and the Officers filed their motion on June 3, 2024 (Officers Mot.).  Plaintiff filed a response to the City's motion on May 21, 2024 (Resp. City), and as to the Officers' motion on June 24, 2024 (Resp. Officers).

As noted above, both responses embed a request for Plaintiff to amend his complaint (see Resp. City at 19; Resp. Officers at 16), which is within the 21-day

deadline for amendment as a matter of course. *See* Fed. R. Civ. P. 15(a)(1)(B). However, Plaintiff has not included a proposed amended pleading as required under this Court's local rules. *See* N.D. Tex. L.R. 15.1(b) (stating that when "a party files by electronic means a motion for leave to file an amended pleading, the party must attach the proposed amended pleading to the motion as an exhibit").

Rule 15(a)(2) provides that leave to amend should be "freely given when justice so requires." *Avatar Expl., Inc. v. Chevron, U.S.A., Inc.*, 933 F.2d 314, 320 (5th Cir. 1991); *see Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016) (noting that Rule 15(a)'s language "evinces a bias in favor of granting leave to amend" (internal quotation marks omitted)). "Although leave to amend under Rule 15(a) is to be freely given, that generous standard is tempered by the necessary power of a district court to manage a case." *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003). Thus, leave to amend is not automatic, and decisions concerning motions to amend are left to the sound discretion of the court. *See Avatar Expl.*, 933 F.2d at 320; *Guerrero ex rel. Jr. v. Taylor Cnty.*, No. 1:17-CV-050-C-BL, 2018 WL 1033261, at *6 (N.D. Tex. Feb. 23, 2018).

When considering whether to grant leave under Rule 15(a)(2), courts assess "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [and] futility of the amendment." *Whitmire v. Victus Ltd.*, 212 F.3d 885, 889 (5th Cir. 2000) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (internal quotations omitted). "The liberal

amendment rules of F. R. Civ. P. 15(a) do not require that courts indulge in futile gestures [and] [w]here a complaint, as amended, would be subject to dismissal, leave to amend need not be granted." *DeLoach v. Woodley*, 405 F.2d 496 (5th Cir. 1968) (citing *Foman*, 371 U.S. 178; s*ee also Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) ("Denying a motion to amend is not an abuse of discretion if allowing an amendment would be futile.").

Notwithstanding a plaintiff's failure to plead any set of facts or any possible theory that they could prove consistent with the allegations in their complaints, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable, or the plaintiffs advise the court that they are willing or unable to amend in a manner that will avoid dismissal." *In re Am. Airlines, Inc., Privacy Litig.*, 370 F. Supp.2d 552, 567–68 (N.D. Tex. 2005) (citing *Great Plains Trust Co. v. Morgan Stanley Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)). "Nevertheless, courts may appropriately dismiss an action with prejudice if a court finds that the plaintiff has alleged his or her best case." *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999). "A plaintiff has pleaded [his] best case after [he] is apprised of the insufficiency of her complaint." *Wiggins v. Louisiana State Univ.-Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (citing *Brewster*, 587 F.3d at 768  (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (internal quotation and citation omitted))).

"An amendment is futile if it would fail to survive a Rule 12(b)(6) motion." *Marucci* at 378 (citing *Briggs v. Miss.*, 331 F.3d 499, 508 (5th Cir. 2003)).  In addition

to testing the factual sufficiency of a claim, Rule 12(b)(6) authorizes a court to dismiss claims that have no basis, arguable or otherwise, in the law. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992). A complaint lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Neitzke*, 490 U.S. at 326–27; *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999).

The Fifth Circuit has affirmed denials of leave to amend where it determined that the proposed amendment would be futile after analyzing the claims. *See Edoinwe v. Bailey*, 860 F.3d 287, 295 (5th Cir. 2017) (proposed amended complaint failed to state a claim under 42 U.S.C. § 1983). "[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought, *cf.* Fed. R. Civ. P. 7(b)—does not constitute a motion within the contemplation of Rule 15(a)." *Confederate Mem'l Assn, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993). If the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave. *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021), *as revised* (Nov. 26, 2021) (citing *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 315 (5th Cir. 2002) (affirming denial of leave to amend where plaintiffs "failed to amend their complaint as a matter of right, failed to furnish the district court with a proposed amended complaint, and failed to alert both the court and the defendants to the substance of their proposed amendment")).

41

Plaintiff's request for leave states: "Alternatively, should this Court determine that Defendant is entitled to dismissal on any of Plaintiff's claims, Plaintiff respectfully asks that this Court allow Plaintiff the opportunity to amend its Complaint." (*See* Resp. City at 19; Resp. Officers at 16 (citing Fed. R. Civ. P. 15(a)(2)).) This "does not provide any indication of the grounds on which such an amendment should be permitted." *Willard*, 336 F.3d at 387. Plaintiff attached no amended pleading to his request for leave as required by the Court's local rules (*see* N.D. Tex. L.R. 15.1(b)) and offers no discussion of factual allegation(s) that he intends to add or revise in any further amended pleading. (*See* City Mot. at 19; Officers Mot. at 16.)

Further, the undersigned finds that Plaintiff's amendment would be futile. Plaintiff has pleaded his best case. (*See* Compl., Resp. City, Resp. Officers). No good-faith amendment could plead new factual content sufficient to allow the Court to reasonably infer that Defendants are liable. The central facts are undisputed: The Officers observed Plaintiff leave a gas station and turn down the street without headlights on; the Officers pursued Plaintiff using their lights and sirens as a command to stop; Plaintiff did not stop; he eventually crashed his vehicle into a tree which caused his vehicle to burst into flames; Plaintiff suffered severe injuries as a result. (*See generally* Compl.) The only disputed fact is whether the Officers observed the crash or learned about it later, but this disputed fact is irrelevant for purposes of Plaintiff's claims.

The Officers were not involved in the crash.  Plaintiff does not allege that the Officers caused the accident by sideswiping him, "accidentally" crashing into him, running him off the road, using lights to blind oncoming traffic, entering a freeway access road the wrong way, or otherwise furnishing a condition that caused him to lose control of his vehicle.  Even if the Officers observed and ignored Plaintiff's crash, as Plaintiff alleges, this only demonstrates actions that were arguably uncaring and thoughtless, not a legally cognizable claim.  There is no Supreme Court or Fifth Circuit authority that recognizes a Fourth or Fourteenth Amendment claim under this scenario.  *See, e.g.*, *Brower*, 489 U.S. 593; *Hodari D.*, 499 U.S. 621; *Lewis*, 523 U.S. 844; *Graham*, 490 U.S. 386; *Morrow*, 917 F.3d 870.  Similarly, there is no authority under Texas state law holding that a municipality's governmental immunity is waived under these facts.  *See, e.g.*, *Williams*, 467 S.W.3d 566; *City of Dallas v. Hillis*, 308 S.W.3d 526; *Ryder*, 453 S.W.3d 922; *Travis*, 830 S.W.2d 94.  Accordingly, there is no factual content Plaintiff could plead that would allow the Court to reasonably infer that Defendants are liable for the misconduct alleged.  *See Martinez v. Nueces Cnty., Tex.*, 71 F.4th 385, 391 (5th Cir. 2023).

For these reasons, the undersigned concludes that amendment would be futile, and Plaintiff's request for leave to amend his complaint embedded in his responses to Defendants' motions to dismiss should be denied.  *See Wiggins*, 710 F. App'x at 627; *Harris v. UnitedHealth Group, Inc. of Texas*, No. 3:23-CV-02486-E; 2024 WL 2734974 (N.D. Tex. May 28, 2024) (denying motion for leave to amend complaint). For those reasons, the Court denies Plaintiffs' Request for Leave to Amend.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that the City's motion (Dkt. No. 7) and the Officers' motion (Dkt. No. 12) be **GRANTED** pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted, and that Plaintiff's claims be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on February 13, 2025.

_____

BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).